LATHAM & WATKINS LLP
  Miles N. Ruthberg (Bar No. 086742)
  miles.ruthberg@lw.com
  Pamela S. Palmer (Bar No. 107590)
  pamela.palmer@lw.com
633 West Fifth Street, Suite 4000
Los Angeles, California 90071-2007
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

LATHAM & WATKINS LLP
  Kimberly Arouh Hicks (Bar No. 163285)
  kimberly.hicks@lw.com
  Jake Ryan (Bar No. 211899)
  jake.ryan@lw.com
  Curtis Carll (Bar No. 248470)
  curtis.carll@lw.com
  Daniel K. Greene (Bar No. 253595)
  daniel.greene@lw.com
600 West Broadway, Suite 1800
San Diego, California  92101-3375
Telephone:  +1.619.236.1234
Facsimile:  +1.619.696.7419

Attorneys for Nominal Defendant
Leap Wireless International, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES GRAHAM, Derivatively on Behalf of Nominal Defendant LEAP WIRELESS INTERNATIONAL, INC., | CASE NO. 08-CV-0246 L NLS |
| | (Derivative Action) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOMINAL DEFENDANT LEAP WIRELESS INTERNATIONAL, INC.'S MOTION TO DISMISS DERIVATIVE COMPLAINT** |
| v. | |
| S. DOUGLAS HUTCHESON, AMIN KHALIFA, GRANT BURTON, DEAN M. LUVISA, MICHAEL B. TARGOFF, JOHN D. HARKEY, JR., ROBERT V. LAPENTA, MARK H. RACHESKY, M.D., and JAMES D. DONDERO, | Judge:         The Hon. M. James Lorenz<br>Courtroom:    14<br>Hearing Date:  August 4, 2008<br>Hearing Time:  10:30 a.m. |
| Defendants, | |
| and | |
| LEAP WIRELESS INTERNATIONAL, INC., | |
| Nominal Defendant. | |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1

**TABLE OF CONTENTS**

2

**Page**

3

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

4

II.     STATEMENT OF FACTS AND ALLEGATIONS ......................................................... 3

5

    A.      Parties and Claims................................................................................................. 3

6

    B.      The 2007 Restatement........................................................................................... 4

7

    C.      Audit Committee Oversight of Leap's Financial Reporting................................. 7

8

    D.      Demand Futility Allegations ................................................................................ 8

9

III.    ARGUMENT ................................................................................................................... 9

10

    A.      Delaware Law Governs Plaintiff's Standing To Bring This Action..................... 9

11

    B.      Plaintiff Does Not Allege Any Adequate Excuse For Failure For

12

        Make A Pre-Suit Demand ................................................................................... 11

13

        1.      Plaintiff Does Not Allege That Any Director Faces A

             "Substantial Likelihood of Liability"....................................................... 12

14

            a.      No Likelihood of Liability For Alleged Failure of

15

                  Oversight ........................................................................................ 13

16

            b.      No Likelihood of Liability Based on Alleged

                  Insider Trading............................................................................... 17

17

            c.      No Likelihood of Liability For Alleged Securities

18

                  Fraud .............................................................................................. 19

19

    C.      Plaintiff Fails To Allege Continuous Stock Ownership With

20

        Particularity......................................................................................................... 21

IV.     CONCLUSION............................................................................................................... 22

21

22

23

24

25

26

27

28

**LATHAM&WATKINS**LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

i

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3
*Alaska Electric Pension Fund v. Adecco, S.A.,*
    434 F. Supp. 2d 815 (S.D. Cal. 2006) ............................................................................20
4

5
*Atari Corp. v. Ernst & Whinney,*
    981 F.2d 1025 (9th Cir. 1992) .......................................................................................19

6
*Chill v. GE,*
    101 F.3d 263 (2d Cir. 1996) ..........................................................................................16
7

8
*In re Coca-Cola Enterprises,*
    478 F. Supp. 2d 1369 (N.D. Ga. 2007) ....................................................................17, 18

9
*DSAM Global Value Fund v. Altris Software, Inc.,*
    288 F.3d 385 (9th Cir. 2002) ...........................................................................6, 16, 20
10

11
*Edgar v. MITE Corp.,*
    457 U.S. 624 (1982) .......................................................................................................9

12
*Finance Acquisition Partners. v. Blackwell,*
    440 F.3d 278 (5th Cir. 2006) .........................................................................................16
13

14
*In re Guess?, Inc. Securities Litigation,*
    174 F. Supp. 2d 1067 (C.D. Cal. 2001) .....................................................................6, 16

15
*In re Hansen Natural Corp. Securities Litigation,*
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................................................................20
16

17
*In re IAC/InterActive Corp. Securities Litigation,*
    478 F. Supp. 2d 574 (S.D. N.Y. 2007) ............................................................................10

18
*In re Interpool, Inc. Securities Litigation,*
    2005 U.S. Dist. LEXIS 18112 (D. N.J. Aug. 17, 2005) ............................................6, 16
19

20
*Jones ex. rel. CSK Automobile Corp. v. Jenkins,*
    503 F. Supp. 2d 1325 (D. Ariz. 2007) ..................................................................9, 14, 16, 17

21
*Kamen v. Kemper Financial Services Inc.,*
    500 U.S. 90 (1991) .........................................................................................................9
22

23
*Kona Enterprises, Inc. v. Estate of Bishop,*
    179 F.3d 767 (9th Cir. 1999) .........................................................................................21

24
*Lewis v. Chiles,*
    719 F.2d 1044 (9th Cir. 1983) .......................................................................................21
25

26
*Lipton v. PathoGenesis Corp.,*
    284 F.3d 1027 (9th Cir. 2002) .......................................................................................20

27
*Lubin v. Sybedon Corp.,*
    688 F. Supp. 1425 (S.D. Cal. 1988) ..............................................................................14
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

i

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1  *McCall v. Scott*,
        239 F.3d 808 (6th Cir. 2001) ........................................................................18
2
   *Mitzner v. Hastings*,
3        2005 U.S. Dist. LEXIS 835 (N.D. Cal., Jan. 14, 2005) ....................................18

4  *Provenz v. Miller*,
        102 F.3d 1478 (9th Cir. 1996) ...............................................................18, 19
5
   *Reiger v. Price Waterhouse Coopers LLP*,
6        117 F. Supp. 2d 1003 (S.D. Cal. 2000)...........................................................6, 16

7  *In re Sagent Technology, Inc. Derivative Litigation*,
        278 F. Supp. 2d 1079 (N.D. Cal. 2003) ...........................................13, 17, 18, 21
8
   *In re Silicon Graphics, Inc. Securities Litigation*,
9        183 F.3d 970 (9th Cir. 1999) ........................................................................20

10 *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
        127 S. Ct. 2499 (2007)...................................................................................20
11
   *In re Vantive Corp. Securities Litigation*,
12       283 F.3d 1079 (9th Cir. 2002) ........................................................................20

13 *In re Verisign, Inc. Derivative Litigation*,
        531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...............................................11, 19, 20
14

15                                    **STATE CASES**

   *Aronson v. Lewis*,
16       473 A.2d 805 (Del. 1984) ...........................................................................1, 9

17 *Ash v. McCall*,
        2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) ....................................13
18
   *In re Baxter International, Inc. Shareholders Litigation*,
19       654 A.2d 1268 (Del. Ch. 1995)........................................................................13

20 *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
        833 A.2d 961 (Del. Ch. 2003).................................................................10, 11
21
   *Brehm v. Eisner*,
22       746 A.2d 244 (Del. 2000) .......................................................................10, 11

23 *Caremark International Inc. Derivative Litigation*,
        698 A.2d 959 (Del. Ct. Ch. 1996).........................................................13, 14, 15
24
   *In re Computer Sciences Corp. Derivative Litigation*,
25       2007 WL 1321715 (C.D. Cal. 2007)................................................................21

26 *David B. Shaev Profit Sharing Account v. Armstrong*,
        2006 Del. Ch. LEXIS 33 (Del. Ch. Feb. 13, 2006)........................................14, 15
27
   *Desimone v. Barrows*,
28       924 A.2d 908 (Del. Ch. 2007)....................................................................12, 14

LATHAM&WATKINS LLP  SD\633473.1
ATTORNEYS AT LAW
SAN DIEGO

ii    CASE NO. 08-CV-0246
      LEAP'S POINTS AND AUTHORITIES IN SUPPORT
      OF MOTION TO DISMISS DERIVATIVE SUIT

*Grimes v. Donald,*
    673 A.2d 1207 (Del. 1996) ...................................................................................10

*Grobow v. Perot,*
    539 A.2d 180 (Del. 1988) ....................................................................................10

*Guttman v. Huang,*
    823 A.2d 492 (Del. Ch. 2003) ....................................................................... passim

*Jacobs v. Yang,*
    2004 Del. Ch. LEXIS 117 (Del Ch. Aug. 2, 2004).............................................11

*Malpiede v. Townson,*
    780 A.2d 1075 (Del. 2001) ..................................................................................13

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) ............................................................................. passim

*Rattner v. Bidzos,*
    2003 Del. Ch. LEXIS 103 (Del. Ch. 2003)........................................................12

*Seminaris v. Landa,*
    662 A.2d 1350 (Del. Ch. 1995)...........................................................................10

*Stone v. Ritter,*
    911 A.2d 362 (Del. 2006) ............................................................................. passim

*In re Walt Disney Co. Derivative Litigation,*
    906 A.2d 27 (Del. 2006) ......................................................................................12

## FEDERAL STATUTES

15 U.S.C. § 78u-4(b)(1) ...............................................................................................19

15  U.S.C. § 78u-4(b)(2) .........................................................................................19, 20

Fed. R. Civ. P. 4(m) ............................................................................................3, 4, 5, 6

Fed. R. Civ. P. 23.1 ...........................................................................................1, 9, 21

## STATE STATUTES

Cal. Corp. Code § 2116...................................................................................................9

8 Del. Code § 102(b)(7) .............................................................................................2, 12

8 Del. Code § 141(e) ...............................................................................................8, 9, 15

8 Del. Code § 141(a) ........................................................................................................1

8 Del. Code § 327 ...........................................................................................................21

LATHAM&WATKINS LLP  SD\633473.1
ATTORNEYS AT LAW
SAN DIEGO

iii

CASE NO. 08-CV-0246
LEAP'S POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS DERIVATIVE SUIT

1    **I.        INTRODUCTION AND SUMMARY OF ARGUMENT**

2              By this derivative action, Plaintiff – one shareholder of Leap Wireless International Inc.

3    ("Leap" or "the Company") – purports to seize corporate control from Leap's duly elected board

4    of directors, stand in Leap's shoes, and prosecute claims that belong to Leap.  In a Complaint

5    dominated by conclusory, boilerplate allegations, Plaintiff asserts claims for which he has no

6    standing.  He contends that Leap's entire board and senior management team are liable for breach

7    of fiduciary duties and fraud based on nothing more than Leap's restatement in December 2007

8    to correct certain errors in accounting under Generally Accepted Accounting Principles

9    ("GAAP").  Plaintiff's cut-and-paste quotations from Leap's forthright reports to investors –

10    which Plaintiff does not dispute – show that the restatement corrected errors that involved no

11    hint of misconduct or wrongdoing by anyone.  It is well established that the mere fact of a

12    restatement, without more, does not imply wrongdoing, much less entitle a shareholder to rush to

13    the corporate scene, purport to take charge, and sue everyone in sight on the company's behalf.

14              Leap is a Delaware corporation.  Under fundamental principles of Delaware corporate

15    law, the decision to assert corporate claims is a business judgment made by the board of

16    directors, not by the shareholders.  Del. Code tit. 8, § 141(a).  This principle of board control is

17    universal and is incorporated in Federal Rule of Civil Procedure 23.1, which requires the plaintiff

18    in a derivative suit to plead "with particularity" his efforts to procure board action on the alleged

19    claims through a pre-suit demand.  *See* Fed. R. Civ. P. 23.1.  In order to establish standing to

20    assert corporate claims, the plaintiff must allege with particularity *facts* demonstrating either that

21    (1) he made a pre-suit demand which the board wrongfully refused or (2) a pre-suit demand

22    would have been futile because a majority of the board could not exercise valid business

23    judgment due to disabling self-interests and/or lack of independence.  *Aronson v. Lewis*, 473

24    A.2d 805, 811 (Del. 1984).  Here, Plaintiff did not make a pre-suit demand and has utterly failed

25    to allege any legally cognizable excuse.

26              Indeed, the allegations reflect no real effort to meet the standards for pleading an excuse.

27    The Complaint is based entirely on formulaic contentions that Leap's five-member board would

28    have been incapable of exercising valid business judgment on a demand because they all "knew"

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

1

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

that Leap's accounting was incorrect, and/or that its internal controls over financial reporting were ineffective, and deliberately "caused," "permitted" or "failed to prevent" Leap from issuing inaccurate financial statements.  Complaint ¶¶ 34–38.  Plaintiff's tired strategy of trying to make an end run around the demand requirement by suing the whole board and declaring, *ipso facto*, that the directors have disabling interests in avoiding personal liability, is deficient as a matter of law.  To excuse failure to make a demand, Plaintiff must allege *particularized facts* establishing that a majority of the board when the suit was filed faced a "substantial likelihood" of personal liability for the alleged wrongdoing.  *Rales v. Blasband*, 634 A.2d 927, 936 (Del. 1993).

The generic contentions in this case do not pass a blush test for factual particularity.  The "fiduciary shield" provision in Leap's certificate of incorporation protects Leap's directors from personal liability to the maximum extent permitted under Delaware law.  Request for Judicial Notice ("RJN"), Exh. A, at 3, 4; Del. Code tit. 8, § 102(b)(7).  The shield protects the directors from liability for all but intentional misconduct, bad faith, or disloyalty.  Plaintiff's allegations do not demonstrate garden-variety negligence, much less egregious conduct outside the protection of the shield.  To the contrary, the few *factual* allegations in this Complaint show the board's diligence and good faith in overseeing Leap's financial reporting – including by establishing an Audit Committee that met regularly with Leap's management and independent financial statement auditors.  Complaint ¶¶ 32, 68–70.  Aside from Plaintiff's bare assertions, nothing in the Complaint suggests that the Audit Committee or any other member of Leap's board was informed of, or ignored, mistakes in accounting or deficiencies in internal controls.

Piling one fatally defective claim on another, Plaintiff asserts that two directors who sold stock several months before Leap announced discovery of the accounting errors thereby engaged in illegal "insider trading" on secret knowledge of the errors.  Complaint ¶¶ 42–45.  His conclusory allegations fail to state any claim at all, much less a "substantial likelihood" of liability.  As many courts have recognized, it is perfectly normal, lawful, and expected for directors and officers to trade in a company's securities.  Plaintiff has pled nothing to suggest that the two directors had any idea of the existence of accounting errors when they sold stock.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                2                                CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    Plaintiff's final claim accuses Leap's directors of fraud in violation Section 10(b) of the

2    1934 Securities & Exchange Act for misrepresenting Leap's historical financial statements.

3    Plaintiff ignores the stringent pleading standards required to state a securities fraud claim under

4    the Private Securities Litigation Reform Act ("PSLRA"), and utterly fails to demonstrate any risk

5    of director liability.  Of greater concern, this claim potentially places Leap in harm's way.  Leap

6    is currently *defending* against the same spurious allegations made *against* Leap and its officers in

7    a parallel investor class action pending before this Court in *HCL Ltd. Partners v. Leap Wireless*

8    *International, Inc.*, Case No. 07cv2245 BTM (NLS).  Plaintiff's assertion of a Section 10(b)

9    claim that conflicts with Leap's own defense underscores the ill-considered nature of this case,

10   and the importance of the standing limitation imposed by the demand requirement.

11   Perhaps recognizing the fatal deficiencies of his action, Plaintiff has not yet served it.

12   The deadline for service will expire on June 6, before this motion is heard.  Fed. R. Civ. P. 4(m).

13   If Plaintiff does not serve the action, it should be dismissed under Federal Rule 41(b) for failure

14   to prosecute.  If he serves the action, it should be dismissed under Federal Rule 12(b)(6) because

15   Plaintiff has not alleged standing to sue derivatively on behalf of Leap.

16   **II.    STATEMENT OF FACTS AND ALLEGATIONS**

17        **A.    Parties and Claims**

18   Leap is a wireless communications carrier that offers cell phone service in the United

19   States under the Cricket® and Jump® Mobile brands.  Complaint ¶ 8.  Leap is incorporated in

20   Delaware and headquartered in San Diego.  *Id.*  Leap's stock trades publicly on NASDAQ.  *Id*.

21   ¶ 59.  Plaintiff alludes indirectly to the fact that Leap emerged from a bankruptcy reorganization

22   in August 2004.  *Id.* ¶¶ 61 at 17:27-28; 62 at 20:6-7 (referring to "Successor" and "Predecessor"

23   companies).  Leap's management team, under the supervision of the board, led Leap through the

24   challenges of rapid growth after emergence from bankruptcy, during which time the stock price

25   increased from $20 per share in 2004 to an alleged high of more than $98 in 2007.  *Id*. ¶ 40.

26   The individual defendants consist of the management team and board members who

27   served Leap during this demanding phase of its corporate life.  Leap's board of directors has five

28   members:  Doug Hutcheson, the CEO and interim CFO who has been with Leap in a variety of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                   3                          CASE NO. 08-CV-0246
                                                           POINTS AND AUTHORITIES IN SUPPORT OF
                                                           MOTION TO DISMISS DERIVATIVE COMPLAINT

1  leadership roles since 1998 (*id.* ¶ 9), and four outside directors who are not employees or officers

2  of Leap, Mike Targoff, John Harkey, Robert LaPenta, and Mark Rachesky. *Id.* ¶¶ 16, 18, 19, 21.

3  These five individuals constituted the board when this lawsuit was filed and, therefore, are the

4  only defendants relevant to whether Plaintiff's failure make a pre-suit demand was excused. The

5  directors serve in the following capacities (*id.* ¶¶ 16, 18, 19, 21):

|  | Board Member | Audit Committee | Compensation Committee | Officer |
|---|---|---|---|---|
| Rachesky | ✓ | | ✓ | |
| Harkey | ✓ | ✓ | | |
| LaPenta | ✓ | ✓ | | |
| Targoff | ✓ | ✓ | ✓ | |
| Hutcheson | ✓ | | | ✓ |

12    The four remaining defendants include a former outside director, James Dondero (*id.*

13  ¶ 22), Leap's former CFO from July 2006 through September 2007, Amin Khalifa, (*id.* ¶ 11),

14  Leap's former acting CFO and Vice President, Finance and Treasurer, Dean Luvisa (*id.* ¶ 13);

15  and Leap's Chief Accounting Officer and Controller at relevant times, Grant Burton (*id.* ¶ 12).

16    Plaintiff asserts three claims on behalf of Leap. In sweeping style, he contends that all of

17  the individual defendants are liable to Leap for (1) breach of fiduciary duty by "willfully

18  ignoring the obvious and pervasive problems with Leap's accounting and internal control

19  practices" and "knowingly disseminating … false financial statements" (*id.* ¶ 80), and

20  (2) violation of Section 10(b) by engaging in "fraud and deceit" upon which Leap allegedly

21  relied in issuing unspecified stock and options (*id.* ¶¶ 86–89). In addition, Plaintiff contends that

22  four defendants who sold Leap stock months before Leap's announcement that it had even

23  discovered the accounting errors are liable for (3) unjust enrichment for illegal insider trading on

24  purported advance "knowledge" of the errors (*id.* ¶¶ 45, 83).

25    **B.    The 2007 Restatement**

26    Leap discovered accounting errors in the course of a comprehensive internal review of its

27  service revenue and forecasting processes initiated in September 2007. *Id.* ¶ 60 at 17:12-13. On

28  November 9, 2007, Leap announced discovery of the errors. *Id.* ¶ 57. Leap reported that, in

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

4

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    accordance with GAAP, it would restate its financial statements for the years ending 2004, 2005,

2    and 2006, and the first two quarters of 2007. *Id.* Leap explained the nature of the errors and

3    their effects. As Plaintiff alleges, without dispute, many of the same errors caused Leap's net

4    income to be understated and overstated in different financial reporting periods. *Id.* ¶¶ 57, 61.[1]

5    Leap also identified "classification errors" that had no effect on income or expenses, but simply

6    altered the presentation of assets and liabilities on Leap's balance sheet. As alleged in the

7    Complaint, Leap described the three main categories of errors as follows:

8    　　　[1] The most significant adjustment relates to the Company's prior
     　　　accounting for a group of customers who voluntarily disconnected service.
9    　　　These customers comprised a small percentage of the Company's
     　　　disconnected customers. For these customers, approximately one month of
10   　　　deferred revenue that was recorded when the customers' monthly bills
     　　　were generated was mistakenly recognized as revenue after their service
11   　　　was disconnected.

12   　　　[2] The Company also identified other errors relating to the timing and
     　　　recognition of certain service revenues and operating expenses. The effect
13   　　　of the timing errors varied across periods. The error with the largest
     　　　variation across periods related to the reconciliation of billing system data
14   　　　for pay in arrears customers. This error resulted in an understatement of
     　　　revenue in 2004 and 2005 and an overstatement of revenue in subsequent
15   　　　periods as the number of pay in arrears customers in the Company's
     　　　customer base declined.
16
17   　　　[3] In connection with management's review, errors were also identified
     　　　relating to the classification of certain components of equipment revenues
18   　　　and cost of equipment. Prior to June 2007, approximately $120 million of
     　　　revenue from the sale of equipment was offset against related cost of
19   　　　equipment and reported on a net basis. The reclassification of these
     　　　revenues and costs on a gross basis will not impact operating income.

20   *Id.* ¶ 57 (emphasis and numbering added), quoting November 9, 2007 press release, RJN, Exh.

21   B, at 8–9.

22   　　　On December 14, 2007, Leap reported its results for the third quarter of 2007 (ending

23   September 30, 2007), which were not restated. Complaint ¶ 61. Leap provided additional details

24   explaining and quantifying the anticipated restatement, including the understatement and

25   overstatement of revenues at different times. *Id.* On December 26, 2007, Leap filed its restated

26   ――――――――――――――――
     [1]    Plaintiff's evident assumption that the errors were deliberately planned in order to overstate
27   　　　Leap's results makes no sense given that the same errors understated Leap's results,
     　　　generally in earlier periods when the errors began. *Cf. id.* ¶¶ 38–41.
28

1   financial statements for the affected periods (2004, 2005, 2006, and the first two quarters of

2   2007) and again described the errors (*id.* ¶ 62) as well as the deficiencies internal controls that

3   led to the errors (which Plaintiff selectively ignores).  *See* Note 4, below.

4       Restatements are governed by GAAP.  They are defined as revisions of previously issued

5   financial statements "to reflect the correction of an **error** in those financial statements."  SFAS

6   No. 154, RJN, Exh. C, at 18 (emphasis added).  A restatement corrects "'mathematical errors"

7   and "mistakes in the application of accounting principles" when the financial statements were

8   prepared.  *In re Interpool, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 18112, *15 (D. N.J. Aug. 17,

9   2005), *quoting* APB No. 20 (superseded by SFAS No. 154).  Contrary to Plaintiff's evident

10  assumption, Leap's restatement is not an admission of deliberate or knowing errors.  The cases

11  are legion in the Ninth Circuit and elsewhere that "the mere publication of inaccurate accounting

12  figures, or a failure to follow GAAP, without more, does not establish [a culpable state of

13  mind]."  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).[2]

14  Plaintiff has alleged *not a single fact* suggesting that the accounting errors in this case were the

15  result of any misconduct or attempt to manipulate Leap's financial results.  In hindsight, it seems

16  fairly unsurprising that errors might have arisen as Leap emerged from bankruptcy to rapid

17  growth.  *See* Complaint ¶ 40 (commenting on Leap's growth from 2004 to 2007).

18      As alleged in the Complaint, the restatements had a net cumulative impact of reducing

19  Leap's service revenue by about $8 million and its operating income by about $23 million over

20  three and a half years.  *Id.* ¶ 3.  To put the relative magnitude of these adjustments in some

21  context, Leap's cumulated corrected service revenue was about $2.68 billion and cumulated

22

23

24

---

25  [2]  *See, e.g.*, *In re Guess?, Inc. Sec. Litig.*, 174 F. Supp. 2d 1067, 1078 (C.D. Cal. 2001)
    ("violations of GAAP are just as consistent with the existence of an accounting problem of
26  unknown scope as they are with intentions to hide the performance of the company"); *Reiger
    v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1009-10 (S.D. Cal. 2000)
27  ("Violations of GAAP or GAAS, standing alone, … provide no specific facts upon which a
    court can infer … state of mind").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

6

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1  corrected operating income was about $136 million (excluding during bankruptcy). RJN, Exh D.

2  at 29–38 ; Exh. E at 49–52.[3]

3      **C.      Audit Committee Oversight of Leap's Financial Reporting**

4          Plaintiff seeks to blame Leap's board of directors for the restatement, especially the Audit

5  Committee, by claiming – without any alleged factual basis – that the Audit Committee "knew

6  that they were not properly accounting for the Company's… [revenues and expenses] under

7  [GAAP]." Complaint ¶ 2. Ironically, Plaintiff's allegations reflect that Leap's Audit Committee

8  was diligent in assuring that it was adequately informed – but *not* that the Audit Committee or

9  any other director had advance knowledge of the errors that were corrected in the restatement.

10  As Leap disclosed, those errors were only identified after Leap initiated an in-depth review in

11  September 2007. *Id*. ¶ 60 at 17:12-13.

12          As Plaintiff alleges, Leap's three-person Audit Committee was (and is) appropriately

13  composed of outside, non-officer directors. *Id*. ¶¶ 16, 18, 19 (Targoff, Harkey, and LaPenta).

14  The Audit Committee Charter, which Plaintiff quotes at length, lists the Audit Committee's

15  oversight responsibilities, including, among other things, to "meet with management,

16  independent auditors and senior internal audit executives" in connection with "major issues as to

17  the adequacy of the Company's internal controls," "annual audited financial statements," and

18  "quarterly financial statements." *Id*. ¶ 32. Plaintiff does not allege that the Audit Committee

19  abdicated, ignored, or otherwise failed to perform any of these responsibilities.

20          To the contrary, Plaintiff makes much of the Audit Committee's hard work and diligence.

21  The Audit Committee met 26 times during the three years covered by the restatement (nine times

22  in 2004, ten times in 2005, and seven times in 2006). *Id*. ¶¶ 68–70. The Audit Committee met

23  directly with management, which is responsible for preparing the financial statements, and with

24  Leap's independent auditor, PwC, which is responsible for auditing the financial statements. *Id*.

25

26  [3]   As the Complaint suggests, Leap separately reported the financial results of pre- and post-
    bankruptcy entities. (Complaint ¶¶ 61–62). During the pre-emergence period, from January

27  1 through July 31, 2004, Leap experienced negative operating income. The numbers offered
    for comparison in the text are post-bankruptcy.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                    7

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1   While the Audit Committee took all the right steps to inform itself, Plaintiff does not (and

2   cannot) allege that management or PwC informed the Audit Committee of the accounting errors

3   *before* those errors were discovered in the fall of 2007.  *Id.* ¶ 67.[4]

4        **D.    Demand Futility Allegations**

5        Plaintiff alleges that a pre-suit demand on Leap's board would have been futile because

6   the board is "incapable of independently and disinterestedly" considering a demand to act on the

7   alleged claims.  *Id.* ¶ 77.  Plaintiff says nothing about Rachesky in support of this contention,

8   thus essentially conceding that Rachesky is both disinterested and independent.  *Id.*  Plaintiff

9   asserts that Harkey, LaPenta, and Targoff face a "substantial likelihood" of liability for breach of

10  fiduciary duty and violation of Section 10(b) based on their Audit Committee service.  *Id.* ¶ 77d.

11  He alleges that Hutcheson faces the same exposure based on his management status.  *Id.* ¶ 77b.

---

[4]   Although Plaintiff spills a fair amount of ink on the board's alleged disregard of "internal control" deficiencies (*e.g.*, *id.* ¶¶ 31, 34, 35), he selectively ignores Leap's restatement disclosure on this very point.  RJN, Exh. D, at 40 (Form 10-K/A); Ex. E, at 53–54 (Form 10-Q/A).  As Leap explained, management and PwC believed that internal controls were effective until the errors were discovered.  Plaintiff alleges no basis to infer that the Audit Committee should have second-guessed the judgment of Leap's management and outside auditors regarding the efficacy of Leap's internal controls – indeed, the Audit Committee was entitled to rely on their judgment and to be "fully protected" in so doing.  Del. Code tit. 8, § 141(e); *see* note 11, below.  As Leap explained:

"Management had previously concluded that the Company maintained effective internal control over financial reporting as of December 31, 2006.

In connection with the restatement … management determined that the material weakness discussed below existed as of December 31, 2006.  Accordingly, management has now concluded that our internal control over financial reporting was not effective as of December 31, 2006.  In connection with management's assessment of internal control over financial reporting, management identified the following material weakness as of December 31, 2006:

There were deficiencies in our internal controls over the existence, completeness and accuracy of revenues, cost of revenues and deferred revenues.  Specifically, the design of controls over the preparation and review of the account reconciliations and analysis of revenues, cost of revenues and deferred revenues did not detect the errors in revenues, cost of revenues and deferred revenues.  A contributing factor was the ineffective operation of our user acceptance testing (i.e., ineffective testing) of changes made to our revenue and billing systems in connection with the introduction or modification of service offerings.  This material weakness resulted in the accounting errors which have caused us to restate our consolidated financial statements[.]  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

8

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1   He contends that Targoff and Hutcheson also face a "substantial likelihood" of liability on the

2   insider trading claim.  *Id*. ¶ 77a.

3   **III.    ARGUMENT**

4         **A.    Delaware Law Governs Plaintiff's Standing To Bring This Action**

5         "A shareholder seeking to represent the interests of a corporation through a derivative

6   suit must either demand that the corporation's directors take action or plead with particularity the

7   futility of making such a demand."  *Jones ex. rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d

8   1325, 1331–32 (D. Ariz. 2007); Fed. R. Civ. P. 23.1 (a derivative complaint must "state with

9   particularity" the plaintiff's pre-suit demand effort or "the reasons for not . . . making the

10  effort").  The purpose of the demand requirement is to "affor[d] the directors an opportunity to

11  exercise their reasonable business judgment and waive a legal right vested in the corporation," if

12  the directors believe that the best interests of the corporation will be served.  *CSK Auto*, 503 F.

13  Supp. 2d at 1331, quoting *Kamen v. Kemper Fin. Servs. Inc.,* 500 U.S. 90, 96 (1991).  While

14  Federal Rule 23.1 requires a derivative plaintiff to plead an excuse for failure to make a demand

15  "with particularity," Delaware law governs what allegations may be sufficient to excuse demand

16  in this case.  *CSK Auto*, 503 F. Supp. 2d at ("Rule 23.1 does not establish guidelines for

17  determining when demand would be futile" and, therefore, "a court must look to the substantive

18  law of the state of incorporation").[5]

19        In order to excuse his failure to make a demand, Plaintiff must plead facts meeting the

20  standards set forth in *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993).[6]  *See Guttman v.*

21  *Huang*, 823 A.2d 492, 499 (Del. Ch. 2003) (applying *Rales* where, as here, directors were

---

[5]    Delaware law controls as Leap's state of incorporation.  The "internal affairs doctrine" recognizes that "only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands."  *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); Cal. Corp. Code § 2116 (codifying the internal affairs doctrine).

[6]    *Rales* governs the determination of demand futility where the alleged corporate claims, like those alleged here, do not challenge a business decision of the board.  *See Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006).  An alternative test set forth in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), governs when the claims challenge a business decision.  *Id*. at 814.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                    9                      CASE NO. 08-CV-0246
                                                          POINTS AND AUTHORITIES IN SUPPORT OF
                                                          MOTION TO DISMISS DERIVATIVE COMPLAINT

1    accused of trading on inside information and failing to assure compliance with accounting

2    standards). Under *Rales*, Plaintiff must allege facts that, if true, establish a "reasonable doubt"

3    that a majority of the board is sufficiently (1) disinterested and (2) independent to exercise valid

4    business judgment in responding to a demand to act on the alleged claims. 634 A.2d at 933-34;

5    *see Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 (Del.

6    Ch. 2003), *aff'd*, 845 A.2d 1040 (Del. 2004) ("*Rales* requires that a majority of the board be able

7    to consider and appropriately to respond to a demand 'free of personal financial interest and

8    improper extraneous influences'").[7] "Reasonable doubt" cannot be based on "mere suspicions or

9    stated solely in conclusory terms." *Grimes v. Donald*, 673 A.2d 1207, 1217 (Del. 1996).

10        To protect companies from strike suits by shareholders who simply sue the whole board

11    in order to avoid the demand requirement, Delaware courts developed standards for determining

12    when a director is "interested" in a claim. Directors are "interested" only if they allegedly

13    engaged in "such egregious conduct … that they face a substantial likelihood of liability" on the

14    claim. *Seminaris v. Landa*, 662 A.2d 1350, 1355 (Del. Ch. 1995); *Rales*, 634 A.2d at 936;

15    *Guttman*, 823 A.2d at 500 (discussing the problem of strike suits). Directors lack independence

16    if they allegedly are so "dominated or otherwise controlled" by an *interested* person (*Grobow v.

17    Perot*, 539 A.2d 180, 189 (Del. 1988)), that "their discretion would be sterilized." *Rales*, 634

18    A.2d at 936–37. As shown below, Plaintiff's conclusory, boilerplate allegations do not show that

19    any of Leap's directors, much less a majority, are either personally "interested" in the alleged

20    claims, or lack independence from any "interested" person.

21

22    ---
      [7]   The board's decision on a shareholder demand to take action is a business judgment. The
23        "business judgment rule" is the "presumption that in making a business decision the directors
          . . . acted on an informed basis, in good faith and in the honest belief that the action taken
24        was in the best interests of the corporation." *Brehm v. Eisner*, 746 A.2d 244, 264 n. 66 (Del.
          2000) (citations and quotations omitted). Demand futility allegations must overcome this
25        presumption by establishing "reasonable doubt" that the directors are capable of exercising
          disinterested and independent business judgment. *Rales*, 634 A.2d 927. S*ee also In re
26        IAC/InterActive Corp. Sec. Litig.*, 478 F. Supp. 2d 574, 598 (S.D. N.Y. 2007) (applying
          Delaware law and holding that "Directors are entitled to a presumption that they were faithful
27        to their fiduciary duties, thus the burden is upon the plaintiff to allege particularized facts to
          rebut the presumption at the pleading stage.").

28

LATHAM&WATKINS⊔ᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

10

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

**B.**     **Plaintiff Does Not Allege Any Adequate Excuse For Failure For Make A Pre-Suit Demand**

When this lawsuit was filed, Leap's board was (and still is) composed of five directors – one inside director (CEO Hutcheson) and four outside directors.  Plaintiff must plead, with particularity, facts demonstrating that at least *three* of these directors would have been unable to fairly exercise business judgment on a pre-suit demand.  Plaintiff contends that the directors are all "interested" because each faces a "substantial likelihood" of liability for breach of fiduciary duty and violation of Section 10(b) based on Leap's erroneous financial reporting, and two of the directors face a "substantial likelihood" of liability for allegedly selling stock on non-public knowledge of Leap's accounting errors.  Complaint ¶ 77.  As shown in the discussion in Section B.1, below, Plaintiff's allegations do not allege a "substantial likelihood" of liability under any of these theories and, therefore, fail to establish that any director is "interested."

Plaintiff does not even attempt to allege that any of the directors lack "independence," except for Hutcheson.  Plaintiff contends that Hutcheson is not independent of Rachesky or Targoff because they, as members of Leap's compensation committee, control Hutcheson's compensation.  *Id.* ¶ 77c.  The trouble with Plaintiff's argument is that neither Rachesky nor Targoff are "interested" because neither faces a "substantial likelihood" of liability, as discussed below.  Thus, even assuming Hutcheson lacks independence from them, there is no basis to infer that Rachesky or Targoff would control or influence Hutcheson's business decision on a demand.  *See Beam v. Stewart*, 845 A.2d 1040, 1049–50 (Del. 2004) (plaintiff "must create a reasonable doubt that a director is not so 'beholden' to an **interested** director . . . that his or her discretion would be sterilized.") (emphasis added); *Brehm v. Eisner*, 746 A.2d 244, 258 (Del. 2000) (issue of director independence need not be reached when plaintiff had not shown director interest).

Moreover, if Plaintiff's analysis were correct, it is hard see how a CEO could *ever* exercise business judgment free from the presumed influence of the compensation committee or the board.  This nonsensical result would throw Delaware corporate law on its head.  *See In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1196 (N.D. Cal. 2007) (rejecting argument that CEO lacks independence solely due to interest in employment and compensation); *Jacobs v.*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

11

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1   *Yang*, 2004 Del. Ch. LEXIS 117, at \*17–18, (Del Ch. Aug. 2, 2004) (CEO independent despite

2   possible loss of employment).  In short, Hutcheson is clearly "independent" for purposes of

3   considering a pre-suit demand in this case.  But even if he were not counted, there would still be

4   a majority of *four concededly independent* directors – and Plaintiff has alleged no "substantial

5   likelihood" of liability with respect to any of the five.

6               1.      **Plaintiff Does Not Allege That Any Director Faces A "Substantial**
                        **Likelihood of Liability"**
7

8           As noted, to show that each of the directors has a disabling "interest" in the asserted

9   claims, Plaintiff must allege that they each "face a 'substantial likelihood' of personal liability"

10  from the challenged conduct.  *Rales*, 634 A.2d at 936; *Guttman*, 823 A.2d at 501.  The "mere

11  threat" of liability is not enough – otherwise, would-be derivative plaintiffs could side-step the

12  demand requirement simply by suing the whole board, as Plaintiff has done here.  *Guttman*, 823

13  A.2d at 500.  The particularized facts must show "egregious circumstances" surrounding the

14  director's conduct.  *Rattner v. Bidzos*, 2003 Del. Ch. LEXIS 103, at \*29 (Del. Ch. 2003).

15          The ordinary standard of liability for Delaware directors is gross negligence, but the

16  existence of a fiduciary shield raises the liability bar higher.  *Desimone v. Barrows*, 924 A.2d

17  908, 933 (Del. Ch. 2007).  Delaware law permits stockholders to eliminate directors' liability for

18  gross negligence and other breaches of fiduciary duty that fall short of intentional misconduct,

19  bad faith, or disloyalty.  Del. Code tit. 8, § 102(b)(7); *see In re Walt Disney Co. Derivative Litig.,*

20  906 A.2d 27, 65 (Del. 2006) (the "exculpatory provision affords significant protection to

21  directors of Delaware corporations").  Leap's stockholders adopted such a "fiduciary shield"

22  provision.  RJN, Exh. A, at 3–4.  Thus, to plead an excuse for failure to make a demand, Plaintiff

23  must allege a "substantial likelihood" of director liability for conduct that would not be

24  exculpated by the fiduciary shield – *i.e.*, intentional misconduct, bad faith or disloyalty.

25  Plaintiff's conclusory allegations do not come close.

26          Delaware courts have long established that the fiduciary shield may be invoked at the

27  pleading stage to challenge the adequacy of demand futility allegations.  *Stone v. Ritter*, 911

28  A.2d 362, 367 (Del. 2006) (section 102(b)(7) shield provision is "[c]ritical" to a plaintiff's

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

12

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    demand futility argument based on a likelihood of personal liability); *see In re Sagent Tech. Inc.*

2    *Derivative Litig.*, 278 F. Supp. 2d 1079, 1095 & n.9 (N.D. Cal. 2003) (taking judicial notice of

3    the shield on a motion to dismiss derivative claims for failure to make a demand).[8]  The

4    fiduciary shield is critical to assessment of the director's alleged potential liability exposure.  As

5    the Delaware Supreme Court has held, "even if the plaintiffs had stated a claim for gross

6    negligence, such a well-pleaded claim is unavailing [where] defendants have brought forth the

7    Section 102(b)(7) charter provision that bars such claims.  <u>This is the end of the case</u>." *Malpiede*

8    *v. Townson*, 780 A.2d 1075, 1094–95 (Del. 2001) (emphasis added).  As discussed below,

9    Plaintiff has not alleged that any director faces a "substantial likelihood" of liability on any

10    theory.

11                a.        **No Likelihood of Liability For Alleged Failure of Oversight**

12    
13           Plaintiff's leading liability theory is that Leap's directors breached their duty of loyalty to

14    Leap by causing, permitting, or failing to prevent Leap from issuing "false" financial statements,

15    when the directors supposedly "knew" that the accounting was incorrect and that Leap's internal

16    controls over financial reporting were deficient.  Complaint ¶¶ 2, 34–35, 65–66.  While Plaintiff

17    blames the whole board for these illusory failings, his allegations are directed primarily against

18    the Audit Committee.  *Id.* ¶¶ 37–39, 67–71.

19           This is a classic "failure of oversight" claim governed by the standards set forth in

20    *Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ct. Ch. 1996), recently reaffirmed by

21    the Delaware Supreme Court in *Stone*, 911 A.2d at 370.  Establishing director liability under

22    *Caremark* is "possibly the most difficult theory in corporation law upon which a plaintiff might

23    hope to win a judgment." *Caremark*, 698 A.2d at 967.  "[O]nly a sustained or systematic failure

24    of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable

---

25    [8]    *See also Guttman*, 823 A.2d at 501 (invoking the fiduciary shield in dismissing derivative
26    claims for failure to plead demand futility); *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d
      1268, 1270-71 (Del. Ch. 1995) (same); *Ash v. McCall*, 2000 Del. Ch. LEXIS 144, at *55
27    (Del. Ch. Sept. 15, 2000) (same, where plaintiffs failed to allege particularized facts that
      directors knew about but ignored accounting irregularities).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                    13                    CASE NO. 08-CV-0246
                                                        POINTS AND AUTHORITIES IN SUPPORT OF
                                                        MOTION TO DISMISS DERIVATIVE COMPLAINT

1    information and reporting system exists – will establish <u>the lack of good faith that is a necessary</u>

2    <u>condition to liability</u>." *Id.* at 971 (emphasis added). "Imposition of liability requires a showing

3    that the directors <u>knew</u> that they were not discharging their fiduciary obligations …thereby

4    demonstrating a <u>conscious disregard</u> for their responsibilities," resulting in a breach of the duty

5    of loyalty to the company and a failure to discharge their fiduciary duty in good faith. *Stone*, 911

6    A.2d at 370 (emphasis added). A *Caremark* claim "require[s] a finding that the directors acted

7    with the state of mind traditionally used to define the mindset of a disloyal director – bad faith" –

8    meaning a "knowing decision" to harm the corporation. *Desimone v. Barrows*, 924 A.2d 908,

9    935 (Del. Ch. 2007); *Guttman*, 823 A.2d at 506 (plaintiffs must show that "the directors were

10   conscious of the fact that they were not doing their jobs").

11       Plaintiff's conclusory allegations do not demonstrate a "substantial likelihood" (or any

12   likelihood) of director liability based on a *Caremark* claim. Plaintiff relies entirely on rote

13   recitals that the directors "knew" of the accounting errors and "received numerous (unspecified)

14   reports regarding problems with Leap's accounting and financial reporting practices and internal

15   controls." Complaint ¶¶ 35, 65, 66. These allegations are nothing more than filler and no

16   substitute for specific allegations that the directors "had clear notice of serious . . . irregularities

17   and simply chose to ignore them." *Guttman*, 823 A.2d at 507; *Rattner*, 2003 WL 2228423, at

18   *13 (rejecting similarly conclusory allegations as insufficient to excuse demand). "Plaintiff does

19   not provide any particularized information about the internal corporate documents that

20   [directors] allegedly reviewed, details of the conversations they had with other corporate officers,

21   or what information was discussed at the Board meetings they attended." *CSK Auto*, 503 F.

22   Supp. 2d at 1338–39 (applying Delaware law and dismissing complaint for failure to plead

23   demand futility); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1454 (S.D. Cal. 1988) (same).

24       Indeed, Plaintiff alleges no factual information whatsoever to suggest that the directors

25   "knew" about the accounting errors before Leap discovered them in the fall of 2007. To show

26   the directors knew about the accounting errors and consciously disregarded them, Plaintiff would

27   have to plead particularized facts demonstrating, for example, "red flags" that put the directors

28   on notice of accounting errors or internal control deficiencies. *See David B. Shaev Profit*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

14

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    *Sharing Account v. Armstrong*, 2006 Del. Ch. LEXIS 33, at *15 (Del. Ch. Feb. 13, 2006);

2    *Guttman*, 823 A.2d at 507.  While "red flags" are "useful when they are either waived in one's

3    face or displayed so that they are visible to the careful observer" (*Rattner*, 2003 Del. Ch. LEXIS

4    103, at *46, quotation omitted), Plaintiff does not wave flags of any color.  The Complaint is

5    dead on arrival, bereft any indicia that the directors had advance knowledge or notice of Leap's

6    accounting errors, much less ignored them.

7        Ironically, Plaintiff's Audit Committee allegations affirmatively undercut any *Caremark*

8    claim by demonstrating that Leap's board had a reasonable system of oversight in place.  *See*

9    *Stone*, 911 A.2d at 373 (where oversight system exists and no "red flags" alert directors of

10   problems, a *Caremark* claim is insufficient to excuse demand).  As Plaintiff admits, Leap's Audit

11   Committee met regularly – indeed, frequently – throughout the relevant period to oversee Leap's

12   financial reporting.  Complaint ¶¶ 32, 68–70.  The Audit Committee met with management and

13   with Leap's independent outside financial statement auditors, PwC.  *Id.* ¶¶ 68–70.

14       The Complaint does not allege, however, nor could it, that the Audit Committee was

15   informed by management or PwC of the accounting errors or internal control weaknesses, which

16   were only later identified as a result of Leap's internal review in the fall of 2007.  *See id.* ¶ 60 at

17   17:12-13.  Under Delaware law, the Audit Committee was fully entitled to rely on Leap's

18   management and independent auditors in performing its oversight role and is "fully protected"

19   from liability in so doing.[9]  The fact that the Audit Committee's exemplary performance of its

20   oversight duties did not expose the accounting errors earlier cannot establish any basis for

21   director liability.  *See Caremark*, 698 A.2d at 972 (no director liability for failing to prevent

22

23   [9]  Directors may rely in good faith on reports by management and the company's auditors and
24   are "fully protected" from liability in so doing.  8 Del. Code § 141(e) ("<u>A member of the</u>
     <u>board of directors</u>, or a member of any committee designated by the board of directors, <u>shall</u>,
25   in the performance of such member's duties, <u>be fully protected in relying in good faith</u> upon
     the records of the corporation and <u>upon such information</u>, opinions, reports or statements
26   <u>presented</u> to the corporation <u>by any of the corporation's officers</u> or employees, or committees
     of the board of directors, <u>or by any other person as to matters</u> the member reasonably
27   believes are <u>within such other person's professional or expert competence</u> and who has been
     selected with reasonable care by or on behalf of the corporation.") (emphasis added).
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

15

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1  violations of health care laws); *David B. Shaev*, 2006 Del. Ch. LEXIS 33, at *15 (no director

2  liability for failing to prevent improper corporate transactions).

3      Finally, Plaintiff labors under a general misconception that mere service on the Audit

4  Committee somehow exposes the members to liability for issuing "false financial statements."

5  Complaint ¶¶ 2, 38.  Not surprisingly, there is no authority to support any such sweeping liability

6  and the law is to the contrary.  Audit committee membership, without more, provides no basis

7  for liability for misstated financial statements, even if the members "reviewed [the] financial

8  statements," or "actively participated" in issuing them.  *CSK Auto*, 503 F. Supp. 2d at 1337.

9      As discussed, a restatement, standing alone, is not evidence of wrongdoing and is fully

10  consistent with honest error.  Restatements are required by GAAP "to reflect the correction of an

11  <u>error</u> in [prior] financial statements."  SFAS No. 154, RJN, Exh. C, at 18 (emphasis added);

12  *Interpool*, 2005 U.S. Dist. LEXIS 18112, *15 (a restatement corrects "'mathematical errors," and

13  "mistakes in the application of accounting principles," or use of facts that existed when the

14  financial statements were prepared).  Thus, contrary to Plaintiff's evident assumption, Leap's

15  restatement is not an admission of any knowing or deliberate misstatement.  Naturally, the law in

16  the Ninth Circuit and elsewhere is consistent with GAAP:  "[T]he mere publication of inaccurate

17  accounting figures, or a failure to follow GAAP, without more, does not establish [a culpable

18  state of mind]."  *DSAM*, 288 F.3d at 391.[10]  Thus, absent facts demonstrating that Leap's Audit

19  Committee knew of the accounting errors – which Plaintiff cannot allege – the member's review

20  of Leap's financial statements provides no basis for liability.  *See CSK Auto* 503 F. Supp. 2d at

21  1337 (dismissing derivative claims where allegations did not show that the audit committee

22

---

23  [10]  *See*, *e.g.*, *In re Guess?, Inc. Sec. Litig.*, 174 F. Supp. 2d 1067, 1078 (C.D. Cal. 2001)
     ("violations of GAAP are just as consistent with the existence of an accounting problem of

24  unknown scope as they are with intentions to hide the performance of the company"); *Reiger
     v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1009–10 (S.D. Cal. 2000)

25  ("Violations of GAAP or GAAS, standing alone, … provide no specific facts upon which a
     court can infer … state of mind"); *Fin. Acquisition Partners. v. Blackwell*, 440 F.3d 278, 290

26  (5th Cir. 2006) ("failure to follow accounting standards, without more, does not establish
     scienter"); *Chill v. GE*, 101 F.3d 263, 269 (2d Cir. 1996) ("allegations of a violation of

27  GAAP provisions … without corresponding fraudulent intent, are not sufficient to state a
     securities fraud claim").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

16

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    "knew about prior errors in [financial] statements"); *Guttman*, 823 A.2d at 494–95, 504

2    (dismissing derivative claims based on conclusory allegations of audit committee liability for

3    restatement).[11]  Even if Plaintiff had alleged some negligence in the Audit Committee's financial

4    statement review process – which he has not – this would fall entirely within the protection

5    afforded by Leap's fiduciary shield.[12]  In short, Plaintiff has not alleged a "substantial

6    likelihood" that the members of Leap's Audit Committee, or any other directors, are liable based

7    on Leap's issuance of erroneous financial statements.

8                    b.    **No Likelihood of Liability Based on Alleged Insider Trading**

9            Plaintiff alleges that two directors – Hutcheson (the CEO) and Targoff (an outside

10   director) – face a "substantial likelihood" of liability for unjust enrichment based on their sales of

11   Leap stock several months before Leap announced discovery of accounting errors.  Complaint

12   ¶¶ 45, 83.  The issue of whether Hutcheson and Targoff are "interested" in these claims for

13   purposes of demand futility is somewhat academic.  Setting both of these directors aside, there

14   remains a board majority of three disinterested directors who could exercise valid business

15   judgment on a demand to bring these claims – *i.e.*, Rachesky, LaPenta, and Harkey.  None of

16   these directors is alleged to lack independence from either Hutcheson or Targoff.  *See id.* ¶ 77.

17           That said, Plaintiff's conclusory allegations of illegal insider trading are not sufficient to

18   make even Hutcheson or Targoff "interested."  Plaintiff alleges that Hutcheson sold stock on

19   February 27, 2007 and May 23, 2007, and Targoff sold stock on June 6, 2007.  *Id.* ¶ 45.  Plaintiff

20   contends, without any factual support, that these sales were based on knowledge of Leap's

21   accounting errors.  *Id.* ¶ 83.  These sales occurred, however, three to six months *before* Leap

22

---

[11]  *See also Jones v. Jenkins*, 503 F. Supp. 2d 1325, 1333–36 (D. Ariz. 2007) (rejecting
23      conclusory derivative allegations that audit committee members participated in, reviewed or
        failed to oversee and prevent inaccurate false statements as insufficient to excuse demand);
24      *Rattner*, 2003 Del. Ch. LEXIS 103 at *48 (audit committee does not face liability merely
        because the company issued incorrect financial statements); *In re Coca-Cola Enters.*, 478 F.
25      Supp. 2d 1369, 1378 (N.D. Ga. 2007) ("a director is not interested merely by virtue of sitting
        on an Audit Committee while the corporation faces accounting and audit irregularities").

26   [12]  *See Sagent*, 278 F. Supp. 2d 1979 at 1092–93 (dismissing derivative claims against audit
        committee based on false financial statements where allegations failed to show intentional
27      misconduct or bad faith that would not be exculpated by the fiduciary shield).

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

17

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    even *initiated* the internal review in September 2007 that led to discovery of the accounting

2    errors announced on November 9, 2007.  *Id.* ¶¶ 60 at 17:12-13; 56.  Apart from Plaintiff's bare

3    assertions, he alleges nothing to show that Hutcheson or Targoff had the faintest idea of the

4    existence of the accounting errors when they sold stock.

5            As many courts have recognized, it is normal, lawful, and expected for corporate officers

6    and directors to trade in a company's securities.  *See*, *e.g.*, *Sagent*, 278 F. Supp. 2d at 1089

7    ("[B]are allegations of stock sales are insufficient (to plead lack of disinterest) because the

8    trading of stock (by insiders) is not itself improper under Delaware law."); *Guttman*, 823 A.2d at

9    502 ("As a matter of course, corporate insiders sell company stock").[13]  So, in order to allege

10   that particular trades were *unlawful*, a plaintiff must plead facts demonstrating "that the selling

11   defendants acted with scienter."  *Guttman*, 823 A.2d at 505 (dismissing conclusory derivative

12   claims for insider trading).  That means pleading "with detail that each sale by each individual

13   defendant was entered into and completed on the basis of, and because of, adverse material non-

14   public information."  *Coca-Cola*, 478 F. Supp. 2d at 1380; *Mitzner v. Hastings*, 2005 U.S. Dist.

15   LEXIS 835, at *14 (N.D. Cal., Jan. 14, 2005) (plaintiff must allege "particular facts …

16   connecting particular trades to information acquired at particular times"); *Rattner*, 2003 Del. Ch.

17   LEXIS 103 at *36–38 (rejecting conclusory derivative insider trading allegations).

18           This is exactly what Plaintiff has *not* alleged.  The Complaint is "devoid of any

19   particularized facts that could lead to the inference that the timing of the trades reflected the . . .

20   Defendants' impermissible insider trading."  *Rattner*, 2003 Del. Ch. LEXIS 103, at *34.  A

21   director is not "'interested' whenever a derivative plaintiff cursorily alleges that he made sales of

22   company stock in the market at a time when he possessed material, non-public information."

23   *Guttman*, 823 A.2d at 502.  Because Plaintiff offers nothing more than conclusory allegations, he

24

25

26

---

27   [13]  *See also McCall v. Scott*, 239 F.3d 808, 825 (6th Cir. 2001) (officers and directors who
           receive compensation in stock and options "should be expected" to trade those securities).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

18

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1   has failed to allege that either Hutcheson or Targoff face a "substantial likelihood" of liability for

2   unjust enrichment based on illegal insider trading.[14]

3                    c.    **No Likelihood of Liability For Alleged Securities Fraud**

4        Plaintiff asserts a last ill-conceived claim that all of the defendants committed securities

5   fraud against Leap. How? Plaintiff does not say. Presumably, the claim is based on Leap's

6   erroneous financial statements. *See* Complaint ¶ 86. Plaintiff asserts that Leap was "deceived"

7   into granting unspecified restricted stock and options. *Id.* ¶ 89. Plaintiff does not shed any light

8   on what corporate constituencies of Leap were allegedly "deceived." Since Plaintiff has sued

9   everyone on the board and most of the senior management team for perpetrating the alleged

10  deception, it is difficult to imagine who might be left to serve as a victim. *See Verisign*, 531 F.

11  Supp. 2d at 1209 (dismissing derivative Section 10(b) claim and holding that "[r]eliance cannot

12  be established when the individual allegedly acting on a misrepresentation 'already possess

13  information sufficient to call the representation into question[,]'" citing *Atari Corp. v. Ernst &*

14  *Whinney*, 981 F.2d 1025, 1030 (9th Cir. 1992)).

15       This patently defective claim presents no "substantial likelihood" of liability on the part

16  of Leap's board of directors, and no basis to infer any impairment of the directors' ability to

17  disinterestedly consider a demand to assert the claim. Plaintiff has made no effort to comply

18  with the pleading standards under the PSLRA required to state a federal securities fraud claim

19  against the directors. The PSLRA takes the fraud pleading standards beyond Rule 9(b). It

20  requires that "[t]he complaint shall specify each statement alleged to have been misleading, the

21  reason or reasons why the statement is misleading, and, if an allegation regarding the statement

22

23  [14] Plaintiff took the alleged trading information from the SEC Forms 4 on which Hutcheson's
24  and Targoff's sales were publicly reported as required by the SEC. Those Forms 4, which
    are provided for judicial notice, (RJN, Exhs. F, G, and H) reflect data that counters Plaintiff's
    allegations of improper trading. Specifically, Hutcheson's sale on February 27, 2007 was
25  reported pursuant to a predetermined, non-discretionary 10b5-1 trading plan. RJN, Exh. F,
    at 58. *See Provenz v. Miller*, 102 F.3d 1478, 1491 (9th Cir. 1996) ("credible and wholly
26  innocent explanations for stock sales, ranging from long-standing programs of periodic
    divestment, to the need to free cash to meet matured tax liabilities [if unrebutted] are
27  sufficient to defeat any inference of bad faith.") (internal citations and quotations omitted).

28

1    or omission is made on information and belief, the complaint shall state with particularity all

2    facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

3        The PSLRA also further requires plaintiffs to plead the scienter of each defendant "with

4    respect to each act or omission" alleged to violate Section 10(b) and, further, must "state with

5    particularity facts giving rise to <u>a strong inference</u> that the defendant acted with [scienter]." 15

6    U.S.C. § 78u-4(b)(2) (emphasis added).  Scienter is a "mental state embracing intent to deceive,

7    manipulate, or defraud." 15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

8    127 S. Ct. 2499, 2504 (2007).  In the Ninth Circuit, scienter means "deliberately reckless or

9    conscious misconduct" (*DSAM*, 288 F.3d at 388–89), that "come[s] closer to demonstrating

10   <u>intent</u>, as opposed to mere motive and opportunity.'" *In re Silicon Graphics, Inc. Sec. Litig.*, 183

11   F.3d 970, 974 (9th Cir. 1999) (emphasis added).

12       Plaintiff's pleading deficiencies under the PSLRA are exposed in detail in the individual

13   defendant's motion to dismiss, and need not be repeated here.  The bottom line is, Plaintiff has

14   not alleged that any director made, approved, or signed any allegedly false financial report, while

15   knowingly or recklessly disregarding any material errors or misstatements.  Plaintiff's allegations

16   of "access" to unspecified reports, attendance at unspecified meetings, and participation in

17   unspecified communications does not support an inference that the directors possessed any

18   contemporaneous information of accounting errors in Leap's financial statements.  *See*, *e.g.*,

19   *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (conclusory allegations of

20   "access to internal data" is insufficient to plead scienter); *Alaska Elec. Pension Fund v. Adecco,*

21   *S.A.*, 434 F. Supp. 2d 815, 831 (S.D. Cal. 2006) (dismissing 10(b) claim where plaintiff failed to

22   plead "details as to the information" allegedly provided to defendants); *In re Hansen Natural*

23   *Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159–60 (C.D. Cal. 2007) (plaintiffs "cannot base an

24   inference of scienter on unspecified documents and conversations").[15]

25   _____

26   [15]  *See also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002) (dismissing
     10(b) claim where plaintiffs "failed to cite any specific report, to mention any dates or
     contents of reports, or to allege their sources of information about any reports"); *Verisign*,
27   531 F. Supp. 2d at 1207 (dismissing 10(b) claim where complaint "contain[ed] no specific
     allegations of contemporaneous reports or data supporting the assertions of scienter – not a

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                      20                    CASE NO. 08-CV-0246
                                                                      POINTS AND AUTHORITIES IN SUPPORT OF
                                                                      MOTION TO DISMISS DERIVATIVE COMPLAINT

1    Plaintiff's assertion of this Section 10(b) claim only underscores the wisdom of the

2    demand requirement which puts the decision to sue in the hands of the board.  While purporting

3    to stand in Leap's shoes, Plaintiff attacks as fraudulent the same financial statements that Leap is

4    *defending* in a Section 10(b) securities investor class action pending before this Court in *HCL*

5    *Ltd. Partners  v. Leap Wireless International, Inc.*, Case No. 07cv2245 BTM (NLS).  Plaintiff's

6    assertion of this claim does not reflect careful consideration of Leap's best interests.

7    **C.    Plaintiff Fails To Allege Continuous Stock Ownership With Particularity**

8    Rule 23.1 sets forth the "continuous ownership" rule for derivative standing:  a plaintiff

9    bringing a derivative action in the right of the corporation must allege with particularity his

10    status as a shareholder.  Fed. R. Civ. P. 23.1; *see also* Del. Code tit. 8, § 327.  The Ninth Circuit

11    has made clear that Rule 23.1 "requires that a derivative plaintiff be a shareholder at the time of

12    the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of

13    the suit."  *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983).  General allegations of

14    ownership at "times relevant" is insufficient; particularized allegations of continuous ownership

15    is required.   *Sagent*, 278 F. Supp. 2d at 1096–97 (a plaintiff has "no standing to sue for

16    misconduct that occurred prior to the time he became a shareholder of the corporation").

17    The continuous ownership rule thus requires Plaintiff to plead with particularity that he

18    was a shareholder continuously from 2004 to 2007 and during the pendency of this case.  *Kona*

19    *Enters., Inc. v. Estate of Bishop*, 179 F.3d 767, 769–70 (9th Cir. 1999); *Chiles*, 719 F.2d at 1047.

20    Plaintiff has failed to do so.  Plaintiff only vaguely alleges that he is and was "at all relevant

21    times" a shareholder of Leap without alleging any specific timeframe.  Complaint ¶ 7.  This is

22    insufficient to satisfy Rule 23.1 and the Complaint must be dismissed on this ground.  *See In re*

23    *Computer Scis. Corp. Derivative Litig.*, 2007 WL 1321715, at *15  (C.D. Cal. 2007) (dismissing

24    derivative complaint under Rule 23.1 because "the Complaint only generally allege[d] that each

25

26    _____

27    single facts showing what each defendant knew, when he/she knew it, or how he/she
     acquired that knowledge").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1

21

CASE NO. 08-CV-0246
POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS DERIVATIVE COMPLAINT

1    Plaintiff 'is, and was during the relevant period,' or 'is, and was at all times relevant to,' a

2    shareholder").

3    **IV.     CONCLUSION**

4         If Plaintiff fails to serve this action on or before June 6, 2008, Leap requests that this

5    Court dismiss the Complaint for lack of prosecution under Federal Rules 4(m) and 41(b).  If the

6    action is served, Leap requests that the Court dismiss the Complaint under Federal Rule 12(b)(6)

7    because Plaintiff has failed to establish standing to assert Leap's corporate claims under Federal

8    Rule 23.1 and Delaware law.

9    Dated:  May 30, 2008                         Respectfully submitted,

10                                                LATHAM & WATKINS LLP
                                                  Miles N. Ruthberg
11                                                Pamela S. Palmer
                                                  Kimberly Arouh Hicks
12                                                Jake Ryan
                                                  Curtis Carll
13                                                Daniel K. Greene

14
                                                  By s/ Pamela S. Palmer
15                                                   Pamela S. Palmer
                                                     Attorneys for Nominal Defendant
16                                                   Leap Wireless International, Inc.
                                                     pamela.palmer@lw.com
17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633473.1                                          22                    CASE NO. 08-CV-0246
                                                                 POINTS AND AUTHORITIES IN SUPPORT OF
                                                                 MOTION TO DISMISS DERIVATIVE COMPLAINT