1  LATHAM & WATKINS LLP
       Miles N. Ruthberg (Bar No. 086742)
2      miles.ruthberg@lw.com
       Pamela S. Palmer (Bar No. 107590)
3      pamela.palmer@lw.com
   633 West Fifth Street, Suite 4000
4  Los Angeles, California 90071-2007
   Telephone: +1.213.485.1234
5  Facsimile: +1.213.891.8763

6  LATHAM & WATKINS LLP
       Kimberly Arouh Hicks (Bar No. 163285)
7      kimberly.hicks@lw.com
       Jake Ryan (Bar No. 211899)
8      jake.ryan@lw.com
       Curtis Carll (Bar No. 248470)
9      curtis.carll@lw.com
       Daniel K. Greene (Bar No. 253595)
10     daniel.greene@lw.com
   600 West Broadway, Suite 1800
11 San Diego, California  92101-3375
   Telephone:  +1.619.236.1234
12 Facsimile:  +1.619.696.7419

13 Attorneys for Nominal Defendant
   Leap Wireless International, Inc.

14

15                    UNITED STATES DISTRICT COURT

16                  SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16  CHARLES GRAHAM, Derivatively on Behalf of Nominal Defendant LEAP WIRELESS INTERNATIONAL, INC., | CASE NO. 08-CV-0246 L NLS |
| 17 | (Derivative Action) |
| 18          Plaintiff, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOMINAL DEFENDANT LEAP WIRELESS INTERNATIONAL, INC.'S MOTION TO DISMISS DERIVATIVE COMPLAINT; AND EXHIBITS A THROUGH H** |
| 19      v. | |
| 20  S. DOUGLAS HUTCHESON, AMIN KHALIFA, GRANT BURTON, DEAN M. LUVISA, MICHAEL B. TARGOFF, JOHN D. HARKEY, JR., ROBERT V. LAPENTA, MARK H. RACHESKY, M.D., and JAMES D. DONDERO, | |
| 21 | |
| 22 | Judge:        The Hon. M. James Lorenz |
| 23 | Courtroom:   14 |
| 24          Defendants, | Hearing Date:  August 4, 2008 |
|     | Hearing Time:  10:30 a.m. |
| 25      and | |
| 26  LEAP WIRELESS INTERNATIONAL, INC., | |
| 27          Nominal Defendant. | |

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633006.3

CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN  SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

## I.    REQUEST FOR JUDICIAL NOTICE

Pursuant to the Federal Rules of Evidence Rule 201, nominal defendant Leap Wireless International, Inc. ("Leap") respectfully requests that this Court take judicial notice of the following documents in support of its Motion to Dismiss Derivative Complaint.  The documents are attached hereto as Exhibits A through H.

A.    Leap's Amended and Restated Certificate of Incorporation, dated August 16, 2004;

B.    Excerpts from Leap's Form 8-K, filed with the Securities and Exchange Commission ("SEC") on November 13, 2007, including Leap's November 9, 2007 press release attached therein;

C.    Excerpts from the Statement of Financial Accounting Standards ("SFAS"),  No. 154, Accounting Changes and Error Corrections, published by the Financial Accounting Standards Board, 2008;

D.    Excerpts from Leap's Form 10-K/A for the fiscal year ended December 31, 2006, filed with the SEC on December 26, 2007;

E.    Excerpts from Leap's Form 10-Q/A for the period ending June 30, 2007, filed with the SEC on December 26, 2007;

F.    The Form 4 on file with the SEC reporting Stewart D. Hutcheson's trading in Leap securities on February 27, 2007;

G.    The Form 4 on file with the SEC reporting Stewart D. Hutcheson's trading in Leap securities on May 23, 2007; and,

H.    The Form 4 on file with the SEC reporting Michael B. Targoff's trading in Leap securities on June 6, 2007.

Judicial notice of each of these exhibits is appropriate because each exhibit is either incorporated by reference in the Verified Shareholder Derivative Complaint or is judicially noticeable under Fed. R. Evid. 201 because it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\633006.3                                                 1

CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN  SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

1    These documents are relevant to determination of the accompanying Motion to

2  Dismiss.  This request is based on this Notice, the following Memorandum of Points and

3  Authorities, the record in this case and any oral or documentary evidence presented at or prior to

4  the hearing on the Motion to Dismiss.

5            **II.    MEMORANDUM OF POINTS AND AUTHORITIES**

6            **A.        Legal Standard**

7    A court, when deciding a motion to dismiss, may consider documents outside the

8  pleadings by way of judicial notice or the doctrine of incorporation by reference.  *McMichael v.*

9  *United States Filter Corp.,* 2001 U.S. Dist. LEXIS 3918 (C.D. Cal. 2001) (judicial notice is

10  appropriate at the motion to dismiss stage of litigation); *Lee v. City of Los Angeles,* 250 F.3d 668,

11  688-89 (9th Cir. 2001) (same); *In Re Silicon Graphics Sec. Litig.,* 183 F.3d 970, 986 (9th Cir.

12  1999) (same).  Similarly, when considering a motion to dismiss, the Court can consider

13  documents outside the complaint "[i]f a plaintiff fails to attach to the complaint the documents

14  on which it is based." *See In re Pacific Gateway Exchange, Inc.*, 169 F. Supp. 2d 1160, 1164

15  (N.D. Cal. 2001) (citation omitted).

16    Under Fed. R. Evid. 201, a court may judicially notice adjudicative facts that are

17  not subject to reasonable dispute if the facts are either (1) generally known within the territorial

18  jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

19  sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(a), (b).  A court

20  must take judicial notice if a party requests it and supplies the court with the requisite

21  information.  Fed. R. Evid. 201(d).

22            **B.        The Court Should Judicially Notice Exhibits A through H**

23            **1.        Leap's Certificate of Incorporation**

24    Leap requests that the Court take judicial notice of Leap's Certificate of

25  Incorporation, attached hereto as Exhibit A, pursuant to Federal Rule of Evidence 201.  The

26  Certificate of Incorporation is relevant because it contains a "fiduciary shield" provision adopted

27  by the shareholders of Leap pursuant to Delaware law (8 Dec. C. §102(b)(7)).  See Exh. A,

28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\633006.3

2

CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN  SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

1    Article 9.  The Certificate of Incorporation is a document contained in the files of, and officially

2    certified by, the Delaware Secretary of State.

3            It is proper for this Court to take judicial notice of a corporation's certificate of

4    incorporation and fiduciary shield provision when considering a motion to dismiss.  *McMichael*

5    *v. United States Filter Corp.,* 2001 U.S. Dist. LEXIS 3918 (C.D. Cal. 2001).  The fiduciary

6    shield provision protects Leap's directors from personal liability for conduct less culpable than

7    intentional misconduct, bad faith, or disloyalty.  Because Leap is a Delaware corporation,

8    Delaware law controls the substantive issue of whether Plaintiff is excused from making a

9    demand on Leap's board which is based, in part, on the adequacy of allegations of director

10   liability on the alleged claims.  *See Kamen v. Kemper Fin. Servs. Inc.,* 500 U.S. 90, 96 (1991);

11   *see also, Jones ex. rel. CSK Auto Corp. v. Jenkins,* 503 F. Supp. 2d 1325, 1331-32 (D. Ariz.

12   2007) ("Because [Federal] Rule [of Civil Procedure] 23.1 does not establish guidelines for

13   determining when demand would be futile, a court must look to the substantive law of the state

14   of incorporation.") (*citing In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 990 (9th Cir.

15   1990)).  The central issue presented in Leap's motion to dismiss Plaintiff's Verified Shareholder

16   Derivative Complaint ("Complaint") is the adequacy of Plaintiff's allegations against Leap's

17   directors to excuse demand under Delaware law.

18           In assessing the adequacy of demand futility allegations and allegations of

19   wrongdoing by corporate directors, Delaware courts routinely judicially notice certificates of

20   incorporation at the pleading stage.  *See, e.g., In re Baxter Int'l, Inc. S'holder Litig.,* 654 A.2d

21   1268, 1270 (Del. Ch. 1995); *In re Wheelabrator Techs. Inc. S'holders Litig.,* 1992 WL 212595

22   (Del. Ch. 1992); *McMillan v. Intercargo Corp.*, 768 A.2d 492 (Del. Ch. 2000) (holding that a

23   court may take judicial notice of an exculpatory provision in resolving a motion addressed to the

24   pleadings); *In re BHC Commc'ns, Inc. S'holder Litig.*, 789 A.2d 1, 19 n. 14 (Del. Ch. 2001)

25   (taking judicial notice of certificates of incorporation and finding that "[t]here is no issue as to

26   their authenticity").  The Delaware Supreme Court, in *Stone ex. rel. AmSouth Bancorporation  v.*

27   *Ritter*, 911 A.2d 362, 367 (Del. 2006), has held that consideration of a Section 102(b)(7) shield

28   provision is "[c]ritical" to determining a plaintiff's demand futility argument based on a

1  likelihood of personal liability of the directors.  *See also In re Sagent Tech., Inc,. Derivative*

2  *Litig.*, 278 F. Supp. 2d 1079, 1095 & n.9 (N.D. Cal. 2003) (taking judicial notice of a certificate

3  of incorporation and fiduciary shield on a motion to dismiss derivative claims for failure to make

4  a demand);

5          Leap's Certificate of Incorporation and fiduciary shield provision are readily

6  ascertainable, are not subject to reasonable dispute, are relevant to Leap's motion to dismiss

7  Plaintiff's claims, are publicly available, and may appropriately be judicially noticed.

8          **2.      Press Release**

9          Leap requests that the Court take judicial notice of Leap's November 9, 2007

10  Press Release (attached to Leap's Form 8-K filed with the SEC on November 13, 2007), which is

11  attached hereto as Exhibit B.  In his Complaint, Plaintiff quotes from and refers extensively from

12  Exhibit B.  Complaint ¶¶ 56-58.  Under the incorporation by reference doctrine, a district court,

13  when adjudicating a motion to dismiss, may consider documents outside the complaint "[i]f a

14  plaintiff fails to attach to the complaint the documents on which it is based." *See Pacific*

15  *Gateway Exchange,* 169 F. Supp. 2d at 1164.  Moreover, as discussed below, judicial notice of

16  documents filed with the SEC is appropriate under Federal Rule of Evidence 201(b)(2).  *Kramer*

17  *v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991).

18          **3.      Statement of Financial Accounting Standards**

19          Leap requests that the Court take judicial notice of Exhibit C which consists of

20  relevant excerpts from the Statement of Financial Accounting Standards ("SFAS") No. 154,

21  Accounting Changes and Error Corrections (superseding APB No. 20), published by the

22  Financial Accounting Standards Board in 2008.  The central claims and allegations in the

23  Complaint concern Leap's restatement of its financial results for the years 2004, 2005, 2006 and

24  the first two quarters of 2007, as announced in November 2007 and filed in December 2007.

25  Complaint ¶¶ 37-39, 56-57, 61-63.  Restatements are governed by GAAP and, specifically, by

26  Statement of Financial Accounting Standards ("SFAS") No. 154, which sets out requirements

27  regarding reporting of accounting changes and correction of errors.  SFAS 154 is relevant to the

28  criteria for, and purpose of, a restatement to correct historical accounting errors.  GAAP is

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\633006.3

4

CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN  SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

1    authoritative accounting literature and is often cited by courts and parties in cases involving

2    alleged GAAP violations. *See, e.g., In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 955 (N.D.

3    Cal. 2007) (discussing GAAP for stock option accounting under APB 25); *In re Zoran Corp.*

4    *Derivative Litig.*, 511 F. Supp. 2d 986, 1003 (N.D. Cal. 2007) (same); *In re FVC.COM Sec.*

5    *Litig.*, 32 Fed. Appx. 338, 341 (9th Cir. 2002) (discussing APB 20 and SFAS 48 in connection

6    with analysis of alleged misapplication of GAAP); *In re Commtouch Software Ltd.*, 2002 U.S.

7    Dist. LEXIS 13742, at *22-25 (N.D. Cal. 2002) (discussing and interpreting APB 20 regarding

8    restatements); *Payne v. DeLuca*, 433 F. Supp. 2d 547, 577 (W.D. Pa. 2006) (same). Because

9    SFAS No. 154 is readily ascertainable and its contents are not subject to reasonable dispute, it is

10   an appropriate document to be judicially noticed pursuant to Fed. R. Evid. 201.

11       **4.**    **Leap's Filings With The Securities And Exchange Commission**

12           Leap requests that the Court take judicial notice of Exhibits B, D and E attached

13   hereto which consist of (1) Leap Wireless International, Inc.'s SEC Form 8-K for the period

14   November 08, 2007, filed with the SEC on November 13, 2007 (Exhibit B); (2) excerpts from

15   Leap Wireless International, Inc.'s SEC Form 10-K/A for the fiscal year ended December 31,

16   2006, filed with the SEC on December 26, 2007 (Exhibit D); and (2) excerpts from Leap

17   Wireless International, Inc.'s SEC Form 10-Q/A for the first two quarters ending June 30, 2007,

18   filed with the SEC on December 26, 2007 (Exhibit E). Leap offers excerpts, rather than the

19   complete filings, to avoid burdening the Court with unrelated discussion and information, and to

20   focus attention instead on the relevant portions of the filings that concern the matters alleged in

21   the Complaint. The complete filings are readily available on the internet and can be accessed

22   directly from the SEC's website at http://www.sec.gov or through Leap's website, at

23   http://www.leapwireless.com.

24           In his Complaint, Plaintiff references and selectively quotes from the press release

25   included as an attachment to Exhibit B in addition to Exhibits D and E. Complaint ¶¶ 56-58, 63.

26   It is proper for the Court to judicially notice these Exhibits for two reasons. First, courts

27   routinely take judicial notice of documents filed with the SEC when relevant to the allegations of

28   misrepresentations and insider trading, as alleged here. *See, e.g., StoreMedia Inc. v. Superior*

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN DIEGO

SD\633006.3

5

CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

1   *Court*, 20 Cal. 4th 449, 456-57 n.9 (1999) (court may take judicial notice of a stock registration

2   statement filed with the SEC); *Cummings v. Koninklijke Philips Elecs., N.V.,* 2002 U.S. Dist.

3   Lexis 23383, at *10 (N.D. Cal. 2002) (taking judicial notice of a proxy statement filed with the

4   SEC regarding a tender offer and merger).  Accordingly, these public records may be judicially

5   noticed in connection with this Court's consideration of Leap's motion to dismiss.  *See Kramer*

6   *v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991) ("[T]he documents are required by law to

7   be filed with the SEC, and no serious question as to their authenticity can exist. . . . [A] district

8   court may take judicial notice of the contents of relevant public disclosure documents required to

9   be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources

10  whose accuracy cannot reasonably be questioned.'" (citing Fed. R. Evid. 201(b)(2)).

11      Second, it is proper for a court to judicially notice Exhibits B, D and E under the

12  doctrine of incorporation by reference because a district court may consider documents outside

13  the complaint "[i]f a plaintiff fails to attach to the complaint the documents on which it is based."

14  *See Pacific Gateway Exchange,* 169 F. Supp. 2d at 1164.

15      **5.    <u>Form 4s</u>**

16      Leap requests that the Court take judicial notice of Exhibits F, G and H attached

17  hereto which are true and correct copies of the Form 4s on file with the SEC reporting trading in

18  Leap securities by defendant Doug Hutcheson on February 27, 2007 (Exhibit F) and May 23,

19  2007 (Exhibit G) and defendant Michael Targoff on June 6, 2007 (Exhibit H).  Plaintiff alleges

20  that these trades were based on non-public inside information and give rise to liability on the part

21  of Hutcheson and Targoff.  Complaint ¶ 45.  The Form 4s are judicially noticeable.

22      Under the doctrine of incorporation by reference, a district court may consider

23  documents outside the complaint "[i]f a plaintiff fails to attach to the complaint the documents

24  on which it is based." *See Pacific Gateway Exchange,* 169 F. Supp. 2d at 1164.  Here, Plaintiff's

25  Complaint and allegations necessarily rely upon defendants' stock trades and the corresponding

26  Form 4s filed with the SEC.  *In Re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d at 986 (court may

27  take judicial notice of Form 4s filed with SEC, which are deemed incorporated by reference into

28  a complaint in which plaintiffs' allegations relied on defendants' stock sales).

LATHAM&WATKINS™
ATTORNEYS AT LAW
SAN DIEGO

SD\633006.3                    6                    CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN  SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

1        A court may also take judicial notice of documents on which allegations in the

2    complaint necessarily rely, even if not expressly referenced in the complaint, provided that the

3    authenticity of those documents are not in dispute. *Autodesk*, 132 F. Supp. 2d at 837-38.

4    Plaintiff necessarily relied on the Form 4s when in making allegations regarding the dates and

5    amounts of Hutcheson's and Targoff's trades. Courts routinely judicially notice SEC Form 4s in

6    assessing the adequacy of insider trading claims on a motion to dismiss. *See e.g., Allison v.*

7    *Brooktree Corp.,* 999 F.Supp. 1342, 1353, n.4 (S.D. Cal. 1998) (consideration of Form 4 data on

8    motion to dismiss); *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F. Supp 746, 758 (N.D. Cal.

9    1997) (considering Form 4 data on motion to dismiss).

10               **III.**    **<u>CONCLUSION</u>**

11        For the foregoing reasons, Leap respectfully requests that the Court take judicial

12    notice of Exhibits A through H.

13    Dated: May 30, 2008           Respectfully submitted,

14               LATHAM & WATKINS LLP
           Miles N. Ruthberg
15               Pamela S. Palmer
           Kimberly Arouh Hicks
16               Jake Ryan
           Curtis Carll
17               Daniel K. Greene

18

19               By <u>s/ Pamela S. Palmer</u>
              Pamela S. Palmer
20                  Attorneys for Nominal Defendant
              Leap Wireless International, Inc.
21                  pamela.palmer@lw.com

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO
SD\633006.3
7
CASE NO. 08-CV-0246
REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
LEAP'S MOTION TO DISMISS DERIVATIVE COMPLAINT

1

2

Graham v. Hutcheson et al.
Case No. 08-CV-0246 L NLS
United States District Court, Southern District of California

3

4

**EXHIBITS A THROUGH H IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF NOMINAL DEFENDANT LEAP WIRELESS INTERNATIONAL, INC.'S
MOTION TO DISMISS DERIVATIVE COMPLAINT**

5

6

| **EXHIBIT NO.** | **EXHIBIT DESCRIPTION** | **PAGE NOS.** |
|---|---|---|
| A. | Leap Wireless International, Inc.'s Amended and Restated Certificate of Incorporation, dated August 16, 2004, which is on file and publicly available with the Office of the Secretary of the State of Delaware | 1 |
| B. | Excerpts from Leap Wireless International, Inc's SEC Form 8-K for the period November 08, 2007, filed with the SEC on November 13, 2007, including Leap Wireless International, Inc.'s November 9, 2007 press release attached therein | 6 |
| C. | Excerpts from the Statement of Financial Accounting Standards ("SFAS"), No. 154, Accounting Changes and Error Corrections, published by the Financial Accounting Standards Board, 2008 | 15 |
| D. | Excerpts from Leap Wireless International, Inc.'s SEC Form 10-K/A for the fiscal year ended December 31, 2006, filed with the SEC on December 26, 2007 | 23 |
| E. | Excerpts from Leap Wireless International, Inc.'s SEC Form 10-Q/A for the first two quarters of 2007, through June 30, 2007, filed with the SEC on December 26, 2007 | 43 |
| F. | Form 4 on file with the Securities & Exchange Commission ("SEC") reporting Stewart D. Hutcheson's trading in Leap securities on February 27, 2007 | 56 |
| G. | Form 4 on file with the Securities & Exchange Commission ("SEC") reporting Stewart D. Hutcheson's trading in Leap securities on May 23, 2007 | 59 |
| H. | Form 4 on file with the Securities & Exchange Commission ("SEC") reporting Michael B. Targoff's trading in Leap securities on June 6, 2007 | 62 |

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN DIEGO

SD\633353.1

i

Case No. 08-CV-0246
EXH'S ISO REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF LEAP'S MOTION TO DISMISS

# EXHIBIT A



*The First State*

PAGE  1

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT
COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED
CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF
"LEAP WIRELESS INTERNATIONAL, INC." AS RECEIVED AND FILED IN
THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE SIXTEENTH DAY OF AUGUST,
A.D. 2004, AT 5:42 O'CLOCK P.M.

2912693  8100X

080599132

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 6614045

DATE: 05-23-08

EXHIBIT A
1

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 05:51 PM 08/16/2004*
*FILED 05:42 PM 08/16/2004*
*SRV 040599146 - 2912693 FILE*

AMENDED AND RESTATED

CERTIFICATE OF INCORPORATION
OF
LEAP WIRELESS INTERNATIONAL, INC.

Leap Wireless International, Inc., a corporation organized and existing under the laws of the General Corporation Law of the State of Delaware (the "Corporation"), hereby certifies as follows:

A.      The name of the corporation is Leap Wireless International, Inc.  The corporation was originally incorporated under the name Qualcomm SpinCo, Inc., and the original Certificate of Incorporation of the corporation was filed with the Secretary of State of the State of Delaware on June 24, 1998.

B.      Pursuant to Sections 242, 245 and 303 of the General Corporation Law of the State of Delaware and the order dated October 22, 2003 of the United States Bankruptcy Court for the Southern District of California (the "Court"), which has jurisdiction over the Corporation in a case under Chapter 11 of Title 11 of the United States Code, this Amended and Restated Certificate of Incorporation restates and integrates and further amends the provisions of the Amended and Restated Certificate of Incorporation of the Corporation, as previously amended.

C.      The text of the Amended and Restated Certificate of Incorporation as previously amended or supplemented is restated and further amended to read in its entirety as follows:

FIRST: The name of the Corporation is Leap Wireless International, Inc.

SECOND:  The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington, 19808, County of New Castle.  The name of its registered agent at such address is The Prentice-Hall Corporation System, Inc.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware.

FOURTH:  The Corporation is authorized to issue two classes of stock to be designated, respectively, "Common Stock" and "Preferred Stock."  The total number of shares of all classes of stock that the Corporation shall have authority to issue is One Hundred Seventy Million (170,000,000) shares.  One Hundred Sixty Million (160,000,000) shares shall be Common Stock, each having a par value of $.0001 per share.  Ten Million (10,000,000) shares shall be Preferred Stock, each having a par value of $.0001 per share.  The Preferred Stock may be issued from time to time in one or more series.  The Board of Directors is hereby authorized, by filing a certificate (a "Preferred Stock Designation") pursuant to the General Corporation Law of the State of Delaware, to fix or alter from time to time the designation, powers, preferences and rights of the shares of each such series and the qualifications, limitations or restrictions of

NSD\26388.5

EXHIBIT A
2

any wholly unissued series of Preferred Stock, and to establish from time to time the number of shares constituting any such series or any of them, and to increase or decrease the number of shares of any series subsequent to the issuance of shares of that series, but not below the number of shares of such series then outstanding. In case the number of shares of any series shall be decreased in accordance with the foregoing sentence, the shares constituting such decrease shall resume the status they had prior to the adoption of the resolution originally fixing the number of shares of such series. To the extent required by Section 1123(a) of Title 11, Chapter 11 of the United States Code and notwithstanding anything to the contrary herein, in no event shall the Corporation be authorized to issue any class or series of nonvoting equity securities.

FIFTH: The management of the business and the conduct of the affairs of the Corporation shall be vested in its Board of Directors. The number of directors which shall constitute the whole Board of Directors shall be fixed exclusively by one or more resolutions adopted by the Board of Directors.

SIXTH: Subject to Section 8 of Article IV of the bylaws of the Corporation, the bylaws of the Corporation may be altered or amended or new bylaws adopted by the affirmative vote of at least sixty-six and two-thirds percent (66-2/3%) of the voting power of all of the then-outstanding shares of voting stock of the Corporation, voting together as a single class. In furtherance and not in limitation of the powers conferred by statute, the Board of Directors also is expressly authorized to make, alter or repeal the bylaws of the Corporation.

SEVENTH: Election of directors need not be by written ballot unless the bylaws of the Corporation so provide.

EIGHTH: No action shall be taken by the stockholders of the Corporation except at an annual or special meeting of stockholders called in accordance with the bylaws of the Corporation or this Article EIGHTH. The stockholders of the Corporation may not take action by written consent. Special meetings of the stockholders of the Corporation may be called, for any purpose or purposes, by (i) the Chairman of the Board of Directors, (ii) the Chief Executive Officer or President, or (iii) the Board of Directors pursuant to a resolution adopted by a majority of the total number of authorized directors (whether or not there exist any vacancies in previously authorized directorships at the time any such resolution is presented to the Board of Directors for adoption) and shall be held at such place, on such date, and at such time as the Board of Directors shall fix. Advance notice of stockholder nominations for the election of directors and of business to be brought by stockholders before any meeting of the stockholders of the Corporation shall be given in the manner provided in the bylaws of the Corporation.

NINTH: No director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the General Corporation Law of the State of Delaware, or (iv) for any transaction from which the director derived an improper personal benefit. If the General Corporation Law of the State of Delaware is amended after the date hereof to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director shall be eliminated or limited to the fullest extent

NSD\26388.5

permitted by the General Corporation Law of the State of Delaware, as so amended. Any repeal or modification of this Article NINTH shall be prospective and shall not affect the rights under this Article NINTH in effect at the time of the alleged occurrence of any act or omission to act giving rise to liability or indemnification. Notwithstanding any of the provisions of this Amended and Restated Certificate of Incorporation, this Amended and Restated Certificate of Incorporation shall not in any way countermand or otherwise affect provisions concerning indemnification set forth in the "Fifth Amended Joint Plan of Reorganization Dated as of July 30, 2003" of the Corporation (the "Plan") or the Order of the Court confirming the Plan, entered on October 22, 2003.

TENTH: The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Amended and Restated Certificate of Incorporation in the manner now or hereafter prescribed by statute, except as provided in Article ELEVENTH, and all rights conferred upon the stockholders herein are granted subject to this reservation.

ELEVENTH: Notwithstanding any other provisions of this Amended and Restated Certificate of Incorporation or any provision of law which might otherwise permit a lesser vote or no vote, but in addition to any affirmative vote of the holders of any particular class or series of voting stock of the Corporation required by law, this Amended and Restated Certificate of Incorporation or any Preferred Stock Designation, the affirmative vote of the holders of at least sixty-six and two-thirds percent (66-2/3%) of the voting power of all of the then-outstanding shares of voting stock of the Corporation, voting together as a single class, shall be required to alter, amend or repeal any of Articles FIFTH, SIXTH, SEVENTH, EIGHTH, NINTH, TENTH AND ELEVENTH of this Amended and Restated Certificate of Incorporation.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

NSD\26388.5

EXHIBIT A

4

IN WITNESS WHEREOF, this Amended and Restated Certificate of Incorporation has been signed by Robert J. Irving, its authorized officer this 16th day of August 2004.

Leap Wireless International, Inc.

By: /s/ Robert J. Irving _____

Name: Robert J. Irving

Title:   Secretary

NSD\26388.5

# EXHIBIT B



# FORM 8-K

## LEAP WIRELESS INTERNATIONAL INC - LEAP

**Filed: November 13, 2007 (period: November 08, 2007)**

Report of unscheduled material events or corporate changes.

# Table of Contents

8-K - FORM 8-K

**Item 2.02**   Results of Operations and Financial Condition.

**Item 4.02**   Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.

**Item 9.01**   Financial Statements and Exhibits.

SIGNATURES

EXHIBIT INDEX

EX-99.1 (EXHIBIT 99.1)

EXHIBIT 99.1



**FOR IMMEDIATE RELEASE**
Leap Contacts:
Greg Lund, Media Relations
858-882-9105
glund@leapwireless.com

Jim Seines, Investor Relations
858-882-6084
jseines@leapwireless.com

**Leap Announces Restatement of Prior Period Results**
~ *Company Also Releases Preliminary Financial Results for the Third Quarter and
Business Outlook for Fourth Quarter of 2007* ~

SAN DIEGO — November 9, 2007 — Leap Wireless International, Inc. [NASDAQ: LEAP] today announced that it will restate its financial statements for fiscal years 2004, 2005 and 2006 and for the first and second quarters of 2007 to correct for errors in previously reported service revenues, equipment revenues, and operating expenses. Over these periods, the restatements are expected to result in a net cumulative reduction of approximately $20 million in service revenues and approximately $20 million in operating income. The estimated effect of these errors on the Company's prior period results for service revenues and operating income is set forth below. Changes in net income (loss) will be determined following the Company's completion of its tax expense calculations for these periods. As a result of the pending restatements, the Company's previously issued financial statements for periods from fiscal year 2004 through the second quarter of 2007 should not be relied upon. In reaching this conclusion, the Company's management and Audit Committee have discussed the matters described in this press release with the Company's independent registered public accounting firm.

The restatements are the result of an internal review of the Company's service revenue activity and forecasting process that was initiated by management in September 2007 and are not attributable to any misconduct by Company employees. The expected adjustments to historical financial results do not change unrestricted cash, cash equivalents and short term investments as of June 30, 2007. In addition, they do not materially change the overall trend in service revenues, nor do they materially change overall trends in ARPU, CPGA, CCU or capital expenditures. Finally, the expected adjustments do not impact previously reported results for net customer additions or churn.

**Description of Accounting Errors**
The most significant adjustment relates to the Company's prior accounting for a group of customers who voluntarily disconnected service. These customers comprised a small percentage of

Source: LEAP WIRELESS INTERN, 8-K, November 13, 2007

EXHIBIT B
8



the Company's disconnected customers. For these customers, approximately one month of deferred revenue that was recorded when the customers' monthly bills were generated was mistakenly recognized as revenue after their service was disconnected. The Company also identified other errors relating to the timing and recognition of certain service revenues and operating expenses. The effect of the timing errors varied across periods. The error with the largest variation across periods related to the reconciliation of billing system data for pay in arrears customers. This error resulted in an understatement of revenue in 2004 and 2005 and an overstatement of revenue in subsequent periods as the number of pay in arrears customers in the Company's customer base declined.

In connection with management's review, errors were also identified relating to the classification of certain components of equipment revenues and cost of equipment. Prior to June 2007, approximately $120 million of revenue from the sale of equipment was offset against related cost of equipment and reported on a net basis. The reclassification of these revenues and costs on a gross basis will not impact operating income.

**Estimated Adjustments to Prior Period Results**

The Company's preliminary estimates of the required adjustments to service revenues and operating income are set forth below. The effect of these errors on the results of the individual quarters contained in these periods varies:

| Unaudited and in thousands | Six Months Ended June 30, 2007 | | Year Ended December 31, 2006 | | Years Ended December 31, 2005 and 2004 | |
|---|---|---|---|---|---|---|
| **Service Revenues:** | | | | | | |
| Previously Reported | $ | 677,021 | $ | 972,781 | $ | 1,447,778 |
| Adjustment (estimated) | $ | (14,000) | $ | (25,000) | $ | 19,000 |
| As Restated (estimated) | $ | 663,021 | $ | 947,781 | $ | 1,466,778 |
| | | | | | | |
| **Operating Income:** | | | | | | |
| Previously Reported | $ | 41,260 | $ | 43,824 | $ | 39,657 |
| Adjustment (estimated) | $ | (12,000) | $ | (20,000) | $ | 12,000 |
| As Restated (estimated) | $ | 29,260 | $ | 23,824 | $ | 51,657 |

Fiscal year 2004 results refer to the combined results for the seven months ended July 31, 2004 (the period prior to the Company's emergence from Chapter 11 bankruptcy) and the five months ended December 31, 2004 (the period after the Company's emergence).

**Preliminary Results for Third Quarter**

Based on preliminary data, Leap expects to report financial and operating results for the third

Source: LEAP WIRELESS INTERN, 8-K, November 13, 2007

EXHIBIT B
9



LEAP®

quarter of 2007 within the ranges provided below (unaudited and in thousands, except customer data and percentage):

| | Three Months Ended September 30, 2007 |
|---|---|
| Service Revenues | $ 348,000 to $352,000 |
| Operating Income | $ 8,000 to $12,000 |
| Adjusted Operating Income Before Depreciation and Amortization (OIBDA) | $ 94,000 to $98,000 |
| Net Customer Additions | 36,484 |
| Churn | 5.2% |

The estimates for service revenues, operating income and adjusted OIBDA set forth above reflect the revisions in the Company's accounting described in this release, costs associated with the Company's major new initiatives, as well as approximately $4 million in aggregate costs incurred in connection with the unsolicited offer received from MetroPCS Communications, Inc. in September 2007 and other strategic M&A activities.

The date and time of the Company's third quarter earnings release and conference call will be provided in a separate press release.

The pending restatements and preliminary third quarter results described above are subject to adjustment upon finalization of third quarter financial and operational results and completion of the audit and review of the Company's restated financial statements by its independent registered public accounting firm.

## Business Outlook for Fourth Quarter of 2007

- Net customer additions are expected to be between 70,000 and 130,000, reflecting normal seasonal rhythms and the maturation of the markets launched in 2006.

- Customer churn is expected to be in the range of 4.4 percent to 4.7 percent, reflecting typical seasonal rhythms and the effects of customer handset upgrades and improving trends related to the percentage of less-tenured customers within our overall customer base.

- Adjusted OIBDA is expected to be between $105 million and $115 million, bringing anticipated full year adjusted OIBDA to between $385 and $395 million. The Company's expectation for fourth quarter and full year adjusted OIBDA includes approximately $12 to $17 million of negative adjusted OIBDA we expect to incur to support our major new initiatives, including the

EXHIBIT B
10



**LEAP**

Company's planned coverage expansion, higher-speed data services, Auction #66 build activity and other strategic activities.

**Senior Secured Credit Agreement and Indenture**

The restatements described above may result in a default under the senior secured credit agreement among Cricket Communications, Inc., Leap Wireless International, Inc., Bank of America, N.A. and certain lenders, under which approximately $890 million in borrowings is currently outstanding. This potential default arises from the Company's potential breach of representations regarding the presentation of its prior financial statements and not as a result of any non-compliance with its financial covenants. Notwithstanding any potential default, the Company expects to continue to make scheduled payments of principal and interest under the credit agreement. The Company is pursuing a waiver of any potential default from the credit agreement lenders. Unless waived by the required lenders, a default would permit the administrative agent to exercise its remedies under the credit agreement, including declaring all outstanding debt under the credit agreement to be immediately due and payable. An acceleration of the outstanding debt under the credit agreement would also trigger a default under Cricket's indenture governing its $1.1 billion of 9.375% senior notes due 2014. The Company anticipates that the required lenders under the credit agreement will agree to waive any potential default that may occur as a result of the restatements; however, such actions cannot be assured.

In conjunction with the waiver, the Company is also asking lenders to approve other amendments to the credit agreement, including an amendment that would provide that entry into an agreement leading to a change of control will no longer constitute an event of default, unless and until the change of control occurs.

**About Leap**

Leap provides innovative, high-value wireless services to a fast-growing, young and ethnically diverse customer base. With the value of unlimited wireless services as the foundation of its business, Leap pioneered both the Cricket® and JumpTM Mobile services. The Company and its joint ventures now operate in 23 states and hold licenses in 35 of the top 50 U.S. markets. Through its affordable, flat-rate service plans, Cricket offers customers a choice of unlimited voice, text, data and mobile Web services. Jump Mobile is a unique prepaid wireless service designed for the mobile-dependent, urban youth market. Headquartered in San Diego, Calif., Leap is traded on the

Source: LEAP WIRELESS INTERN, 8-K, November 13, 2007

**EXHIBIT B**
**11**



NASDAQ Global Select market under the ticker symbol "LEAP." For more information, please visit www.leapwireless.com.

**Forward-Looking Statements**

This press release contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements reflect management's current expectations based on currently available operating, financial and competitive information, but are subject to risks, uncertainties and assumptions that could cause actual results to differ materially from those anticipated in or implied by the forward-looking statements. Our forward-looking statements include our discussion of management's projection of preliminary results for the third quarter and outlook for the fourth quarter of 2007, and are generally identified with words such as "believe," "intend," "plan," "could," "may" and similar expressions. Risks, uncertainties and assumptions that could affect our forward-looking statements include, among other things:

- finalization of the restatements described above and the Company's third quarter financial results and the review of such matters by its independent registered public accounting firm;

- the risk that the Company may not obtain a waiver from the required lenders under the senior secured credit agreement among Cricket Communications, Inc., Leap Wireless International, Inc., Bank of America, N.A. and certain lenders;

- the ability of the Company to file its Quarterly Report on Form 10-Q for the quarter ended September 30, 2007 within the time period required by the credit agreement;

- our ability to attract and retain customers in an extremely competitive marketplace;

- changes in economic conditions that could adversely affect the market for wireless services;

- the impact of competitors' initiatives;

- our ability to successfully implement product offerings and execute market expansion plans;

- delays in our market expansion plans, including delays resulting from any difficulties in funding such expansion through cash from operations, our revolving credit facility or additional capital, delays in the availability of network equipment and handsets for the AWS spectrum we acquired in Auction #66, or delays by existing U.S. government and other private sector wireless operations in clearing the AWS spectrum, some of which users are permitted to continue using the spectrum for several years;

- our ability to attract, motivate and retain an experienced workforce;

- our ability to comply with the covenants in our senior secured credit facilities, indenture and any future credit agreement, indenture or similar instrument;

- failure of our network or information technology systems to perform according to expectations; and

- other factors detailed in the section entitled "Risk Factors" included in our periodic reports filed with the SEC, including our Annual Report on Form 10-K for the year ended December 31, 2006 and our Quarterly Report on Form 10-Q for the quarter ended June 30, 2007.

All forward-looking statements included in this news release should be considered in the context of these risk factors. We undertake no obligation to publicly update or revise any forward-looking statements, whether as a result of new information, future events or otherwise. Investors and prospective investors are cautioned not to place undue reliance on such forward-looking statements.

Leap is a U.S. registered trademark and the Leap logo is a trademark of Leap. Cricket is a U.S. registered trademark of Cricket. In addition, the following are trademarks of Cricket: Unlimited Access Plus, Unlimited Access, Unlimited Plus, Unlimited Classic, By Week, Jump, Travel Time, Cricket Clicks and the Cricket "K." All other trademarks are the property of their respective owners.

**Notes Regarding Non-GAAP Financial Measures**

Information presented in this press release includes financial information prepared in accordance with generally accepted accounting principles in the U.S., or GAAP, as well as adjusted OIBDA,



which is a non-GAAP financial measure. Generally, a non-GAAP financial measure, within the meaning of Securities and Exchange Commission (SEC) Item 10 to Regulation S-K, is a numerical measure of a company's financial performance or cash flows that (a) excludes amounts, or is subject to adjustments that have the effect of excluding amounts, which are included in the most directly comparable measure calculated and presented in accordance with GAAP in the consolidated balance sheets, consolidated statements of operations or consolidated statements of cash flows; or (b) includes amounts, or is subject to adjustments that have the effect of including amounts, which are excluded from the most directly comparable measure so calculated and presented.

Adjusted OIBDA is defined as operating income less depreciation and amortization, adjusted to exclude the effects of: gain/loss on sale/disposal of wireless licenses and operating assets; impairment of indefinite-lived intangible assets; impairment of long-lived assets and related charges; and share-based compensation expense. In a capital-intensive industry such as wireless telecommunications, management believes that adjusted OIBDA is a meaningful measure of the Company's operating performance. We use adjusted OIBDA as a supplemental performance measure because management believes it facilitates comparisons of the Company's operating performance from period to period and comparisons of the Company's operating performance to that of other companies by backing out potential differences caused by the age and book depreciation of fixed assets (affecting relative depreciation expenses) as well as the items described above for which additional adjustments were made. While depreciation and amortization are considered operating costs under generally accepted accounting principles, these expenses primarily represent the non-cash current period allocation of costs associated with long-lived assets acquired or constructed in prior periods. Because adjusted OIBDA facilitates internal comparisons of our historical operating performance, management also uses this metric for business planning purposes and to measure our performance relative to that of our competitors. In addition, we believe that adjusted OIBDA and similar measures are widely used by investors, financial analysts and credit rating agencies as measures of our financial performance over time and to compare our financial performance with that of other companies in our industry.

Adjusted OIBDA has limitations as an analytical tool, and should not be considered in isolation or as a substitute for analysis of our results as reported under GAAP. Some of these limitations include:



- it does not reflect capital expenditures;

- although it does not include depreciation and amortization, the assets being depreciated and amortized will often have to be replaced in the future, and adjusted OIBDA does not reflect cash requirements for such replacements;

- it does not reflect costs associated with share-based awards exchanged for employee services;

- it does not reflect the interest expense necessary to service interest or principal payments on current or future indebtedness;

- it does not reflect expenses incurred for the payment of income taxes and other taxes; and

- other companies, including companies in our industry, may calculate this measure differently than we do, limiting its usefulness as a comparative measure.

Management understands these limitations and considers adjusted OIBDA as a financial performance measure that supplements but does not replace the information provided to management by our GAAP results.

The following table reconciles the estimated results for adjusted OIBDA described above to the estimated results for operating income, which we consider to be the most directly comparable GAAP financial measure. There can be no assurance that the final financial results or reconciliation will not differ materially from these preliminary estimates:

|  | Three Months Ended September 30, 2007 (unaudited, in thousands) |
|---|---|
| Operating income | $8,000 - $12,000 |
| Plus depreciation and amortization, gain (loss) on sale of wireless licenses and disposal of operating assets and share-based compensation expense, net | $86,000 |
| Adjusted OIBDA | $94,000 - $98,000 |

### # # #

Created by 10KWizard    www.10KWizard.com

Source: LEAP WIRELESS INTERN, 8-K, November 13, 2007

EXHIBIT B
14

# EXHIBIT C



Financial Accounting Standards Board

# ORIGINAL PRONOUNCEMENTS

### As Amended

## Statement of Financial Accounting Standards No. 154

Accounting Changes and Error Corrections

a replacement of APB Opinion No. 20
and FASB Statement No. 3

Copyright © 2008 by Financial Accounting Standards Board. All rights reserved.
No part of this publication may be reproduced, stored in a retrieval system, or
transmitted, in any form or by any means, electronic, mechanical, photocopying,
recording, or otherwise, without the prior written permission of the Financial
Accounting Standards Board.

EXHIBIT C
15

**FAS154**                  *FASB Statement of Standards*

**Statement of Financial Accounting Standards No. 154**

**Accounting Changes and Error Corrections**

**a replacement of APB Opinion No. 20 and FASB Statement No. 3**

**CONTENTS**

|  | Paragraph Numbers |
|---|---|
| Introduction | 1 |
| Standards of Financial Accounting and Reporting: | |
| Definitions | 2 |
| Scope | 3 |
| Accounting Changes | 4–24 |
| Change in Accounting Principle | 4–18 |
| Impracticability | 11 |
| Justification for a Change in Accounting Principle | 12–14 |
| Reporting a Change in Accounting Principle Made in an Interim Period | 15–16 |
| Disclosures | 17–18 |
| Change in Accounting Estimate | 19–22 |
| Disclosures | 22 |
| Change in the Reporting Entity | 23–24 |
| Disclosures | 24 |
| Correction of an Error in Previously Issued Financial Statements | 25–26 |
| Disclosures | 26 |
| Effective Date and Transition | 27 |
| Appendix A: Illustrations | A1–A8 |
| Appendix B: Background Information and Basis for Conclusions | B1–B38 |
| Appendix C: Amendments to Existing Pronouncements | C1–C19 |

## INTRODUCTION

1. This Statement provides guidance on the accounting for and reporting of accounting changes and error corrections. It establishes, unless impracticable, retrospective application as the required method for reporting a change in accounting principle in the absence of explicit transition requirements specific to the newly adopted accounting principle. This Statement also provides guidance for determining whether retrospective application of a change in accounting principle is impracticable and for reporting a change when retrospective application is impracticable. The correction of an error in previously issued financial statements is not an accounting change. However, the reporting of an error correction involves adjustments to previously issued financial statements similar to those generally applicable to re-

porting an accounting change retrospectively. Therefore, the reporting of a correction of an error by restating previously issued financial statements is also addressed by this Statement.

## STANDARDS OF FINANCIAL ACCOUNTING AND REPORTING

### Definitions

2. The following terms are defined as used in this Statement:

a. **Accounting change**—a change in (1) an accounting principle, (2) an accounting estimate, or (3) the reporting entity. The correction of an error in previously issued financial statements is not an accounting change.

b. **Accounting pronouncement**—a source of generally accepted accounting principles (GAAP) in

EXHIBIT C

16

*Accounting Changes and Error Corrections*    **FAS154**

the United States, including FASB Statements of Financial Accounting Standards, FASB Interpretations, FASB Staff Positions, FASB Statement 133 Implementation Issues, Emerging Issues Task Force Consensuses, other pronouncements of the FASB or other designated bodies, or other forms of GAAP as described in categories (a)–(c) of AICPA Statement on Auditing Standards (SAS) No. 69, *The Meaning of Present Fairly in Conformity With Generally Accepted Accounting Principles*, as codified in the AICPA Codification of Statements on Auditing Standards, AU Section 411, *The Meaning of Present Fairly in Conformity With Generally Accepted Accounting Principles.*[1] AICPA accounting interpretations and implementation guides ("Q & A's") issued by the FASB staff, as described in category (d) of SAS 69, also are considered accounting pronouncements for the purpose of applying this Statement.

c.  **Change in accounting principle**—a change from one generally accepted accounting principle to another generally accepted accounting principle when there are two or more generally accepted accounting principles that apply or when the accounting principle formerly used is no longer generally accepted. A change in the *method* of applying an accounting principle also is considered a change in accounting principle.

d.  **Change in accounting estimate**—a change that has the effect of adjusting the carrying amount of an existing asset or liability or altering the subsequent accounting for existing or future assets or liabilities. A change in accounting estimate is a necessary consequence of the assessment, in conjunction with the periodic presentation of financial statements, of the present status and expected future benefits and obligations associated with assets and liabilities. Changes in accounting estimates result from new information. Examples of items for which estimates are necessary are uncollectible receivables, inventory obsolescence, service lives and salvage values of depreciable assets, and warranty obligations.

e.  **Change in accounting estimate effected by a change in accounting principle**—a change in accounting estimate that is inseparable from the effect of a related change in accounting principle. An example of a change in estimate effected by a change in principle is a change in the method of depreciation, amortization, or depletion for long-lived, nonfinancial assets.

f.  **Change in the reporting entity**—a change that results in financial statements that, in effect, are those of a different reporting entity. A change in the reporting entity is limited mainly to (1) presenting consolidated or combined financial statements in place of financial statements of individual entities, (2) changing specific subsidiaries that make up the group of entities for which consolidated financial statements are presented, and (3) changing the entities included in combined financial statements. Neither a business combination accounted for by the purchase method nor the consolidation of a variable interest entity pursuant to FASB Interpretation No. 46 (revised December 2003), *Consolidation of Variable Interest Entities*, is a change in reporting entity.

g.  **Direct effects of a change in accounting principle**—those recognized changes in assets or liabilities necessary to effect a change in accounting principle. An example of a direct effect is an adjustment to an inventory balance to effect a change in inventory valuation method. Related changes, such as an effect on deferred income tax assets or liabilities or an impairment adjustment resulting from applying the lower-of-cost-or-market test to the adjusted inventory balance, also are examples of direct effects of a change in accounting principle.

h.  **Error in previously issued financial statements**—an error in recognition, measurement, presentation, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of GAAP, or oversight or misuse of facts that existed at the time the financial statements were prepared. A change from an accounting principle that is not generally accepted to one that is generally accepted is a correction of an error.

i.  **Indirect effects of a change in accounting principle**—any changes to current or future cash flows of an entity that result from making a change in accounting principle that is applied retrospectively. An example of an indirect effect is a change in a nondiscretionary profit sharing or royalty payment that is based on a reported amount such as revenue or net income.

---

[1]The Board's technical agenda includes a project that could result in the issuance of a Statement of Financial Accounting Standards that identifies the sources of accounting principles and the framework for selecting the principles used in the preparation of financial statements of nongovernmental enterprises that are presented in conformity with GAAP. The Board issued an Exposure Draft of that proposed Statement in April 2005.

EXHIBIT C
17

FAS154    *FASB Statement of Standards*

j.  **Restatement**—the process of revising previously issued financial statements to reflect the correction of an error in those financial statements.

k.  Retrospective application—the application of a different accounting principle to one or more previously issued financial statements, or to the statement of financial position at the beginning of the current period, as if that principle had always been used, or a change to financial statements of prior accounting periods to present the financial statements of a new reporting entity as if it had existed in those prior years.

### Scope

3.  This Statement applies to financial statements of business enterprises and not-for-profit organizations, both of which are referred to herein as entities. This Statement also applies to historical summaries of information based on primary financial statements that include an accounting period in which an accounting change or error correction is reflected. The guidance in this Statement also may be appropriate in presenting financial information in other forms or for special ·purposes.

### Accounting Changes

#### *Change in Accounting Principle*

4.  A presumption exists that an accounting principle once adopted shall not be changed in accounting for events and transactions of a similar type. Consistent use of the same accounting principle from one accounting period to another enhances the utility of financial statements for users by facilitating analysis and understanding of comparative accounting data.

5.  Neither (a) initial adoption of an accounting principle in recognition of events or transactions occurring for the first time or that previously were immaterial in their effect nor (b) adoption or modification of an accounting principle necessitated by transactions or events that are clearly different in substance from those previously occurring is a change in accounting principle. A reporting entity shall change an accounting principle only if (a) the change is required by a newly issued accounting pronouncement or (b) the entity can justify the use of an allowable alternative accounting principle on the basis that it is preferable.

6.  It is expected that accounting pronouncements normally will provide specific transition requirements. However, in the unusual instance that there are no transition requirements specific to a particular accounting pronouncement, a change in accounting principle effected to adopt the requirements of an accounting pronouncement shall be reported in accordance with paragraphs 7–10 of this Statement.[2] Early adoption of an accounting pronouncement, when permitted, shall be effected in a manner consistent with the transition requirements of that pronouncement.

7.  An entity shall report a change in accounting principle through retrospective application of the new accounting principle to all prior periods, unless it is impracticable to do so. Retrospective application requires the following:

a.  The cumulative effect of the change to the new accounting principle on periods prior to those presented shall be reflected in the carrying amounts of assets and liabilities as of the beginning of the first period presented.

b.  An offsetting adjustment, if any, shall be made to the opening balance of retained earnings (or other appropriate components of equity or net assets in the statement of financial position) for that period.

c.  Financial statements for each individual prior period presented shall be adjusted to reflect the period-specific effects of applying the new accounting principle.

8.  If the cumulative effect of applying a change in accounting principle to all prior periods can be determined, but it is impracticable to determine the period-specific effects of that change on all prior periods presented, the cumulative effect of the change to the new accounting principle shall be applied to the carrying amounts of assets and liabilities as of the beginning of the earliest period to which the new accounting principle can be applied. An offsetting adjustment, if any, shall be made to the opening balance of retained earnings (or other appropriate components of equity or net assets in the statement of financial position) for that period.

9.  If it is impracticable to determine the cumulative effect of applying a change in accounting principle to

---

[2]This requirement is not limited to newly issued accounting pronouncements. For example, if an existing pronouncement permits a choice between two or more alternative accounting principles, and provides requirements for changing from one to another, those requirements shall be followed.

FAS154–6

EXHIBIT C
18

*Accounting Changes and Error Corrections*        **FAS154**

any prior period, the new accounting principle shall be applied as if the change was made prospectively as of the earliest date practicable. APB Opinion No. 20, *Accounting Changes,* illustrated that type of change with a change from the first-in, first-out (FIFO) method of inventory valuation to the last-in, first-out (LIFO) method. This Statement carries forward that example (as Illustration 2 in Appendix A) for illustrative purposes without implying that such a change would be considered preferable as required by paragraph 13 of this Statement.

10.  Retrospective application shall include only the direct effects of a change in accounting principle, including any related income tax effects. Indirect effects that would have been recognized if the newly adopted accounting principle had been followed in prior periods shall not be included in the retrospective application. If indirect effects are actually incurred and recognized, they shall be reported in the period in which the accounting change is made.

### Impracticability

11.  It shall be deemed impracticable to apply the effects of a change in accounting principle retrospectively only if any of the following conditions exist:

a.  After making every reasonable effort to do so, the entity is unable to apply the requirement.
b.  Retrospective application requires assumptions about management's intent in a prior period that cannot be independently substantiated.
c.  Retrospective application requires significant estimates of amounts, and it is impossible to distinguish objectively information about those estimates that:
  (1)  Provides evidence of circumstances that existed on the date(s) at which those amounts would be recognized, measured, or disclosed under retrospective application, and
  (2)  Would have been available when the financial statements for that prior period were issued.[3]

### Justification for a change in accounting principle

12.  In the preparation of financial statements, once an accounting principle is adopted, it shall be used consistently in accounting for similar events and transactions.

13.  An entity may change an accounting principle only if it justifies the use of an allowable alternative accounting principle on the basis that it is preferable. However, a method of accounting that was previously adopted for a type of transaction or event that is being terminated or that was a single, nonrecurring event in the past shall not be changed. For example, the method of accounting shall not be changed for a tax or tax credit that is being discontinued. Additionally, the method of transition elected at the time of adoption of an accounting pronouncement shall not be subsequently changed. However, a change in the estimated period to be benefited by an asset, if justified by the facts, shall be recognized as a change in accounting estimate.

14.  The issuance of an accounting pronouncement that requires use of a new accounting principle, interprets an existing principle, expresses a preference for an accounting principle, or rejects a specific principle may require an entity to change an accounting principle. The issuance of such a pronouncement constitutes sufficient support for making such a change provided that the hierarchy established for GAAP is followed. The burden of justifying other changes in accounting principle rests with the entity making the change.

### Reporting a change in accounting principle made in an interim period

15.  A change in accounting principle made in an interim period shall be reported by retrospective application in accordance with paragraphs 7–10 of this Statement. However, the impracticability exception in paragraph 11 may not be applied to prechange interim periods of the fiscal year in which the change is

---

[3]This Statement requires a determination of whether information currently available to develop significant estimates would have been available when the affected transactions or events would have been recognized in the financial statements. However, it is not necessary to maintain documentation from the time that an affected transaction or event would have been recognized to determine whether information to develop the estimates would have been available at that time.

EXHIBIT C
19

**FAS154**       *FASB Statement of Standards*

made. When retrospective application to prechange interim periods is impracticable, the desired change may only be made as of the beginning of a subsequent fiscal year.

16. If a public company that regularly reports interim information makes an accounting change during the fourth quarter of its fiscal year and does not report the data specified by paragraph 30 of APB Opinion No. 28, *Interim Financial Reporting* (as amended), in a separate fourth-quarter report or in its annual report, that entity shall include disclosure of the effects of the accounting change on interim-period results, as required by paragraph 17 of this Statement, in a note to the annual financial statements for the fiscal year in which the change is made.

*Disclosures*

17. An entity shall disclose the following in the fiscal period in which a change in accounting principle is made:

a. The nature of and reason for the change in accounting principle, including an explanation of why the newly adopted accounting principle is preferable.
b. The method of applying the change, and:
   (1) A description of the prior-period information that has been retrospectively adjusted, if any.
   (2) The effect of the change on income from continuing operations, net income (or other appropriate captions of changes in the applicable net assets or performance indicator), any other affected financial statement line item, and any affected per-share amounts for the current period and any prior periods retrospectively adjusted. Presentation of the effect on financial statement subtotals and totals other than income from continuing operations and net income (or other appropriate captions of changes in the applicable net assets or performance indicator) is not required.
   (3) The cumulative effect of the change on retained earnings or other components of equity or net assets in the statement of financial position as of the beginning of the earliest period presented.

(4) If retrospective application to all prior periods (paragraph 7) is impracticable, disclosure of the reasons therefor, and a description of the alternative method used to report the change (paragraphs 8 and 9).
c. If indirect effects of a change in accounting principle are recognized:
   (1) A description of the indirect effects of a change in accounting principle, including the amounts that have been recognized in the current period, and the related per-share amounts, if applicable.
   (2) Unless impracticable,[4] the amount of the total recognized indirect effects of the accounting change and the related per-share amounts, if applicable, that are attributable to each prior period presented.

Financial statements of subsequent periods[5] need not repeat the disclosures required by this paragraph. If a change in accounting principle has no material effect in the period of change but is reasonably certain to have a material effect in later periods, the disclosures required by paragraph 17(a) shall be provided whenever the financial statements of the period of change are presented.

18. In the fiscal year in which a new accounting principle is adopted, financial information reported for interim periods after the date of adoption shall disclose the effect of the change on income from continuing operations, net income (or other appropriate captions of changes in the applicable net assets or performance indicator), and related per-share amounts, if applicable, for those post-change interim periods.

*Change in Accounting Estimate*

19. A change in accounting estimate shall be accounted for in (a) the period of change if the change affects that period only or (b) the period of change and future periods if the change affects both. A change in accounting estimate shall not be accounted for by restating or retrospectively adjusting amounts reported in financial statements of prior periods or by reporting pro forma amounts for prior periods.

20. Distinguishing between a change in an accounting principle and a change in an accounting estimate

---

[4]Compliance with this disclosure requirement is practicable unless an entity cannot comply with it after making every reasonable effort to do so.
[5]An entity that issues interim financial statements shall provide the required disclosures in the financial statements of both the interim period of the change and the annual period of the change.

EXHIBIT C
20

*Accounting Changes and Error Corrections*        **FAS154**

is sometimes difficult. In some cases, a change in accounting estimate is effected by a change in accounting principle. One example of this type of change is a change in method of depreciation, amortization, or depletion for long-lived, nonfinancial assets (hereinafter referred to as depreciation method). The new depreciation method is adopted in partial or complete recognition of a change in the estimated future benefits inherent in the asset, the pattern of consumption of those benefits, or the information available to the entity about those benefits. The effect of the change in accounting principle, or the method of applying it, may be inseparable from the effect of the change in accounting estimate. Changes of that type often are related to the continuing process of obtaining additional information and revising estimates and, therefore, are considered changes in estimates for purposes of applying this Statement.

21. Like other changes in accounting principle, a change in accounting estimate that is effected by a change in accounting principle may be made only if the new accounting principle is justifiable on the basis that it is preferable. For example, an entity that concludes that the pattern of consumption of the expected benefits of an asset has changed, and determines that a new depreciation method better reflects that pattern, may be justified in making a change in accounting estimate effected by a change in accounting principle.[6] (Refer to paragraph 13.)

*Disclosures*

22. The effect on income from continuing operations, net income (or other appropriate captions of changes in the applicable net assets or performance indicator), and any related per-share amounts of the current period shall be disclosed for a change in estimate that affects several future periods, such as a change in service lives of depreciable assets. Disclosure of those effects is not necessary for estimates made each period in the ordinary course of accounting for items such as uncollectible accounts or inventory obsolescence; however, disclosure is required if the effect of a change in the estimate is material.[7] When an entity effects a change in estimate by changing an accounting principle, the disclosures re-

quired by paragraphs 17 and 18 of this Statement also are required. If a change in estimate does not have a material effect in the period of change but is reasonably certain to have a material effect in later periods, a description of that change in estimate shall be disclosed whenever the financial statements of the period of change are presented.

*Change in the Reporting Entity*

23. When an accounting change results in financial statements that are, in effect, the statements of a different reporting entity, the change shall be retrospectively applied to the financial statements of all prior periods presented to show financial information for the new reporting entity for those periods. Previously issued interim financial information shall be presented on a retrospective basis. However, the amount of interest cost previously capitalized through application of FASB Statement No. 58, *Capitalization of Interest Cost in Financial Statements That Include Investments Accounted for by the Equity Method,* shall not be changed when retrospectively applying the accounting change to the financial statements of prior periods.

*Disclosures*

24. When there has been a change in the reporting entity, the financial statements of the period of the change shall describe the nature of the change and the reason for it. In addition, the effect of the change on income before extraordinary items, net income (or other appropriate captions of changes in the applicable net assets or performance indicator), other comprehensive income, and any related per-share amounts shall be disclosed for all periods presented. Financial statements of subsequent periods need not repeat the disclosures required by this paragraph. If a change in reporting entity does not have a material effect in the period of change but is reasonably certain to have a material effect in later periods, the nature of and reason for the change shall be disclosed whenever the financial statements of the period of change are presented. (Paragraphs 51–58 of FASB

---

[6]However, a change to the straight-line method at a specific point in the service life of an asset may be planned at the time some depreciation methods, such as the modified accelerated cost recovery system, are adopted to fully depreciate the cost over the estimated life of the asset. Consistent application of such a policy does not constitute a change in accounting principle for purposes of applying this Statement.

[7]The requirement to disclose the effects if a change in estimate is material is carried forward from Opinion 20. The Board did not reconsider the need for that requirement in the project that led to issuance of this Statement. Numerous Statements have been issued by the Board subsequent to Opinion 20 that address required changes in estimates. Those Statements also include various disclosure requirements. This Statement is not intended to impose new disclosure requirements or change the existing disclosures that GAAP requires for specific changes in estimate.

FAS154–9

EXHIBIT C
21

**FAS154**            *FASB Statement of Standards*

Statement No. 141, *Business Combinations,* describe the manner of reporting and the disclosures required for a business combination.)

**Correction of an Error in Previously Issued Financial Statements**

25.   Any error in the financial statements of a prior period discovered subsequent to their issuance shall be reported as a prior-period adjustment by restating the prior-period financial statements. Restatement requires that:

a.  The cumulative effect of the error on periods prior to those presented shall be reflected in the carrying amounts of assets and liabilities as of the beginning of the first period presented.
b.  An offsetting adjustment, if any, shall be made to the opening balance of retained earnings (or other appropriate components of equity or net assets in the statement of financial position) for that period.
c.  Financial statements for each individual prior period presented shall be adjusted to reflect correction of the period-specific effects of the error.

*Disclosures*

26.   When financial statements are restated to correct an error, the entity shall disclose that its previ-ously issued financial statements have been restated, along with a description of the nature of the error. The entity also shall disclose the following:

a.  The effect of the correction on each financial statement line item and any per-share amounts affected for each prior period presented
b.  The cumulative effect of the change on retained earnings or other appropriate components of equity or net assets in the statement of financial position, as of the beginning of the earliest period presented.

In addition, the entity shall make the disclosures of prior-period adjustments and restatements required by paragraph 26 of APB Opinion No. 9, *Reporting the Results of Operations.* Financial statements of subsequent periods[8] need not repeat the disclosures required by this paragraph.

**Effective Date and Transition**

27.   This Statement shall be effective for accounting changes and corrections of errors made in fiscal years beginning after December 15, 2005. Early adoption is permitted for accounting changes and corrections of errors made in fiscal years beginning after the date this Statement is issued. This Statement does not change the transition provisions of any existing accounting pronouncements, including those that are in a transition phase as of the effective date of this Statement.

---

> **The provisions of this Statement need not be applied to immaterial items.**

---

*This Statement was adopted by the unanimous vote of the seven members of the Financial Accounting Standards Board:*

Robert H. Herz,
*Chairman*
George J. Batavick

G. Michael Crooch
Katherine Schipper
Leslie F. Seidman

Edward W. Trott
Donald M. Young

---

[8]Refer to footnote 5.

EXHIBIT C
22

# EXHIBIT D



# FORM 10-K/A

## LEAP WIRELESS INTERNATIONAL INC - LEAP

**Filed: December 26, 2007 (period: December 31, 2006)**

Amendment to a previously filed 10-K

EXHIBIT D

23

# Table of Contents

10-K/A - AMENDMENT TO FORM 10-K

## PART I

Item 1A.   Risk Factors

## PART II

Item 6.   Selected Financial Data (in thousands, except per share data)
Item 7.   Management s Discussion and Analysis of Financial Condition and Results of Operations
Item 8.   Financial Statements and Supplementary Data
Item 9A.   Controls and Procedures

## PART IV

Item 15.   Exhibits and Financial Statement Schedules
SIGNATURES
EX-23 (EXHIBIT 23)

EX-31 (EXHIBIT 31)

EX-32 (EXHIBIT 32)

Table of Contents

### EXPLANATORY NOTE

This Amendment No. 1 on Form 10-K/A to the Leap Wireless International, Inc. (the "Company") Annual Report on Form 10-K for the year ended December 31, 2006 includes restated audited consolidated financial statements for the years ended December 31, 2006 and 2005 (including unaudited restated financial information as of and for the interim periods therein), for the period from August 1, 2004 to December 31, 2004 (Successor Company) and for the period from January 1, 2004 to July 31, 2004 (Predecessor Company) previously included in our Annual Report on Form 10-K for the year ended December 31, 2006 (the "Original Form 10-K").

These previously issued audited consolidated financial statements and unaudited condensed consolidated financial statements of the Company have been restated to correct errors relating to (i) the timing of recognition of certain service revenues prior to or subsequent to the period in which they were earned, (ii) the recognition of service revenues for certain customers that voluntarily disconnected service and (iii) the classification of certain components of service revenues, equipment revenues and operating expenses. See Note 2 to the Company's audited consolidated financial statements included in "Part II — Item 8. Financial Statements and Supplementary Data" of this report and the information set forth in "Part II — Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations — Results of Operations — Adjustments to Quarterly Condensed Consolidated Financial Statements (Unaudited)" for additional information. The Company also has restated its unaudited condensed consolidated financial statements as of and for the quarterly periods ended March 31 and June 30, 2007.

The Company has amended and restated in its entirety each item of the Original Form 10-K filed with the Securities and Exchange Commission (the "SEC") on March 1, 2007 (the "Original Filing Date") that required a change to reflect this restatement and to include certain additional information. These items include Item 1A of Part I and Items 6, 7, 8 and 9A of Part II. The Company has supplemented Item 15 of Part IV to include current certifications of the Company's Chief Executive Officer and Acting Chief Financial Officer pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, included as Exhibits 31 and 32 to this Amendment. No other information included in the Original Form 10-K is amended hereby.

Pursuant to Rule 12b-15 under the Securities Exchange Act of 1934, as amended, this Amendment amends and restates only the items and exhibits to the Original Form 10-K that are being amended and restated, and those unaffected items or exhibits are not included herein. Except as stated above, this Amendment speaks only as of the Original Filing Date, and this filing has not been updated to reflect any events occurring after the Original Filing Date or to modify or update disclosures affected by other subsequent events. In particular, forward-looking statements included in this Amendment represent management's views as of the Original Filing Date. Such forward-looking statements should not be assumed to be accurate as of any future date. This Amendment should be read in conjunction with the Company's other filings made with the SEC subsequent to the Original Filing Date, together with any amendments to those filings.

As previously disclosed in the Company's Current Report on Form 8-K filed on November 8, 2007, the Company's consolidated financial statements previously included in the Original Form 10-K (and other SEC filings in which such financial statements were included) and in the Company's Annual Report on Form 10-K for the year ended December 31, 2005 filed with the SEC on March 27, 2006, and the Company's unaudited interim condensed consolidated financial statements previously included in the Company's Quarterly Reports on Form 10-Q for the quarterly periods ended September 30, June 30, and March 31, 2006 and 2005, should not be relied upon.

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

**LEAP WIRELESS INTERNATIONAL, INC.**

**ANNUAL REPORT ON FORM 10-K/A**
**(Amendment No. 1)**
**For the Year Ended December 31, 2006**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| | **PART I** | |
| Item 1A. | Risk Factors | 1 |
| | **PART II** | |
| Item 6. | Selected Financial Data | 18 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 20 |
| Item 8. | Financial Statements and Supplementary Data | 64 |
| Item 9A. | Controls and Procedures | 110 |
| | **PART IV** | |
| Item 15. | Exhibits and Financial Statement Schedules | 112 |
| EXHIBIT 23 | | |
| EXHIBIT 31 | | |
| EXHIBIT 32 | | |

i

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

## LEAP WIRELESS INTERNATIONAL, INC.

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS

**Note 1.  The Company**

Leap Wireless International, Inc. ("Leap"), a Delaware corporation, together with its subsidiaries, is a wireless communications carrier that offers digital wireless service in the United States of America under the "Cricket®" and "Jump™ Mobile" brands. Leap conducts operations through its subsidiaries and has no independent operations or sources of operating revenue other than through dividends, if any, from its subsidiaries. Cricket and Jump Mobile services are offered by Leap's wholly owned subsidiary, Cricket Communications, Inc. ("Cricket"). Leap, Cricket and their subsidiaries are collectively referred to herein as "the Company." Cricket and Jump Mobile services are also offered in certain markets by Alaska Native Broadband 1 License, LLC ("ANB 1 License") and by LCW Wireless Operations, LLC ("LCW Operations"), both of which are designated entities under Federal Communications Commission ("FCC") regulations. Cricket owns an indirect 75% non-controlling interest in ANB 1 License through a 75% non-controlling interest in Alaska Native Broadband 1, LLC ("ANB 1"). In January 2007, Alaska Native Broadband, LLC exercised its option to sell its entire 25% controlling interest in ANB 1 to Cricket. The FCC has approved the application to transfer control of ANB 1 License to Cricket and the Company expects to close the sale transaction in the near future. Cricket also owns an indirect 73.3% non-controlling interest in LCW Operations through a 73.3% non-controlling interest in LCW Wireless, LLC ("LCW Wireless") and an 82.5% non-controlling interest in Denali Spectrum, LLC ("Denali"), which participated in the FCC's Auction #66 as a designated entity through its wholly owned subsidiary, Denali Spectrum License, LLC ("Denali License").

The Company operates in a single operating segment as a wireless communications carrier that offers digital wireless service in the United States of America. As of and for the year ended December 31, 2006, all of the Company's revenues and long-lived assets related to operations in the United States of America.

The Company adopted the fresh-start reporting provisions of American Institute of Certified Public Accountants' Statement of Position 90-7, "Financial Reporting by Entities in Reorganization under the Bankruptcy Code," ("SOP 90-7") as of July 31, 2004 upon the consummation of its Plan of Reorganization. Under fresh-start reporting, a new entity is deemed to be created for financial reporting purposes. Therefore, as used in these consolidated financial statements, the Company is referred to as the "Predecessor Company" for periods on or prior to July 31, 2004 and is referred to as the "Successor Company" for periods after July 31, 2004, after giving effect to the implementation of fresh-start reporting. The financial statements of the Successor Company are not comparable in many respects to the financial statements of the Predecessor Company because of the effects of the consummation of the Plan of Reorganization as well as the adjustments for fresh-start reporting.

**Note 2.  Restatement of Previously Reported Consolidated Financial Statements**

The Company has restated its historical consolidated financial statements as of and for the years ended December 31, 2006 and 2005, for the period from August 1, 2004 to December 31, 2004 (Successor Company) and for the period from January 1, 2004 to July 31, 2004 (Predecessor Company).

The determination to restate these consolidated financial statements and the quarterly condensed consolidated financial statements was made by the Company's Audit Committee upon management's recommendation following the identification of errors related to the Company's accounting for revenues and operating expenses. The general nature and scope of the related errors and adjustments are summarized as follows:

- *Errors in the Timing of Recognition of Service Revenues ("Revenue — Timing Adjustments")* — The Company identified several timing errors in the recognition of service revenues that generally resulted from errors in the processes that the Company used to ensure that revenues were not recognized until service had been provided to customers and cash had been received from them. The nature of these timing errors generally was that revenue that was recognized in a particular month should have been recognized in either the preceding or the following month. These errors resulted in an understatement of service revenues of $6.2 million, $2.3 million and $0.9 million in the seven months ended July 31, 2004, the five months ended

71

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

**LEAP WIRELESS INTERNATIONAL, INC.**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

December 31, 2004 and the year ended December 31, 2005, respectively, and an overstatement of service revenues of $16.1 million in the year ended December 31, 2006.

- *Other Errors in the Recognition of Service Revenues ("Other — Revenue Adjustments")* — The Company incorrectly recognized revenue for a group of customers who voluntarily disconnected their service. For these customers, approximately one month of deferred revenue that was recorded when the customers' monthly bills were generated was mistakenly recognized as revenue after their service was disconnected, due to the fact that one of the key reports used to validate that revenue is not recognized for customers who have not yet paid erroneously excluded this subset of disconnected customer balances. These customers comprised a small percentage of the Company's disconnected customers, and the error arose in connection with the Company's re-implementation of the pay-in-advance billing method for new and reactivating customers in May 2006. This error resulted in an overstatement of service revenues of $2.8 million in the year ended December 31, 2006. In addition, certain other errors were made in the recognition of revenue and revenue-related accounts, resulting in an understatement of service revenues of $0.8 million in the year ended December 31, 2005 and an overstatement of service revenues of $2.3 million in the year ended December 31, 2006.

- *Errors in the Classification of Certain Components of Service Revenues, Equipment Revenues and Operating Expenses ("Reclassification Adjustments")* — The Company identified errors relating to the classification of certain components of service revenues, equipment revenues and operating expenses. The Company incorrectly classified certain customer service fees as equipment revenue rather than service revenue. The Company incorrectly classified certain costs related to handset insurance purchased by some pay-in-arrears customers as a reduction of service revenues rather than as a cost of service. The Company incorrectly classified certain revenues received by the Company in connection with handsets sold to Company customers under insurance or other handset replacement programs as a reduction in handset costs rather than as equipment revenues. These classification errors resulted from deficiencies in certain account analyses that resulted in the Company incorrectly analyzing certain types of transactions for their classification impacts. The errors resulted in a net understatement of total revenues and understatement of operating expenses of $4.9 million, $4.2 million, $41.4 million and $51.7 million in the seven months ended July 31, 2004, the five months ended December 31, 2004 and the years ended December 31, 2005 and 2006, respectively. These errors had no impact on operating income or net income.

- *Other Non-Material Items ("Other Adjustments")* — The Company identified other errors that were not material, individually or in the aggregate, to its financial statements taken as a whole. However, because the Company has restated its financial statements for the effects of the items noted above, the Company revised its previously reported financial statements to correct all identified errors, including those that were not material. These items resulted in a net understatement of operating expenses of $0.5 million in the year ended December 31, 2005 and a net overstatement of operating expenses of $1.1 million in the year ended December 31, 2006.

The Company has also restated its income tax provisions for the historical periods described above to reflect the tax impact of the adjustments to pre-tax income.

72

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
28

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

The following tables present the adjustments due to the restatements of the Company's previously issued consolidated financial statements as of and for the years ended December 31, 2006 and 2005, for the period from August 1, 2004 to December 31, 2004 (Successor Company) and for the period from January 1, 2004 to July 31, 2004 (Predecessor Company) (in thousands, except share and per share data):

| | December 31, 2006 | | |
| --- | --- | --- | --- |
| | Previously Reported | Adjustments | As Restated |
| **Assets** | | | |
| Cash and cash equivalents | $ 374,939 | $ (2,127) | $ 372,812 |
| Short-term investments | 66,400 | — | 66,400 |
| Restricted cash, cash equivalents and short-term investments | 13,581 | — | 13,581 |
| Inventories | 90,185 | — | 90,185 |
| Other current assets | 53,527 | (546) | 52,981 |
| Total current assets | 598,632 | (2,673) | 595,959 |
| Property and equipment, net | 1,077,755 | 766 | 1,078,521 |
| Wireless licenses | 1,563,958 | — | 1,563,958 |
| Assets held for sale | 8,070 | — | 8,070 |
| Goodwill | 431,896 | (6,114) | 425,782 |
| Other intangible assets, net | 79,828 | — | 79,828 |
| Deposits for wireless licenses | 274,084 | — | 274,084 |
| Other assets | 58,745 | — | 58,745 |
| Total assets | $ 4,092,968 | $ (8,021) | $ 4,084,947 |
| | | | |
| **Liabilities and Stockholders' Equity** | | | |
| Accounts payable and accrued liabilities | $ 316,494 | $ 599 | $ 317,093 |
| Current maturities of long-term debt | 9,000 | — | 9,000 |
| Other current liabilities | 74,637 | 10,038 | 84,675 |
| Total current liabilities | 400,131 | 10,637 | 410,768 |
| Long-term debt | 1,676,500 | — | 1,676,500 |
| Deferred tax liabilities | 149,728 | (1,393) | 148,335 |
| Other long-term liabilities | 47,608 | — | 47,608 |
| Total liabilities | 2,273,967 | 9,244 | 2,283,211 |
| Minority interests | 30,000 | (57) | 29,943 |
| Stockholders' equity: | | | |
| Preferred stock | — | — | — |
| Common stock | 7 | — | 7 |
| Additional paid-in capital | 1,769,772 | — | 1,769,772 |
| Retained earnings | 17,436 | (17,208) | 228 |
| Accumulated other comprehensive income | 1,786 | — | 1,786 |
| Total stockholders' equity | 1,789,001 | (17,208) | 1,771,793 |
| Total liabilities and stockholders' equity | $ 4,092,968 | $ (8,021) | $ 4,084,947 |

73

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
29

Table of Contents

## LEAP WIRELESS INTERNATIONAL, INC.

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Previously Reported | Revenue- Timing Adjustments | Other- Revenue Adjustments | Reclassification Adjustments | Other Adjustments | Income Tax Adjustments | As Restated |
|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | |
| Service revenues | $ 972,781 | $ (16,090) | $ (5,056) | $ 4,730 | $ — | $ — | $ 956,365 |
| Equipment revenues | 163,919 | (28) | — | 46,931 | — | — | 210,822 |
| Total revenues | 1,136,700 | (16,118) | (5,056) | 51,661 | — | — | 1,167,187 |
| **Operating expenses:** | | | | | | | |
| Cost of service (exclusive of items shown separately below) | (261,614) | — | — | (3,157) | 609 | — | (264,162) |
| Cost of equipment | (262,330) | — | — | (48,504) | — | — | (310,834) |
| Selling and marketing | (159,257) | — | — | — | — | — | (159,257) |
| General and administrative | (197,070) | — | — | — | 466 | — | (196,604) |
| Depreciation and amortization | (226,747) | — | — | — | — | — | (226,747) |
| Impairment of assets | (7,912) | — | — | — | — | — | (7,912) |
| Total operating expenses | (1,114,930) | — | — | (51,661) | 1,075 | — | (1,165,516) |
| Gain on sale or disposal of assets | 22,054 | — | — | — | — | — | 22,054 |
| Operating income | 43,824 | (16,118) | (5,056) | — | 1,075 | — | 23,725 |
| Minority interests in consolidated subsidiaries | 1,436 | — | — | — | 57 | — | 1,493 |
| Interest income | 23,063 | — | — | — | — | — | 23,063 |
| Interest expense | (61,334) | — | — | — | — | — | (61,334) |
| Other expense, net | (2,650) | — | — | — | — | — | (2,650) |
| Income (loss) before income taxes and cumulative effect of change in accounting principle | 4,339 | (16,118) | (5,056) | — | 1,132 | — | (15,703) |
| Income tax expense | (9,101) | — | — | — | — | (176) | (9,277) |
| Loss before cumulative effect of change in accounting principle | (4,762) | (16,118) | (5,056) | — | 1,132 | (176) | (24,980) |
| Cumulative effect of change in accounting principle | 623 | — | — | — | — | — | 623 |
| Net loss | $ (4,139) | $ (16,118) | $ (5,056) | $ — | $ 1,132 | $ (176) | $ (24,357) |
| Basic earnings (loss) per share: | | | | | | | |
| Loss before cumulative effect of change in accounting principle | $ (0.08) | $ (0.26) | $ (0.08) | $ — | $ 0.01 | $ — | $ (0.41) |
| Cumulative effect of change in accounting principle | 0.01 | — | — | — | — | — | 0.01 |
| Basic loss per share | $ (0.07) | $ (0.26) | $ (0.08) | $ — | $ 0.01 | $ — | $ (0.40) |
| Diluted earnings (loss) per share: | | | | | | | |
| Loss before cumulative effect of change in accounting principle | $ (0.08) | $ (0.26) | $ (0.08) | $ — | $ 0.01 | $ — | $ (0.41) |
| Cumulative effect of change in accounting principle | 0.01 | — | — | — | — | — | 0.01 |
| Diluted loss per share | $ (0.07) | $ (0.26) | $ (0.08) | $ — | $ 0.01 | $ — | $ (0.40) |
| Shares used in per share calculations: | | | | | | | |
| Basic | 61,645 | — | — | — | — | — | 61,645 |
| Diluted | 61,645 | — | — | — | — | — | 61,645 |

74

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
30

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Year Ended December 31, 2006 | | |
|---|---|---|---|
| | Previously Reported | Adjustments | As Restated |
| Operating activities: | | | |
| Net loss | $ (4,139) | $ (20,218) | $ (24,357) |
| Adjustments to reconcile net loss to net cash provided by operating activities: | | | |
| Share-based compensation expense | 19,959 | (234) | 19,725 |
| Depreciation and amortization | 226,747 | — | 226,747 |
| Amortization of debt issuance costs | 2,491 | — | 2,491 |
| Loss on extinguishment of debt | 6,897 | — | 6,897 |
| Deferred income tax expense | 8,367 | 464 | 8,831 |
| Impairment of indefinite-lived intangible assets | 7,912 | — | 7,912 |
| Gains on sales of wireless licenses and operating assets | (22,054) | — | (22,054) |
| Minority interest activity | (1,436) | (57) | (1,493) |
| Cumulative effect of change in accounting principle | (623) | — | (623) |
| Changes in assets and liabilities: | | | |
| Inventories | (52,898) | — | (52,898) |
| Other assets | (30,270) | 601 | (29,669) |
| Accounts payable and accrued liabilities | 95,303 | 199 | 95,502 |
| Other liabilities | 34,976 | 17,884 | 52,860 |
| Net cash provided by operating activities | 291,232 | (1,361) | 289,871 |
| Investing activities: | | | |
| Purchases of property and equipment | (590,529) | (766) | (591,295) |
| Prepayments for purchases of property and equipment | (3,846) | — | (3,846) |
| Purchases of and deposits for wireless licenses | (1,018,832) | — | (1,018,832) |
| Proceeds from sales of wireless licenses and operating assets | 40,372 | — | 40,372 |
| Purchases of investments | (150,488) | — | (150,488) |
| Sales and maturities of investments | 177,932 | — | 177,932 |
| Changes in restricted cash, cash equivalents and short-term investments, net | (4,467) | — | (4,467) |
| Net cash used in investing activities | (1,549,858) | (766) | (1,550,624) |
| Financing activities: | | | |
| Proceeds from long-term debt | 2,260,000 | — | 2,260,000 |
| Repayment of long-term debt | (1,168,944) | — | (1,168,944) |
| Payment of debt issuance costs | (22,864) | — | (22,864) |
| Minority interest contributions | 12,402 | — | 12,402 |
| Proceeds from issuance of common stock, net | 1,119 | — | 1,119 |
| Proceeds from physical settlement of forward equity sale | 260,036 | — | 260,036 |
| Payment of fees related to forward equity sale | (1,257) | — | (1,257) |
| Net cash provided by financing activities | 1,340,492 | — | 1,340,492 |
| Net increase in cash and cash equivalents | 81,866 | (2,127) | 79,739 |
| Cash and cash equivalents at beginning of period | 293,073 | — | 293,073 |
| Cash and cash equivalents at end of period | $ 374,939 | $ (2,127) | $ 372,812 |

75

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
31

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | December 31, 2005 | | |
|---|---|---|---|
| | Previously Reported | Adjustments | As Restated |
| **Assets** | | | |
| Cash and cash equivalents | $ 293,073 | $ — | $ 293,073 |
| Short-term investments | 90,981 | — | 90,981 |
| Restricted cash, cash equivalents and short-term investments | 13,759 | — | 13,759 |
| Inventories | 37,320 | — | 37,320 |
| Other current assets | 29,237 | (519) | 28,718 |
| Total current assets | 464,370 | (519) | 463,851 |
| Property and equipment, net | 621,946 | 261 | 622,207 |
| Wireless licenses | 821,288 | — | 821,288 |
| Assets held for sale | 15,145 | — | 15,145 |
| Goodwill | 431,896 | (6,114) | 425,782 |
| Other intangible assets, net | 113,554 | — | 113,554 |
| Other assets | 38,119 | — | 38,119 |
| Total assets | $ 2,506,318 | $ (6,372) | $ 2,499,946 |
| **Liabilities and Stockholders' Equity** | | | |
| Accounts payable and accrued liabilities | $ 167,770 | $ 661 | $ 168,431 |
| Current maturities of long-term debt | 6,111 | — | 6,111 |
| Other current liabilities | 49,627 | (5,684) | 43,943 |
| Total current liabilities | 223,508 | (5,023) | 218,485 |
| Long-term debt | 588,333 | — | 588,333 |
| Deferred tax liabilities | 141,935 | (4,593) | 137,342 |
| Other long-term liabilities | 36,424 | — | 36,424 |
| Total liabilities | 990,200 | (9,616) | 980,584 |
| Minority interests | 1,761 | — | 1,761 |
| Stockholders' equity: | | | |
| Preferred stock | — | — | — |
| Common stock | 6 | — | 6 |
| Additional paid-in capital | 1,511,580 | 234 | 1,511,814 |
| Unearned share-based compensation | (20,942) | — | (20,942) |
| Retained earnings | 21,575 | 3,010 | 24,585 |
| Accumulated other comprehensive income | 2,138 | — | 2,138 |
| Total stockholders' equity | 1,514,357 | 3,244 | 1,517,601 |
| Total liabilities and stockholders' equity | $ 2,506,318 | $ (6,372) | $ 2,499,946 |

76

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
32

Table of Contents

### LEAP WIRELESS INTERNATIONAL, INC.

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Previously Reported | Revenue-Timing Adjustments | Other-Revenue Adjustments | Reclassification Adjustments | Other Adjustments | Income Tax Adjustments | As Restated |
|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | |
| Service revenues | $ 763,680 | $ 890 | $ 785 | $ 3,561 | $ — | $ — | $ 768,916 |
| Equipment revenues | 150,983 | — | — | 37,872 | — | — | 188,855 |
| Total revenues | 914,663 | 890 | 785 | 41,433 | — | — | 957,771 |
| **Operating expenses:** | | | | | | | |
| Cost of service (exclusive of items shown separately below) | (200,430) | — | — | (3,118) | — | — | (203,548) |
| Cost of equipment | (192,205) | — | — | (38,315) | — | — | (230,520) |
| Selling and marketing | (100,042) | — | — | — | — | — | (100,042) |
| General and administrative | (159,249) | — | — | — | (492) | — | (159,741) |
| Depreciation and amortization | (195,462) | — | — | — | — | — | (195,462) |
| Impairment of assets | (12,043) | — | — | — | — | — | (12,043) |
| Total operating expenses | (859,431) | — | — | (41,433) | (492) | — | (901,356) |
| Gain on sale or disposal of assets | 14,587 | — | — | — | — | — | 14,587 |
| Operating income | 69,819 | 890 | 785 | — | (492) | — | 71,002 |
| Minority interests in consolidated subsidiaries | (31) | — | — | — | — | — | (31) |
| Interest income | 9,957 | — | — | — | — | — | 9,957 |
| Interest expense | (30,051) | — | — | — | — | — | (30,051) |
| Other income, net | 1,423 | — | — | — | — | — | 1,423 |
| Income before income taxes | 51,117 | 890 | 785 | — | (492) | — | 52,300 |
| Income tax expense | (21,151) | — | — | — | — | (464) | (21,615) |
| Net income | $ 29,966 | $ 890 | $ 785 | $ — | $ (492) | $ (464) | $ 30,685 |
| **Basic and diluted earnings per share:** | | | | | | | |
| Basic earnings per share | $ 0.50 | $ 0.02 | $ 0.01 | $ — | $ (0.01) | $ (0.01) | $ 0.51 |
| Diluted earnings per share | $ 0.49 | $ 0.02 | $ 0.01 | $ — | $ (0.01) | $ (0.01) | $ 0.50 |
| **Shares used in per share calculations:** | | | | | | | |
| Basic | 60,135 | — | — | — | — | — | 60,135 |
| Diluted | 61,003 | — | — | — | — | — | 61,003 |

77

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Year Ended December 31, 2005 | | |
| --- | --- | --- | --- |
| | Previously Reported | Adjustments | As Restated |
| Operating activities: | | | |
| Net income | $ 29,966 | $ 719 | $ 30,685 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | | |
| Share-based compensation expense | 12,245 | 234 | 12,479 |
| Depreciation and amortization | 195,462 | — | 195,462 |
| Amortization of debt issuance costs | 565 | — | 565 |
| Loss on extinguishment of debt | 1,219 | — | 1,219 |
| Deferred income tax expense | 21,088 | 464 | 21,552 |
| Impairment of indefinite-lived intangible assets | 12,043 | — | 12,043 |
| Gains on sales of wireless licenses and operating assets | (14,587) | — | (14,587) |
| Minority interest activity | 31 | — | 31 |
| Changes in assets and liabilities: | | | |
| Inventories | (11,504) | — | (11,504) |
| Other assets | 3,570 | 653 | 4,223 |
| Accounts payable and accrued liabilities | 57,101 | 413 | 57,514 |
| Other liabilities | 1,081 | (2,483) | (1,402) |
| Net cash provided by operating activities | 308,280 | — | 308,280 |
| Investing activities: | | | |
| Purchases of property and equipment | (208,808) | — | (208,808) |
| Prepayments for purchases of property and equipment | (9,828) | — | (9,828) |
| Purchases of and deposits for wireless licenses | (243,960) | — | (243,960) |
| Proceeds from sales of wireless licenses and operating assets | 108,800 | — | 108,800 |
| Purchases of investments | (307,021) | — | (307,021) |
| Sales and maturities of investments | 329,043 | — | 329,043 |
| Changes in restricted cash, cash equivalents and short-term investments, net | (338) | — | (338) |
| Net cash used in investing activities | (332,112) | — | (332,112) |
| Financing activities: | | | |
| Proceeds from long-term debt | 600,000 | — | 600,000 |
| Repayment of long-term debt | (418,285) | — | (418,285) |
| Payment of debt issuance costs | (6,951) | — | (6,951) |
| Minority interest contributions | 1,000 | — | 1,000 |
| Net cash provided by financing activities | 175,764 | — | 175,764 |
| Net increase in cash and cash equivalents | 151,932 | — | 151,932 |
| Cash and cash equivalents at beginning of period | 141,141 | — | 141,141 |
| Cash and cash equivalents at end of period | $ 293,073 | $ — | $ 293,073 |

78

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
34

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | | Successor Company | | | | | |
|---|---|---|---|---|---|---|---|
| | | Five Months Ended December 31, 2004 | | | | | |
| | Previously Reported | Revenue - Timing Adjustments | Other - Revenue Adjustments | Reclassification Adjustments | Other Adjustments | Income Tax Adjustments | As Restated |
| **Revenues:** | | | | | | | |
| Service revenues | $ 285,647 | $ 2,291 | $ — | $ 1,417 | $ — | $ — | $ 289,355 |
| Equipment revenues | 58,713 | — | — | 2,779 | — | — | 61,492 |
| Total revenues | 344,360 | 2,291 | — | 4,196 | — | — | 350,847 |
| **Operating expenses:** | | | | | | | |
| Cost of service (exclusive of items shown separately below) | (79,148) | — | — | (1,138) | — | — | (80,286) |
| Cost of equipment | (82,402) | — | — | (3,058) | — | — | (85,460) |
| Selling and marketing | (39,938) | — | — | — | — | — | (39,938) |
| General and administrative | (57,110) | — | — | — | — | — | (57,110) |
| Depreciation and amortization | (75,324) | — | — | — | — | — | (75,324) |
| Total operating expenses | (333,922) | — | — | (4,196) | — | — | (338,118) |
| Operating income | 10,438 | 2,291 | — | — | — | — | 12,729 |
| Interest income | 1,812 | — | — | — | — | — | 1,812 |
| Interest expense | (16,594) | — | — | — | — | — | (16,594) |
| Other expense, net | (117) | — | — | — | — | — | (117) |
| Loss before income taxes | (4,461) | 2,291 | — | — | — | — | (2,170) |
| Income tax expense | (3,930) | — | — | — | — | — | (3,930) |
| Net loss | $ (8,391) | $ 2,291 | $ — | $ — | $ — | $ — | $ (6,100) |
| **Basic and diluted loss per share:** | | | | | | | |
| Basic loss per share | $ (0.14) | $ 0.04 | $ — | $ — | $ — | $ — | $ (0.10) |
| Diluted loss per share | $ (0.14) | $ 0.04 | $ — | $ — | $ — | $ — | $ (0.10) |
| **Shares used in per share calculations:** | | | | | | | |
| Basic | 60,000 | — | — | — | — | — | 60,000 |
| Diluted | 60,000 | — | — | — | — | — | 60,000 |

79

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

**LEAP WIRELESS INTERNATIONAL, INC.**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

| | Successor Company | | |
| | Five Months Ended December 31, 2004 | | |
| | As Previously Reported | Adjustments | As Restated |
|---|---|---|---|
| Operating activities: | | | |
| Net loss | $ (8,391) | $ 2,291 | $ (6,100) |
| Adjustments to reconcile net loss to net cash provided by operating activities: | | | |
| Depreciation and amortization | 75,324 | — | 75,324 |
| Deferred income tax expense | 3,823 | — | 3,823 |
| Changes in assets and liabilities: | | | |
| Inventories | 8,923 | — | 8,923 |
| Other assets | (21,132) | (134) | (21,266) |
| Accounts payable and accrued liabilities | (4,421) | — | (4,421) |
| Other liabilities | 15,626 | (2,157) | 13,469 |
| Net cash provided by operating activities | 69,752 | — | 69,752 |
| Investing activities: | | | |
| Purchases of property and equipment | (49,043) | — | (49,043) |
| Prepayments for purchases of property and equipment | 5,102 | — | 5,102 |
| Purchases of investments | (47,368) | — | (47,368) |
| Sales and maturities of investments | 32,494 | — | 32,494 |
| Changes in restricted cash, cash equivalents and short-term investments, net | 12,537 | — | 12,537 |
| Net cash used in investing activities | (46,278) | — | (46,278) |
| Financing activities: | | | |
| Repayment of long-term debt | (36,727) | — | (36,727) |
| Net cash used in financing activities | (36,727) | — | (36,727) |
| Net decrease in cash and cash equivalents | (13,253) | — | (13,253) |
| Cash and cash equivalents at beginning of period | 154,394 | — | 154,394 |
| Cash and cash equivalents at end of period | $ 141,141 | $ — | $ 141,141 |

80

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

|  | | Predecessor Company Seven Months Ended July 31, 2004 | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | Previously Reported | Revenue-Timing Adjustments | Other-Revenue Adjustments | Reclassification Adjustments | Other Adjustments | Income Tax Adjustments | As Restated |
| Revenues: | | | | | | | |
| Service revenues | $  398,451 | $  6,188 | $  — | $  1,211 | $  — | $  — | $  405,850 |
| Equipment revenues | 83,196 | — | — | 3,710 | — | — | 86,906 |
| Total revenues | 481,647 | 6,188 | — | 4,921 | — | — | 492,756 |
| Operating expenses: | | | | | | | |
| Cost of service (exclusive of items shown separately below) | (113,988) | — | — | (640) | — | — | (114,628) |
| Cost of equipment | (97,160) | — | — | (4,281) | — | — | (101,441) |
| Selling and marketing | (51,997) | — | — | — | — | — | (51,997) |
| General and administrative | (81,514) | — | — | — | — | — | (81,514) |
| Depreciation and amortization | (178,120) | — | — | — | — | — | (178,120) |
| Total operating expenses | (522,779) | — | — | (4,921) | — | — | (527,700) |
| Gain on sale or disposal of assets | 532 | — | — | — | — | — | 532 |
| Operating loss | (40,600) | 6,188 | — | — | — | — | (34,412) |
| Interest expense | (4,195) | — | — | — | — | — | (4,195) |
| Other expense, net | (293) | — | — | — | — | — | (293) |
| Loss before reorganization items and income taxes | (45,088) | 6,188 | — | — | — | — | (38,900) |
| Reorganization items, net | 962,444 | — | — | — | — | — | 962,444 |
| Income before income taxes | 917,356 | 6,188 | — | — | — | — | 923,544 |
| Income tax expense | (4,166) | — | — | — | — | — | (4,166) |
| Net income | $  913,190 | $  6,188 | $  — | $  — | $  — | $  — | $  919,378 |
| Basic and diluted earnings per share: | | | | | | | |
| Basic earnings per share | $  15.58 | $  0.10 | $  — | $  — | $  — | $  — | $  15.68 |
| Diluted earnings per share | $  15.58 | $  0.10 | $  — | $  — | $  — | $  — | $  15.68 |
| Shares used in per share calculations: | | | | | | | |
| Basic | 58,623 | — | — | — | — | — | 58,623 |
| Diluted | 58,623 | — | — | — | — | — | 58,623 |

81

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
37

Table of Contents

LEAP WIRELESS INTERNATIONAL, INC.

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)

| | Predecessor Company | | |
| | Seven Months Ended July 31, 2004 | | |
| | As Previously Reported | Adjustments | As Restated |
|---|---|---|---|
| Operating activities: | | | |
| Net income | $ 913,190 | $ 6,188 | $ 919,378 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | | |
| Depreciation and amortization | 178,120 | — | 178,120 |
| Deferred income tax expense | 3,370 | — | 3,370 |
| Gains on sales of wireless licenses and operating assets | (532) | — | (532) |
| Reorganization items, net | (962,444) | — | (962,444) |
| Other | (805) | — | (805) |
| Changes in assets and liabilities: | | | |
| Inventories | (17,059) | — | (17,059) |
| Other assets | (5,343) | — | (5,343) |
| Accounts payable and accrued liabilities | 4,761 | — | 4,761 |
| Other liabilities | 12,861 | (6,188) | 6,673 |
| Net cash provided by operating activities before reorganization activities | 126,119 | — | 126,119 |
| Net cash used for reorganization activities | (5,496) | — | (5,496) |
| Net cash provided by operating activities | 120,623 | — | 120,623 |
| Investing activities: | | | |
| Purchases of property and equipment | (34,456) | — | (34,456) |
| Prepayments for purchases of property and equipment | 1,215 | — | 1,215 |
| Proceeds from sales of wireless licenses and operating assets | 2,000 | — | 2,000 |
| Purchases of investments | (87,201) | — | (87,201) |
| Sales and maturities of investments | 58,333 | — | 58,333 |
| Changes in restricted cash, cash equivalents and short-term investments, net | 9,810 | — | 9,810 |
| Net cash used in investing activities | (50,299) | — | (50,299) |
| Net increase in cash and cash equivalents | 70,324 | — | 70,324 |
| Cash and cash equivalents at beginning of period | 84,070 | — | 84,070 |
| Cash and cash equivalents at end of period | $ 154,394 | $ — | $ 154,394 |

**Note 3.   Basis of Presentation and Significant Accounting Policies**

*Basis of Presentation*

The consolidated financial statements include the accounts of Leap and its wholly owned subsidiaries as well as the accounts of ANB 1, LCW Wireless and Denali and their wholly owned subsidiaries. The Company consolidates its interests in ANB 1, LCW Wireless and Denali in accordance with Financial Accounting Standards Board ("FASB") Interpretation No. ("FIN") 46(R), "Consolidation of Variable Interest Entities," because these

82

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

EXHIBIT D
38

Table of Contents

**Item 9A.** *Controls and Procedures*

**(a)   Evaluation of Disclosure Controls and Procedures (Restated)**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified by the SEC and that such information is accumulated and communicated to management, including our chief executive officer, or CEO, and chief financial officer, or CFO, as appropriate, to allow for timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives, and management is required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

Management, with participation by our CEO and CFO, has designed our disclosure controls and procedures to provide reasonable assurance of achieving desired objectives. As of the date of filing this amended Annual Report on Form 10-K/A, our CEO, S. Douglas Hutcheson, is also serving as acting CFO. As required by SEC Rule 13a-15(b), in connection with filing this amended Annual Report on Form 10-K/A, management conducted an evaluation, with the participation of our CEO and our CFO, of the effectiveness of the design and operation of our disclosure controls and procedures, as such term is defined under Rule 13a-15(e) promulgated under the Exchange Act, as of December 31, 2006, the end of the period covered by this report. Based upon that evaluation, our CEO and CFO concluded that a material weakness existed in our internal control over financial reporting as of December 31, 2006. As a result of this material weakness, our CEO and CFO concluded that our disclosure controls and procedures were not effective at the reasonable assurance level as of December 31, 2006.

In light of the material weakness referred to above, the Company performed additional analyses and procedures in order to conclude that its consolidated financial statements, for the years ended December 31, 2006 and December 31, 2005 (including interim periods therein), for the period from August 1, 2004 to December 31, 2004 and for the period from January 1, 2004 to July 31, 2004 are fairly presented, in all material respects, in accordance with generally accepted accounting principles in the United States of America.

**(b)   Management's Report on Internal Control over Financial Reporting (Restated)**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as such term is defined in Exchange Act Rule 13a-15(f). Our internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. Our internal control over financial reporting includes those policies and procedures that: (i) pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the Company, (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorizations of our management and directors, and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the financial statements.

Because of its inherent limitations, internal control over financial reporting may not prevent or detect misstatements. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Under the supervision and with the participation of our management, including Mr. Hutcheson, we conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2006 based on the criteria established in *Internal Control — Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission.

110

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

Management had previously concluded that the Company maintained effective internal control over financial reporting as of December 31, 2006. In connection with the restatement discussed under the heading "Restatement of Previously Reported Consolidated Financial Statements" in Note 2 to the consolidated financial statements included in Item 8 of this report, management determined that the material weakness discussed below existed as of December 31, 2006. Accordingly, management has now concluded that our internal control over financial reporting was not effective as of December 31, 2006.

In connection with management's assessment of internal control over financial reporting, management identified the following material weakness as of December 31, 2006:

There were deficiencies in our internal controls over the existence, completeness and accuracy of revenues, cost of revenues and deferred revenues. Specifically, the design of controls over the preparation and review of the account reconciliations and analysis of revenues, cost of revenues and deferred revenues did not detect the errors in revenues, cost of revenues and deferred revenues. A contributing factor was the ineffective operation of our user acceptance testing (i.e., ineffective testing) of changes made to our revenue and billing systems in connection with the introduction or modification of service offerings. This material weakness resulted in the accounting errors which have caused us to restate our consolidated financial statements as of and for the years ended December 31, 2006 and 2005 (including interim periods therein), for the period from August 1, 2004 to December 31, 2004 and for the period from January 1, 2004 to July 31, 2004, and our condensed consolidated financial statements as of and for the quarterly periods ended June 30, 2007 and March 31, 2007. In addition, this material weakness could result in a misstatement of revenues, cost of revenues and deferred revenues that would result in a material misstatement to the Company's interim or annual consolidated financial statements that would not be prevented or detected on a timely basis.

Management's evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2006 has been audited by PricewaterhouseCoopers LLP, an independent registered public accounting firm, as stated in their report which is included herein.

(c)  **Management's Remediation Initiatives**

We have taken and are taking the following actions to remediate the material weakness described above:

- We performed a detailed review of our billing and revenue systems, and processes for recording revenue. We are implementing stronger account reconciliations and analyses surrounding our revenue recording processes which are designed to detect any material errors in the completeness and accuracy of the underlying data.

- We intend to design and implement automated enhancements to our billing and revenue systems to reduce the need for manual processes and estimates and thereby streamline the processes for ensuring revenue is recorded only when payment is received and services are provided.

- We intend to further improve our user acceptance testing related to system changes by ensuring the user acceptance testing encompasses a complete population of scenarios of possible customer activity.

The Audit Committee has directed management to develop and present to the Committee a plan and timetable for the implementation of the remediation measures described above (to the extent not already implemented), and the Committee intends to monitor such implementation. We believe that the actions described above will remediate the material weakness control deficiencies we have identified and strengthen our control over financial reporting. As we improve our internal control over financial reporting and implement remediation measures, we may determine to supplement or modify the remediation measures described above.

111

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

### (d)  Changes in Internal Control over Financial Reporting

As described below, there were changes in our internal control over financial reporting during the fiscal quarter ended December 31, 2006 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting:

From December 31, 2004 through September 30, 2006, we reported the following material weaknesses in our internal control over financial reporting:

- We did not have sufficient personnel with the appropriate skills, training and Company-specific experience to identify and address the application of generally accepted accounting principles in complex or non-routine transactions. We also experienced staff turnover and an associated loss of Company-specific experience within our accounting, financial reporting and tax functions.

- We did not maintain effective controls over our accounting for income taxes. Specifically, we did not have adequate controls designed and in place to ensure the completeness and accuracy of the deferred income tax provision and the related deferred tax assets and liabilities and the related goodwill in conformity with generally accepted accounting principles. This control deficiency resulted in the restatement of our consolidated financial statements for the five months ended December 31, 2004, the two months ended September 30, 2004 and the quarters ended March 31, 2005, June 30, 2005 and September 30, 2005.

We have taken the following actions to remediate these material weaknesses:

- We have filled existing vacancies and we have created and filled a number of new management positions within our accounting, financial reporting and tax functions with qualified and experienced individuals. These include the following positions:

  - a new vice president, chief accounting officer hired in May 2005,

  - a new director of tax to lead our tax function hired in June 2006,

  - a new executive vice president, chief financial officer hired in August 2006,

  - a new assistant controller hired in December 2006,

  - a new director of financial reporting hired in December 2006, and

  - a number of other new accounting management personnel hired since February 2005.

These individuals collectively possess a strong background in technical accounting and the application of generally accepted accounting principles in complex or non-routine transactions, as well as a strong background in interpreting and applying income tax accounting literature and preparing income tax provisions. Management believes that we had sufficient, full-time personnel with the necessary qualifications and experience to identify and resolve complex or non-routine accounting matters, including income tax accounting, for a sufficient period of time as of December 31, 2006.

- We improved our internal controls over accounting for income taxes by establishing detailed procedures for the preparation and review of the income tax provision, including review and oversight by our director of tax and our chief accounting officer.

Based on the remediation actions described above, management has concluded that the material weaknesses that had existed from December 31, 2004 through September 30, 2006 described in this paragraph (d) have been remediated as of December 31, 2006.

**PART IV**

**Item 15.  *Exhibits and Financial Statement Schedules***

### (a) Financial Statements and Financial Statement Schedules

112

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

Table of Contents

### SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Date: December 26, 2007

LEAP WIRELESS INTERNATIONAL, INC.

By: _____ /s/ S. DOUGLAS HUTCHESON _____

S. Douglas Hutcheson
*Chief Executive Officer, President and
Acting Chief Financial Officer*

119

Source: LEAP WIRELESS INTERN, 10-K/A, December 26, 2007

# EXHIBIT E



# FORM 10-Q/A

## LEAP WIRELESS INTERNATIONAL INC - LEAP

**Filed: December 26, 2007 (period: June 30, 2007)**

Amendment to a previously filed 10-Q

# Table of Contents

10-Q/A - AMENDMENT NO.1 TO FORM 10-Q

## PART I

| | |
|---|---|
| **Item 1.** | Financial Statements. |
| **Item 2.** | Management s Discussion and Analysis of Financial Condition and Results of Operations. |
| **Item 4.** | Controls and Procedures. |

## PART II

| | |
|---|---|
| **Item 1A.** | Risk Factors. |
| **Item 6.** | Exhibits. |

SIGNATURES

EX-31 (EXHIBIT 31)

EX-32 (EXHIBIT 32)

Table of Contents

## EXPLANATORY NOTE

Leap Wireless International, Inc. (the "Company") has restated its historical consolidated financial statements as of and for the years ended December 31, 2006 and 2005 (including interim periods therein), for the period from August 1, 2004 to December 31, 2004 (Successor Company) and for the period from January 1, 2004 to July 31, 2004 (Predecessor Company) and its unaudited condensed consolidated financial statements as of and for the quarterly periods ended March 31 and June 30, 2007. This Amendment No. 1 on Form 10-Q/A to the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2007 includes restated unaudited condensed consolidated financial statements as of and for the quarter ended June 30, 2007, restated audited consolidated financial statements for the year ended December 31, 2006 and restated unaudited condensed consolidated financial statements for the quarter ended June 30, 2006 previously included in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2007 (the "Original Form 10-Q").

These previously issued financial statements of the Company have been restated to correct errors relating to (i) the timing of recognition of certain service revenues prior to or subsequent to the period in which they were earned, (ii) the recognition of service revenues for certain customers that voluntarily disconnected service, (iii) the classification of certain components of service revenues, equipment revenues and operating expenses and (iv) the determination of a tax valuation allowance during the second quarter of 2007. See Note 2 to the Company's unaudited condensed consolidated financial statements included in "Part I — Item 1. Financial Statements" of this report for additional information.

The Company has amended and restated in its entirety each item of the Original Form 10-Q filed with the Securities and Exchange Commission ("SEC") on August 9, 2007 (the "Original Filing Date") that required a change to reflect this restatement and to include certain additional information. These items include Items 1, 2 and 4 of Part I and Item 1A of Part II. The Company has supplemented Item 6 of Part II to include current certifications of our Chief Executive Officer and Chief Financial Officer pursuant to Sections 302 and 906 of the Sarbanes-Oxley Act of 2002, included as Exhibits 31 and 32 to this Amendment. No other information included in the Original Form 10-Q is amended hereby.

Pursuant to Rule 12b-15 under the Securities Exchange Act of 1934, as amended, this Amendment contains only the items and exhibits to the Original Form 10-Q that are being amended and restated, and those unaffected items or exhibits are not included herein. Except as stated above, this Amendment speaks only as of the Original Filing Date, and this filing has not been updated to reflect any events occurring after the Original Filing Date or to modify or update disclosure affected by other subsequent events. In particular, forward-looking statements included in this Amendment represent management's views as of the Original Filing Date. Such forward-looking statements should not be assumed to be accurate as of any future date. This Amendment should be read in conjunction with the Company's other filings made with the SEC subsequent to the Original Filing Date, together with any amendments to those filings.

As previously disclosed in the Company's Form 8-K filed on November 8, 2007, the Company's unaudited quarterly condensed consolidated financial statements previously included in the Original Form 10-Q should not be relied upon.

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

**LEAP WIRELESS INTERNATIONAL, INC.**

**QUARTERLY REPORT ON FORM 10-Q/A**
**(Amendment No. 1)**
**For the Quarter Ended June 30, 2007**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| **PART I — FINANCIAL INFORMATION** | | |
| Item 1. | Financial Statements | 1 |
| Item 2. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 35 |
| Item 4. | Controls and Procedures | 50 |
| **PART II — OTHER INFORMATION** | | |
| Item 1A. | Risk Factors | 52 |
| Item 6. | Exhibits | 69 |
| EXHIBIT 31 | | |
| EXHIBIT 32 | | |

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

Table of Contents

## LEAP WIRELESS INTERNATIONAL, INC.

### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (UNAUDITED)

**Note 1.  The Company**

Leap Wireless International, Inc. ("Leap"), a Delaware corporation, together with its subsidiaries, is a wireless communications carrier that offers digital wireless service in the United States of America under the "Cricket®" and "Jump™ Mobile" brands. Cricket service offers customers unlimited wireless service for a flat monthly rate without requiring a fixed-term contract or credit check. Jump Mobile service offers customers a per-minute prepaid wireless service. Leap conducts operations through its subsidiaries and has no independent operations or sources of operating revenue other than through dividends, if any, from its subsidiaries. Cricket and Jump Mobile services are offered by Cricket Communications, Inc. ("Cricket"), a wholly owned subsidiary of Leap, and by Alaska Native Broadband 1 License, LLC ("ANB 1 License"), an indirect wholly owned subsidiary of Cricket. Cricket and Jump Mobile services are also offered in Oregon by LCW Wireless Operations, LLC ("LCW Operations"), a wholly owned subsidiary of LCW Wireless, LLC ("LCW Wireless") and a designated entity under Federal Communications Commission ("FCC") regulations. Cricket owns an indirect 73.3% non-controlling interest in LCW Operations through a 73.3% non-controlling interest in LCW Wireless. Cricket also owns an 82.5% non-controlling interest in Denali Spectrum, LLC ("Denali"), which purchased a wireless license in the Great Lakes area in the FCC's auction for Advanced Wireless Service licenses ("Auction #66") as a designated entity through its wholly owned subsidiary, Denali Spectrum License, LLC ("Denali License"). Leap, Cricket, and their subsidiaries, including LCW Wireless and Denali, are collectively referred to herein as "the Company."

In March 2007, Cricket acquired the remaining 25% of the membership interests in Alaska Native Broadband 1, LLC ("ANB 1"), following Alaska Native Broadband, LLC's exercise of its option to sell its entire 25% controlling interest in ANB 1 to Cricket for $4.7 million. As a result of the acquisition, ANB 1 and its wholly owned subsidiary, ANB 1 License, became direct and indirect wholly owned subsidiaries, respectively, of Cricket.

The Company operates in a single operating segment as a wireless communications carrier that offers digital wireless service in the United States of America. As of and for the six months ended June 30, 2007, all of the Company's revenues and long-lived assets related to operations in the United States of America.

**Note 2.  Restatement of Previously Reported Consolidated Financial Statements**

The Company has restated its historical condensed consolidated financial statements as of and for the quarterly period ended June 30, 2007, its historical consolidated financial statements as of the year ended December 31, 2006 and its historical condensed consolidated financial statements as of and for the quarterly period ended June 30, 2006 included in this report.

The determination to restate these consolidated financial statements and quarterly condensed consolidated financial statements was made by the Company's Audit Committee upon management's recommendation following the identification of errors related to the Company's accounting for revenues and operating expenses. The general nature and scope of the related errors and adjustments are summarized as follows:

- *Errors in the Timing of Recognition of Service Revenues ("Revenue — Timing Adjustments")* — The Company identified several timing errors in the recognition of service revenues that generally resulted from errors in the processes that the Company used to ensure that revenues were not recognized until service had been provided to customers and cash had been received from them. The nature of these timing errors generally was that revenue that was recognized in a particular month should have been recognized in either the preceding or the following month. These errors resulted in an overstatement of service revenues of $2.2 million and $5.0 million in the three and six months ended June 30, 2007, respectively, and an overstatement of service revenues of $5.3 million and $4.1 million in the three and six months ended June 30, 2006, respectively.

- *Other Errors in the Recognition of Service Revenues ("Other — Revenue Adjustments")* — The Company incorrectly recognized revenue for a group of customers who voluntarily disconnected their service. For

4

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

EXHIBIT E
47

Table of Contents

these customers, approximately one month of deferred revenue that was recorded when the customers' monthly bills were generated was mistakenly recognized as revenue after their service was disconnected, due to the fact that one of the key reports used to validate that revenue is not recognized for customers who have not yet paid erroneously excluded this subset of disconnected customer balances. These customers comprised a small percentage of the Company's disconnected customers, and the error arose in connection with the Company's re-implementation of the pay-in-advance billing method for new and reactivating customers in May 2006. This error resulted in an overstatement of service revenues of $2.6 million and $4.6 million in the three and six months ended June 30, 2007, respectively, and an overstatement of service revenues of $0.1 million in the three and six months ended June 30, 2006. In addition, certain other errors were made in the recognition of revenue and revenue-related accounts, resulting in an understatement of service revenues of $0.3 million and an overstatement of service revenues of $1.5 million in the three and six months ended June 30, 2007, respectively, and an understatement of service revenues of $0.6 million and $0.4 million in the three and six months ended June 30, 2006, respectively.

- *Errors in the Classification of Certain Components of Service Revenues, Equipment Revenues and Operating Expenses ("Reclassification Adjustments")* — The Company identified errors relating to the classification of certain components of service revenues, equipment revenues and operating expenses. The Company incorrectly classified certain customer service fees as equipment revenue rather than service revenue. The Company incorrectly classified certain costs related to handset insurance purchased by certain pay-in-arrears customers as a reduction of service revenues rather than as a cost of service. The Company incorrectly classified certain revenues received by the Company in connection with handsets sold to Company customers under insurance or other handset replacement programs as a reduction in handset costs rather than as equipment revenues. These classification errors resulted from deficiencies in certain account analyses that resulted in the Company incorrectly analyzing certain types of transactions for their classification impacts. The errors resulted in a net understatement of total revenues and understatement of operating expenses of $9.9 million and $20.4 million in the three and six months ended June 30, 2007, respectively, and a net understatement of total revenues and understatement of operating expenses of $14.3 million and $28.3 million in the three and six months ended June 30, 2006, respectively. These errors had no impact on operating income or net income.

- *Other Non-Material Items ("Other Adjustments")* — The Company identified other errors that were not material, individually or in the aggregate, to its financial statements taken as a whole. However, because the Company is restating its financial statements for the effects of the items noted above, the Company revised its previously reported financial statements to correct all identified errors, including those that were not material. These items resulted in a net understatement of operating expenses of $1.0 million and $0.4 million in the three and six months ended June 30, 2007, respectively, and a net understatement of operating expenses of $0.02 million and $0.4 million in the three and six months ended June 30, 2006, respectively.

- *Income Tax Adjustments* — The State of Texas made certain technical corrections to the Texas Margins Tax (TMT) credit in June 2007 which confirmed that the Company was eligible for a $2.5 million TMT credit against future tax liabilities. The Company believes that it is more likely than not that the TMT credit will be realized and therefore a valuation allowance should not have been established for this item during the second quarter of 2007. Accordingly, the Company has recorded an adjustment to release that valuation allowance in the second quarter of 2007, which resulted in the realization of a $2.5 million income tax benefit and a $2.5 million increase in net income for such period.

The Company is also restating its income tax provisions for the historical periods described above to reflect the tax impact of the adjustments to pre-tax income. In particular, the Company's tax provision for the quarter ended March 31, 2007 was originally computed using an annual effective tax rate. As a result of the adjustments made to the Company's historical financial statements, the Company's revised income forecast at March 31, 2007 was lowered to a level close to break-even. Under the revised forecast, a small change in the pre-tax book income projection would produce a significant variance in the effective tax rate and, therefore, it would be difficult to make a reliable estimate of the annual effective tax rate. As a result and in accordance with Financial Accounting

5

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

EXHIBIT E
48

Table of Contents

Standards Board ("FASB") Interpretation No. ("FIN") 18, "Accounting for Income Taxes in Interim Periods — An Interpretation of APB Opinion No. 28" ("FIN 18"), the Company's restated income tax provision for the quarter ended March 31, 2007 has been calculated by applying the actual effective tax rate to the year-to-date income.

The following tables present the adjustments due to the restatements of the Company's previously issued consolidated financial statements and quarterly condensed consolidated financial statements as of and for the quarterly period ended June 30, 2007, as of the year ended December 31, 2006, and for the quarterly period ended June 30, 2006 (in thousands, except share and per share data):

| | June 30, 2007 | | |
|---|---|---|---|
| | Previously Reported | Adjustments (Unaudited) | As Restated |
| **Assets** | | | |
| Cash and cash equivalents | $ 327,328 | $ (996) | $ 326,332 |
| Short-term investments | 357,444 | — | 357,444 |
| Restricted cash, cash equivalents and short-term investments | 12,747 | — | 12,747 |
| Inventories | 90,343 | — | 90,343 |
| Other current assets | 46,613 | 995 | 47,608 |
| Total current assets | 834,475 | (1) | 834,474 |
| Property and equipment, net | 1,144,131 | 2,271 | 1,146,402 |
| Wireless licenses | 1,857,312 | — | 1,857,312 |
| Goodwill | 431,896 | (6,114) | 425,782 |
| Other intangible assets, net | 62,965 | — | 62,965 |
| Deposits for wireless licenses | 758 | — | 758 |
| Other assets | 49,556 | — | 49,556 |
| Total assets | $ 4,381,093 | $ (3,844) | $ 4,377,249 |
| **Liabilities and Stockholders' Equity** | | | |
| Accounts payable and accrued liabilities | $ 209,584 | $ 3,049 | $ 212,633 |
| Current maturities of long-term debt | 9,000 | — | 9,000 |
| Other current liabilities | 75,212 | 23,815 | 99,027 |
| Total current liabilities | 293,796 | 26,864 | 320,660 |
| Long-term debt | 2,042,249 | — | 2,042,249 |
| Deferred tax liabilities | 155,684 | (3,654) | 152,030 |
| Other long-term liabilities | 50,041 | — | 50,041 |
| Total liabilities | 2,541,770 | 23,210 | 2,564,980 |
| Minority interests | 34,084 | (136) | 33,948 |
| Stockholders' equity: | | | |
| Preferred stock | — | — | — |
| Common stock | 7 | — | 7 |
| Additional paid-in capital | 1,791,961 | — | 1,791,961 |
| Retained earnings (accumulated deficit) | 12,560 | (26,918) | (14,358) |
| Accumulated other comprehensive income | 711 | — | 711 |
| Total stockholders' equity | 1,805,239 | (26,918) | 1,778,321 |
| Total liabilities and stockholders' equity | $ 4,381,093 | $ (3,844) | $ 4,377,249 |

6

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

Table of Contents

| | Three Months Ended June 30, 2007 | | | | | | |
|---|---|---|---|---|---|---|---|
| | Previously Reported | Revenue — Timing Adjustments | Other — Revenue Adjustments | Reclassification Adjustments (Unaudited) | Other Adjustments | Income Tax Adjustments | As Restated |
| **Revenues:** | | | | | | | |
| Service revenues | $ 350,212 | $ (2,213) | $ (2,333) | $ 1,587 | $ — | $ — | $ 347,253 |
| Equipment revenues | 42,997 | (677) | — | 8,341 | — | — | 50,661 |
| Total revenues | 393,209 | (2,890) | (2,333) | 9,928 | — | — | 397,914 |
| **Operating expenses:** | | | | | | | |
| Cost of service (exclusive of items shown separately below) | (89,622) | — | — | (233) | (704) | — | (90,559) |
| Cost of equipment | (81,052) | — | — | (9,695) | (71) | — | (90,818) |
| Selling and marketing | (46,861) | — | — | — | (150) | — | (47,011) |
| General and administrative | (66,371) | — | — | — | (36) | — | (66,407) |
| Depreciation and amortization | (72,415) | — | — | — | — | — | (72,415) |
| Total operating expenses | (356,321) | — | — | (9,928) | (961) | — | (367,210) |
| Operating income | 36,888 | (2,890) | (2,333) | — | (961) | — | 30,704 |
| Minority interests in consolidated subsidiaries | 652 | — | — | — | 21 | — | 673 |
| Interest income | 7,134 | — | — | — | — | — | 7,134 |
| Interest expense | (27,090) | — | — | — | — | — | (27,090) |
| Income before income taxes | 17,584 | (2,890) | (2,333) | — | (940) | — | 11,421 |
| Income tax expense | (14,337) | — | — | — | — | 12,554 | (1,783) |
| Net income | $ 3,247 | $ (2,890) | $ (2,333) | $ — | $ (940) | $ 12,554 | $ 9,638 |
| **Basic and diluted earnings per share:** | | | | | | | |
| Basic earnings per share | $ 0.05 | $ (0.04) | $ (0.04) | $ — | $ (0.01) | $ 0.18 | $ 0.14 |
| Diluted earnings per share | $ 0.05 | $ (0.04) | $ (0.04) | $ — | $ (0.01) | $ 0.18 | $ 0.14 |
| **Shares used in per share calculations:** | | | | | | | |
| Basic | 67,124 | | | | | | 67,124 |
| Diluted | 68,800 | — | — | — | — | — | 68,800 |

7

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

EXHIBIT E
50

Table of Contents

| | Previously Reported | Revenue — Timing Adjustments | Other — Revenue Adjustments | Reclassification Adjustments (Unaudited) | Other Adjustments | Income Tax Adjustments | As Restated |
|---|---|---|---|---|---|---|---|
| **Revenues:** | | | | | | | |
| Service revenues | $ 677,021 | $ (5,018) | $ (6,098) | $ 3,039 | $ — | $ — | $ 668,944 |
| Equipment revenues | 105,610 | (554) | — | 17,339 | — | — | 122,395 |
| Total revenues | 782,631 | (5,572) | (6,098) | 20,378 | — | — | 791,339 |
| **Operating expenses:** | | | | | | | |
| Cost of service (exclusive of items shown separately below) | (180,571) | — | — | (546) | 118 | — | (180,999) |
| Cost of equipment | (193,534) | — | — | (19,832) | (117) | — | (213,483) |
| Selling and marketing | (95,421) | — | — | — | (359) | — | (95,780) |
| General and administrative | (131,570) | — | — | — | (71) | — | (131,641) |
| Depreciation and amortization | (141,215) | — | — | — | — | — | (141,215) |
| Total operating expenses | (742,311) | — | — | (20,378) | (429) | — | (763,118) |
| Net gain on sale of wireless licenses and disposal of operating assets | 940 | — | — | — | — | — | 940 |
| Operating income | 41,260 | (5,572) | (6,098) | — | (429) | — | 29,161 |
| Minority interests in consolidated subsidiaries | 2,172 | — | — | — | 80 | — | 2,252 |
| Interest income | 12,419 | — | — | — | — | — | 12,419 |
| Interest expense | (53,586) | — | — | — | — | — | (53,586) |
| Other expense, net | (637) | — | — | — | — | — | (637) |
| Income (loss) before income taxes | 1,628 | (5,572) | (6,098) | — | (349) | — | (10,391) |
| Income tax expense | (6,504) | — | — | — | — | 2,309 | (4,195) |
| Net loss | $ (4,876) | $ (5,572) | $ (6,098) | $ — | $ (349) | $ 2,309 | $ (14,586) |
| **Basic and diluted loss per share:** | | | | | | | |
| Basic loss per share | $ (0.07) | $ (0.08) | $ (0.09) | $ — | $ (0.01) | $ 0.03 | $ (0.22) |
| Diluted loss per share | $ (0.07) | $ (0.08) | $ (0.09) | $ — | $ (0.01) | $ 0.03 | $ (0.22) |
| **Shares used in per share calculations:** | | | | | | | |
| Basic | 66,998 | — | — | — | — | — | 66,998 |
| Diluted | 66,998 | — | — | — | — | — | 66,998 |

Six Months Ended June 30, 2007

8

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

EXHIBIT E
51

Table of Contents

| | Six Months Ended June 30, 2007 | | |
| | Previously Reported | Adjustments (Unaudited) | As Restated |
|---|---|---|---|
| Operating activities: | | | |
|     Net cash provided by operating activities | $ 106,159 | $ 2,636 | $ 108,795 |
| Investing activities: | | | |
| Purchases of property and equipment | (237,908) | (1,505) | (239,413) |
| Change in prepayments for purchases of property and equipment | 11,187 | — | 11,187 |
| Purchases of and deposits for wireless licenses and spectrum clearing costs | (2,361) | — | (2,361) |
| Proceeds from sale of wireless licenses and operating assets | 9,500 | — | 9,500 |
| Purchases of investments | (380,743) | — | (380,743) |
| Sales and maturities of investments | 91,360 | — | 91,360 |
| Purchase of minority interest | (4,706) | — | (4,706) |
| Purchase of membership units | (13,182) | — | (13,182) |
| Changes in restricted cash, cash equivalents and short-term investments, net | 834 | | 834 |
|     Net cash used in investing activities | (526,019) | (1,505) | (527,524) |
| Financing activities: | | | |
| Proceeds from long-term debt | 370,480 | — | 370,480 |
| Repayment of long-term debt | (4,500) | — | (4,500) |
| Payment of debt issuance costs | (1,319) | — | (1,319) |
| Proceeds from issuance of common stock, net | 7,588 | — | 7,588 |
|     Net cash provided by financing activities | 372,249 | — | 372,249 |
| Net decrease in cash and cash equivalents | (47,611) | 1,131 | (46,480) |
| Cash and cash equivalents at beginning of period | 374,939 | (2,127) | 372,812 |
| Cash and cash equivalents at end of period | $ 327,328 | $ (996) | $ 326,332 |
| Supplementary cash flow information: | | | |
| Cash paid for interest | $ 72,295 | $ — | $ 72,295 |
| Cash paid for income taxes | $ 341 | $ — | $ 341 |

9

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

EXHIBIT E
52

Table of Contents

markets, including related capitalized interest, (ii) expansion and improvement of our and their existing wireless networks, and (iii) expenditures for 1xEV-DO technology.

We currently expect to invest between $280 million and $320 million in capital expenditures for our existing business, the costs associated with our launched markets to date, and our EvDO network upgrade. In addition, we expect to invest between $200 million and $250 million in capital expenditures to support our planned coverage expansion, Auction #66 market development and development and new higher-speed data products. Therefore, total 2007 capital expenditures are expected to be between $480 million and $570 million, including capitalized interest.

We and Denali License have begun building out our #Auction 66 markets and expect to launch a significant number of those markets in 2008 and 2009.

*Other Acquisitions and Dispositions*

In January 2007, we completed the sale of three wireless licenses that we were not using to offer commercial service for an aggregate sales price of $9.5 million, resulting in a net gain of $1.3 million. There were no significant acquisitions or dispositions during the three months ended June 30, 2007.

On June 22, 2007, we purchased approximately 20% of the outstanding membership units of a regional wireless service provider for an aggregate purchase price of $13.2 million. We use the equity method to account for our investment. Our equity in net earnings or losses are recorded two months in arrears to facilitate the timely inclusion of such equity in net earnings or losses in our condensed consolidated financial statements.

**Off-Balance Sheet Arrangements**

We had no material off-balance sheet arrangements during the six months ended June 30, 2007.

**Recent Accounting Pronouncements**

In September 2006, the FASB issued SFAS No. 157, "Fair Value Measurements", or SFAS 157, which defines fair value, establishes a framework for measuring fair value in accounting principles generally accepted in the United States of America and expands disclosure about fair value measurements. We will be required to adopt SFAS 157 in the first quarter of 2008. We are currently evaluating what impact, if any, SFAS 157 will have on our consolidated financial statements.

In February 2007, the FASB issued SFAS No. 159, "The Fair Value Option for Financial Assets and Financial Liabilities Including an Amendment of FASB Statement No. 115", or SFAS 159, which permits all entities to choose, at specified election dates, to measure eligible items at fair value and establishes presentation and disclosure requirements designed to facilitate comparisons between entities that choose different measurement attributes for similar types of assets and liabilities. We will be required to adopt SFAS 159 in the first quarter of 2008. We are currently evaluating what impact, if any, SFAS 159 will have on our consolidated financial statements.

**Item 4.   Controls and Procedures.**

**(a) Evaluation of Disclosure Controls and Procedures**

We maintain disclosure controls and procedures that are designed to ensure that information required to be disclosed in our Exchange Act reports is recorded, processed, summarized and reported within the time periods specified by the SEC and that such information is accumulated and communicated to management, including our chief executive officer, or CEO, and chief financial officer, or CFO, as appropriate, to allow for timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives, and management is required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures.

Management, with participation by our CEO and CFO, has designed our disclosure controls and procedures to provide reasonable assurance of achieving desired objectives. As of the date of filing this amended Quarterly Report on Form 10-Q/A, our CEO, S. Douglas Hutcheson, is also serving as acting CFO. As required by SEC Rule 13a-15(b), in connection with filing this amended Quarterly Report on Form 10-Q/A, management conducted an evaluation, with the participation of our CEO and our CFO, of the effectiveness of the design and operation of our disclosure controls and procedures, as such term is defined under Rule 13a-15(e) promulgated

50

Table of Contents

under the Exchange Act, as of June 30, 2007, the end of the period covered by this report. Based upon that evaluation, our CEO and CFO concluded that a material weakness existed in our internal control over financial reporting as of June 30, 2007. As a result of this material weakness, our CEO and CFO concluded that our disclosure controls and procedures were not effective at the reasonable assurance level as of June 30, 2007.

Management had previously concluded that the Company maintained effective internal control over financial reporting as of December 31, 2006. In connection with the restatement discussed under the heading "Restatement of Previously Reported Consolidated Financial Statements" in Note 2 to the consolidated financial statements, management determined that the material weakness discussed below existed as of December 31, 2006. Accordingly, management has now concluded that our internal control over financial reporting was not effective as of December 31, 2006.

In light of the material weakness referred to above, the Company performed additional analyses and procedures in order to conclude that its consolidated financial statements included in this amended Quarterly Report on Form 10-Q/A are fairly presented, in all material respects, in accordance with generally accepted accounting principles in the United States of America.

The material weakness we have identified in our internal control over financial reporting is as follows:

There were deficiencies in our internal controls over the existence, completeness and accuracy of revenues, cost of revenues and deferred revenues. Specifically, the design of controls over the preparation and review of the account reconciliations and analysis of revenues, cost of revenues and deferred revenues did not detect the errors in revenues, cost of revenues and deferred revenues. A contributing factor was the ineffective operation of our user acceptance testing (i.e., ineffective testing) of changes made to our revenue and billing systems in connection with the introduction or modification of service offerings. This material weakness resulted in the accounting errors which have caused us to restate our consolidated financial statements as of and for the years ended December 31, 2006 and 2005 (including interim periods therein), for the period from August 1, 2004 to December 31, 2004 and for the period from January 1, 2004 to July 31, 2004, and our condensed consolidated financial statements as of and for the quarterly periods ended June 30, 2007 and March 31, 2007. In addition, this material weakness could result in a misstatement of revenues, cost of revenues and deferred revenues that would result in a material misstatement to the Company's interim or annual consolidated financial statements that would not be prevented or detected on a timely basis.

**(b) Management's Remediation Initiatives**

We have taken and are taking the following actions to remediate the material weakness described above:

- We performed a detailed review of our billing and revenue systems, and processes for recording revenue. We are implementing stronger account reconciliations and analyses surrounding our revenue recording processes which are designed to detect any material errors in the completeness and accuracy of the underlying data.

- We intend to design and implement automated enhancements to our billing and revenue systems to reduce the need for manual processes and estimates and thereby streamline the processes for ensuring revenue is recorded only when payment is received and services are provided.

- We intend to further improve our user acceptance testing related to system changes by ensuring the user acceptance testing encompasses a complete population of scenarios of possible customer activity.

The Audit Committee has directed management to develop and present to the Committee a plan and timetable for the implementation of the remediation measures described above (to the extent not already implemented), and the Committee intends to monitor such implementation. We believe that the actions described above will remediate the material weakness we have identified and strengthen our control over financial reporting. As we improve our internal control over financial reporting and implement remediation measures, we may determine to supplement or modify the remediation measures described above.

**(c) Changes in Internal Control over Financial Reporting**

There were no changes in our internal control over financial reporting during our fiscal quarter ended June 30, 2007 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

51

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

Table of Contents

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

LEAP WIRELESS INTERNATIONAL, INC.

By:
/s/  S. DOUGLAS HUTCHESON
_____

S. Douglas Hutcheson
Chief Executive Officer, President
and Acting Chief Financial Officer

Date: December 26, 2007

70

Source: LEAP WIRELESS INTERN, 10-Q/A, December 26, 2007

EXHIBIT E
55

# EXHIBIT F



# FORM 4

## LEAP WIRELESS INTERNATIONAL INC - LEAP

**Filed: March 01, 2007 (period: February 27, 2007)**

Statement of changes in beneficial ownership of securities

FORM 4

Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue.
*See* Instruction 1(b).

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding
Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | February 28, 2011 |
| Estimated average burden | |
| hours per response | 0.5 |

| 1. Name and Address of Reporting Person* HUTCHESON STEWART D | 2. Issuer Name and Ticker or Trading Symbol LEAP WIRELESS INTERNATIONAL INC [LEAP] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

(Last)          (First)          (Middle)
10307 PACIFIC CENTER COURT

3. Date of Earliest Transaction (Month/Day/Year)
02/27/2007

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)
X   Director                    10% Owner
X   Officer (give title         Other (specify
    below)                      below)
              CEO & President

(Street)
SAN DIEGO      CA          92121

(City)         (State)          (Zip)

4. If Amendment, Date of Original Filed (Month/Day/Year)

6. Individual or Joint/Group Filing (Check
Applicable Line)
X   Form filed by One Reporting Person
    Form filed by More than One Reporting
    Person

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 02/27/2007 | 02/28/2007 | S[1] | | 625 | D | $ 67.3173 | 130,198 | D | |
| Common Stock | 02/27/2007 | 02/28/2007 | S[1] | | 6,277 | D | $ 67.3173 | 123,921 | D | |

Source: LEAP WIRELESS INTERN, 4, March 01, 2007

EXHIBIT F
57

| Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities) | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. The sales reported in this Form 4 were effected pursuant to a Rule 10b5-1 trading plan adopted by the reporting person on December 13, 2006.

By: Robert J. Irving, Jr.,
Attorney-in-Fact For: Stewart Douglas     03/01/2007
Hutcheson

** Signature of Reporting Person          Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4(b)(v).

\** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

Created by 10KWizard     www.10KWizard.com

Source: LEAP WIRELESS INTERN, 4, March 01, 2007

EXHIBIT F
58

# EXHIBIT G



# FORM 4

## LEAP WIRELESS INTERNATIONAL INC - LEAP

**Filed: May 24, 2007 (period: May 23, 2007)**

Statement of changes in beneficial ownership of securities

FORM 4

Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue.
*See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding
Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | February 28, 2011 |
| Estimated average burden | |
| hours per response | 0.5 |

| 1. Name and Address of Reporting Person* HUTCHESON STEWART D | 2. Issuer Name and Ticker or Trading Symbol LEAP WIRELESS INTERNATIONAL INC [LEAP] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|

1. Name and Address of Reporting Person*
HUTCHESON STEWART D

(Last)        (First)        (Middle)
10307 PACIFIC CENTER COURT

(Street)
SAN DIEGO        CA        92121

(City)        (State)        (Zip)

2. Issuer Name and Ticker or Trading Symbol
LEAP WIRELESS INTERNATIONAL INC [LEAP]

3. Date of Earliest Transaction (Month/Day/Year)
05/23/2007

4. If Amendment, Date of Original Filed (Month/Day/Year)

5. Relationship of Reporting Person(s) to Issuer
(Check all applicable)
X  Director                          10% Owner
X  Officer (give title           Other (specify
   below)                            below)
          CEO & President

6. Individual or Joint/Group Filing (Check
Applicable Line)
X  Form filed by One Reporting Person
   Form filed by More than One Reporting
   Person

| Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 05/23/2007 | | M | | 17,021 | A | $ 26.55 | 140,942 | D | |
| Common Stock | 05/23/2007 | | S | | 17,021 | D | $ 85.6096 | 123,921 | D | |

Source: LEAP WIRELESS INTERN, 4, May 24, 2007

EXHIBIT G
60

| Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities) | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) | | | |
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | | | | |
| Non-Qualified Stock Option (right to buy) | $ 26.55 | 05/23/2007 | | M | | | 17,021 | (1) | 01/05/2015 | Common Stock | 17,021 | $ 0 | 68,085 | D | | | | |

**Explanation of Responses:**

1. The option vests as to all the shares on January 5, 2008. The option is subject to acceleration of vesting of up to 30% of the total shares covered by the option in each of 2006 and 2007 upon the Company's announcement of its financial results for the previous fiscal year, if the Company meets certain performance goals in such previous fiscal year. The minimum vesting on the date of the financial results are reported for 2006 is 20% of the total shares covered by the Option.

By: Robert J. Irving, Jr.,
Attorney-in-Fact For: Stewart Douglas    05/24/2007
Hutcheson

** Signature of Reporting Person    Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

Created by 10KWizard    www.10KWizard.com

Source: LEAP WIRELESS INTERN, 4, May 24, 2007

EXHIBIT G
61

# EXHIBIT H



# FORM 4

## LEAP WIRELESS INTERNATIONAL INC - LEAP

**Filed: June 06, 2007 (period: June 06, 2007)**

Statement of changes in beneficial ownership of securities

FORM 4

Check this box if no longer
subject to Section 16. Form 4 or
Form 5 obligations may continue.
*See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a) of the Public Utility Holding
Company Act of 1935 or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Expires: | February 28, 2011 |
| Estimated average burden hours per response | 0.5 |

| 1. Name and Address of Reporting Person* <br> TARGOFF MICHAEL B <br><br> (Last)  (First)  (Middle) <br> 10307 PACIFIC CENTER COURT <br><br> (Street) <br> SAN DIEGO   CA   92121 <br> (City)  (State)  (Zip) | 2. Issuer Name and Ticker or Trading Symbol <br> LEAP WIRELESS INTERNATIONAL INC [LEAP] | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br> X  Director     10% Owner <br>  Officer (give title below)   Other (specify below) |
|---|---|---|
| | 3. Date of Earliest Transaction (Month/Day/Year) <br> 06/06/2007 | |
| | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X  Form filed by One Reporting Person <br>  Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1.Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 06/06/2007 | | M | | 5,000 | A | $ 26.51 | 8,474 | D | |
| Common Stock | 06/06/2007 | | M | | 30,000 | A | $ 26.51 | 38,474 | D | |
| Common Stock | 06/06/2007 | | S | | 35,000 | D | $ 83.5226 | 3,474 | D | |

Source: LEAP WIRELESS INTERN, 4, June 06, 2007

EXHIBIT H
63

| Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned (e.g., puts, calls, warrants, options, convertible securities) | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4, and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Underlying Securities (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of Derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |
| Non-Qualified Stock Option (right to buy) | $ 26.51 | 06/06/2007 | | M | | | 5,000 | (1) | 03/11/2015 | Common Stock | 5,000 | $ 0 | 34,500 | D | |
| Non-Qualified Stock Option (right to buy) | $ 26.51 | 06/06/2007 | | M | | | 30,000 | (2) | 03/11/2015 | Common Stock | 30,000 | $ 0 | 4,500 | D | |

**Explanation of Responses:**

1. The option vests in three equal installments on January 1, 2006, January 1, 2007 and January 1, 2008, respectively.

2. The option vests in three equal installments on March 11, 2005, January 1, 2006 and January 1, 2007, respectively.

By: Robert J. Irving, Jr.
Attorney-in-Fact For: Michael B.     06/06/2007
Targoff

\** Signature of Reporting Person     Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, see Instruction 4(b)(v).

\** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

Created by 10KWizard   www.10KWizard.com

Source: LEAP WIRELESS INTERN, 4, June 06, 2007

EXHIBIT H
64