1  KEITH E. EGGLETON, State Bar No.159842
   Email:  keggleton@wsgr.com
2  DIANE M. WALTERS, State Bar No. 148136
   Email:  dwalters@wsgr.com
3  L. DAVID NEFOUSE, State Bar No. 243417
   Email:  dnefouse@wsgr.com
4  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
5  650 Page Mill Road
   Palo Alto, California  94304-1050
6  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
7

8  Attorneys for Defendants
   S. Douglas Hutcheson, Amin Khalifa,
9  Grant Burton, Dean M. Luvisa, Michael
   B. Targoff, John D. Harkey, Jr., Robert V.
10 Lapenta, Mark H. Rachesky, M.D. and
   James D. Dondero

11

12                   UNITED STATES DISTRICT COURT

13               SOUTHERN DISTRICT OF CALIFORNIA

14

15 CHARLES GRAHAM, Derivatively on Behalf of  )   CASE NO.:  08-CV-0246-L-NLS
   Nominal Defendant LEAP WIRELESS,           )
16 INTERNATIONAL, INC.,                        )   **MEMORANDUM OF POINTS AND**
                                              )   **AUTHORITIES IN SUPPORT OF**
17            Plaintiff,                       )   **INDIVIDUAL DEFENDANTS'**
                                              )   **MOTION TO DISMISS**
18       v.                                    )   **PLAINTIFF'S VERIFIED**
                                              )   **SHAREHOLDER DERIVATIVE**
19 S. DOUGLAS HUTCHESON, AMIN                 )   **COMPLAINT**
   KHALIFA, GRANT BURTON, DEAN M.             )
20 LUVISA, MICHAEL B. TARGOFF, JOHN D.        )
   HARKEY, JR., ROBERT V. LAPENTA, MARK       )
21 H. RACHESKY, M.D., and JAMES D.            )   Date:     August 4, 2008
   DONDERO,                                    )   Time:     10:30 a.m.
22                                             )   Dept:     14
              Defendants,                      )   Before:  The Hon. M. James Lorenz
23 and                                         )
                                              )
24 LEAP WIRELESS INTERNATIONAL, INC.,         )
                                              )
25            Nominal Defendant.              )
                                              )
26 _____ )

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND SUMMARY OF ALLEGATIONS ....................................................... 3

     A.    The Individual Defendants ................................................................... 3

     B.    The Restatement ................................................................................. 4

     C.    Procedural History ............................................................................. 4

     D.    Summary of Allegations ..................................................................... 5

ARGUMENT ...................................................................................................................... 5

I.     APPLICABLE LEGAL STANDARDS .......................................................... 5

     A.    Section 10(b)/Rule 10b-5 Claim ........................................................ 5

     B.    State Law Claims ............................................................................... 7

II.    PLAINTIFF FAILS TO ALLEGE SUFFICIENTLY THAT HE HAS STANDING ........ 7

III.   PLAINTIFF'S SECTION 10(b) CLAIM SHOULD BE DISMISSED ............................. 8

     A.    Plaintiff's Complaint Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter as to Any Defendant .................... 8

          1.    The Mere Fact that a Financial Restatement Occurred Does Not Give Rise to a Strong Inference of Scienter. ................................ 9

          2.    The Complaint Fails to Plead Particularized Facts Demonstrating Each Defendant's Awareness of Alleged Accounting Improprieties ........ 10

               a.    Conclusory Allegations Regarding the Positions Held by the Individual Defendants Are Insufficient to Give Rise to a Strong Inference of Scienter ................................................ 11

               b.    Conclusory Allegations Regarding Receipt of Unidentified Reports and Attendance at Meetings Are Insufficient to Give Rise to a Strong Inference of Scienter .......................... 12

               c.    Plaintiff's Allegations Regarding Signatures on SEC Filings Do Not Give Rise to a Strong Inference of Scienter. ............ 13

          3.    Plaintiff's Stock Sale Allegations Fail to Provide the Missing Inference of Scienter. ...................................................... 14

          4.    The Defendants' Actions and Disclosures During the Relevant Period Negate an Inference of Scienter. ...................................... 17

IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF
        FIDUCIARY DUTY UNDER DELAWARE LAW.......................................................18

        A.      Plaintiff's Allegations Fail to Provide the Requisite Level of Particularity
                under Federal Rule of Civil Procedure 9(b)........................................................19

                1.      Plaintiff Fails to State a Claim Against Outside Director Defendants
                        Rachesky and Dondero..............................................................................20

                2.      Plaintiff Fails to State a Claim Against the Audit Committee
                        Defendants................................................................................................21

                3.      Plaintiff Fails to State a Claim Against the Officer Defendants. ..............22

        B.      Plaintiff's Allegations Are Insufficient to State a *Caremark* Claim ....................22

V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT .....24

CONCLUSION .........................................................................................................................25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................ 15

5

*Alaska Elec. Pension Fund v. Adecco, S.A.*, 434 F. Supp. 2d 815 (S.D. Cal. 2006),
    *aff'd*, 256 Fed. Appx. 74 (9th Cir. 2007)............................................................ 10, 12, 15,

6

16

7

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1994),
    *modified in part on reargument*, 636 A.2d 956 (Del. 1994) ............................. 17

8

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932

9

    (S.D. Ind. 2005)........................................................................................... 16

10

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ........................ 9

11

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) .................................................... 5

12

*Fitzgerald, L.P. v. Cantor*, No. C.A. 16297, 1998 WL 326686
    (Del. Ch. June 16, 1998) .................................................................... 24

13

*Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060 (Del. 1988) ................................. 24, 25

14

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ............................................ 20, 22, 24

15

*Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007) ................................... 17

16

*In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695

17

    (N.D. Tex. 2007) ........................................................................... 13

18

*In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137 (3d Cir. 2004) ................................... 9, 15

19

*In re BearingPoint, Inc. Sec. Litig.*,  525 F. Supp. 2d 759 (E.D. Va. 2007) ................................. 17

20

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996)............... 19, 22, 23, 24

21

*In re Coca-Cola Enters., Inc. Derivative Litig.*, 478 F. Supp. 2d 1369
    (N.D. Ga. 2007), *aff'd sub nom. Staehr v. Alm*, No. 07-11653,

22

    2008 WL 657865 (11th Cir. Mar. 13, 2008) ........................................................ 23

23

*In re Computer Scis. Corp. Derivative Litig.*, No. CV 06-05288, 2007 WL 1321715

24

    (C.D. Cal. Mar. 26, 2007) ........................................................................ 7

25

*In re Cyberonics Sec. Litig.*, 523 F. Supp. 2d 547 (S.D. Tex. 2007) ........................................... 14

26

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............. 11, 12, 13

27

*In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX, 2006 WL 1836181
    (D. Ariz. July 5, 2006)........................................................................ 9, 14

28

MEMO. OF POINTS AND AUTHORITIES IN
SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
TO DISMISS, CASE NO. 08-CV-0246-L-NLS

*In re MIPS Techs., Inc. Derivative Litig.*, 542 F. Supp. 2d 968 (N.D. Cal. 2008) ....................... 21

*In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d 982 (S.D. Cal. 2002) ......................... 11, 16

*In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181 (N.D. Cal. 2000), *aff'd*,
    335 F.3d 843 (9th Cir. 2003) ................................................................................... 16

*In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843 (9th Cir. 2003) .................................... 11

*In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. 2003) ........... 7, 18, 19

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ...................................... 6, 12

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) .......................................... 9, 10, 12

*In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............. 8, 9, 10, 11

*Lewis v. Chiles*, 719 F.2d 1044 (9th Cir. 1983) ................................................................. 7

*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) ....................................... 16

*Morgan v. AXT, Inc.*, No. C-04-4362, 2005 WL 2347125
    (N.D. Cal. Sept. 23, 2005) ..................................................................................... 14

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ........................................................... 6

*Rattner v. Bizos*, No. Civ.A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ....................... 23

*Ronconi v. Larson*, 253 F.3d 423 (9th Cir. 2001) ............................................................ 15

*Rudolph v. UTStarcom*, No. C 07-04578, 2008 WL 1734763
    (N.D. Cal. Apr. 14, 2008) ...................................................................................... 14

*Sachs v. Sprague*, 401 F. Supp. 2d 159 (D. Mass. 2005) ............................................... 18

*Scimeca v. Kim*, No. CV 06-0562-PHX, slip op. (D. Ariz. Aug. 28, 2007) .................................... 8

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) ...................................................... 20

*Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006) .............................. 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ........................................... 6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ....................................... 7, 18, 19

**STATUTES**

15 U.S.C. § 78j(b) ....................................................................................................... 6

15 U.S.C. § 78u-4(b) ................................................................................................... 6

15 U.S.C. § 78u-4(b)(2) ........................................................................................ 6, 8, 11

15 U.S.C. § 78u-4(b)(3)(A) .......................................................................................... 6

Del. Code Ann. tit. 8, § 102(b)(7) ................................................................ 18

Del. Code Ann. tit. 8, § 327 ...................................................................... 7

**RULES**

17 C.F.R. § 240.10b-5 ............................................................................ 6

Fed. R. of Civ. P. 9(b) ...................................................................... *passim*

Fed. R. Civ. P. 23.1 ............................................................................. 7

1    Defendants S. Douglas Hutcheson, Amin Khalifa, Grant Burton, Dean M. Luvisa,

2  Michael B. Targoff, John D. Harkey, Jr., Robert V. Lapenta, Mark H. Rachesky, M.D., and

3  James D. Dondero (collectively, the "Individual Defendants") respectfully submit this

4  Memorandum of Points and Authorities in Support of Individual Defendants' Motion to Dismiss

5  Plaintiff's Verified Shareholder Derivative Complaint.  The Individual Defendants also join the

6  motion made by Nominal Defendant Leap Wireless International, Inc. ("Leap" or the

7  "Company") to dismiss the Complaint for failure to plead compliance with pre-suit demand

8  requirements.

9    **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

10    **INTRODUCTION**

11    In this shareholder derivative complaint, plaintiff seeks to assert both federal and state

12  law claims against the Individual Defendants, who are current and former officers and directors

13  of Leap.  The Court need not, however, reach these claims.  As demonstrated in the motion to

14  dismiss filed by Nominal Defendant Leap, plaintiff does not have standing to sue the Individual

15  Defendants on behalf of the Company because plaintiff has failed to:  (1) make a pre-suit

16  demand on the Company's Board of Directors, or (2) plead sufficient facts demonstrating that

17  such a demand would have been futile, and thus excused.  *See* Nominal Defendant Leap Wireless

18  International, Inc.'s Motion to Dismiss Derivative Complaint and Memorandum of Points &

19  Authorities in support thereof.  If the Court grants Leap's motion to dismiss, it need not consider

20  the arguments made by the Individual Defendants in the instant motion.  If the Court denies

21  Leap's motion, however, plaintiff's Verified Shareholder Derivative Complaint (the

22  "Complaint") should be dismissed for failure to plead facts sufficient to state a cognizable claim

23  under either federal or state law.

24    Plaintiff's skeletal complaint is based on little more than the announcement by the

25  Company of a financial restatement in late 2007.  On November 9, 2007, Leap announced that it

26  would be restating certain of its prior financial statements due to accounting errors.  Despite the

27  fact that the press release announcing the restatement clearly stated that an internal review had

28  found no misconduct by Company personnel in connection with the accounting errors, several

1

1  class action and derivative complaints, including this action, were filed against the Company and

2  certain of the Company's officers and directors following the November 9, 2007 announcement.

3       In the Complaint, plaintiff generally alleges that the Company's restatement was due to

4  fraud and asserts both federal and state law claims against nine current and former officers and

5  directors of Leap.  For the reasons set forth below, plaintiff's conclusory allegations of securities

6  fraud and breaches of fiduciary duty fail to withstand the exacting pleading requirements

7  imposed by Federal Rule of Civil Procedure 9(b), the Private Securities Litigation Reform Act of

8  1995 (the "Reform Act") and Delaware law.

9       *First*, plaintiff's Section 10(b)/Rule 10b-5 claim should be dismissed for failure to plead

10  any facts, much less particularized facts, giving rise to a strong inference that the Individual

11  Defendants acted with scienter – an essential element of a Section 10(b) claim.  In lieu of

12  pleading particularized facts regarding each Individual Defendant's alleged misconduct, plaintiff

13  instead simply attempts to equate the fact that a restatement occurred with securities fraud.

14  Courts routinely have held, however, that the mere fact that a financial restatement occurred,

15  without more, does not give rise to a strong inference that any defendant acted with intent to

16  defraud.  Plaintiff's failure to plead *any* facts suggesting that the Individual Defendants were

17  aware of the alleged accounting errors at the time the financial statements were issued is fatal to

18  plaintiff's Section 10(b) claim.

19       *Second*, the same lack of specificity that derails plaintiff's Section 10(b) claim is also

20  fatal to plaintiff's breach of fiduciary duty claim.  In the Complaint, plaintiff attempts to plead

21  both knowing misconduct and failure to exercise proper oversight in support of his breach of

22  fiduciary duty claim.  Plaintiff's allegations are deficient under both theories of liability:

23  (1) plaintiff's conclusory allegations regarding "knowing" dissemination of false financial

24  statements fail to withstand the heightened pleading requirements of Rule 9(b), and (2) plaintiff's

25  factually unsupported allegations regarding the Individual Defendants' purported failure to

26  exercise proper oversight fail to satisfy the necessary conditions for such a claim, known more

27  commonly as a *Caremark* claim.

28       *Finally*, plaintiff's claim for unjust enrichment also fails.  Plaintiff fails to plead facts

1  demonstrating how any of the Individual Defendants was enriched at the expense of the

2  Company or specifying how any alleged enrichment was unjust as required by Delaware law.

3       For the foregoing reasons and as more fully set forth below, the Individual Defendants

4  respectfully request that the Court dismiss plaintiff's Complaint in its entirety.

5  **BACKGROUND AND SUMMARY OF ALLEGATIONS**

6       **A.**     **The Individual Defendants**

7       The Individual Defendants include both current and former officers and directors of

8  Leap.

9       *The Officer Defendants*

10       Plaintiff alleges that the Individual Defendants have served in the following positions,

11  among others, at Leap:  S. Douglas Hutcheson has served as President and Chief Executive

12  Officer ("CEO") since February 2005 (Complaint ¶ 9); Amin Khalifa served as Chief Financial

13  Officer ("CFO") and Executive Vice President from July 25, 2006 until September 2007 (*id.*

14  ¶ 11); Grant Burton served as Vice President, Chief Accounting Officer and Controller (*id.* ¶ 12);

15  Dean M. Luvisa served as acting CFO and Vice President of Finance from March 2006 through

16  July 2006, acting CFO, Vice President of Finance and Treasurer from February 2005 to March

17  2006, and Vice President of Finance and Treasurer from May 2002 to February 2005 (*id.* ¶ 13).

18       *The Director Defendants*

19       The Director Defendants identified in plaintiff's Complaint include Michael B. Targoff,

20  John D. Harkey, Jr., Robert V. LaPenta, Mark H. Rachesky, M.D, James D. Dondero, and S.

21  Douglas Hutcheson.  *Id.* ¶¶ 9, 16-22.  Plaintiff alleges that Mr. Targoff has served as a member

22  of the Board of Directors of Leap since 1998 (*id.* ¶ 16), Mr. Harkey has served as a director since

23  March 2005 (*id.* ¶ 18), Mr. LaPenta has served as a director since March 2005 (*id.* ¶ 19), Mr.

24  Hutcheson has served as a director since February 2005 (*id.* ¶ 9), and Dr. Rachesky has served as

25  a director "at all relevant times" (*id.* ¶ 21).  Plaintiff alleges that James D. Dondero joined Leap's

26  Board in 2004 and served on the Board until September 2007.  *Id.* ¶ 22.

27

28

1      **B.      The Restatement**

2          On November 9, 2007, Leap announced that it would restate its financial statements for

3  the years 2004-2006, as well as its condensed consolidated financial statements for the first two

4  quarters of 2007.  Complaint ¶¶ 2-3, 56.  The November 9, 2007 press release stated that the

5  purpose of the restatement was to correct errors in previously reported service revenues,

6  equipment revenues, and operating expenses.  *Id.* ¶ 56.  The press release further stated that

7  "[t]he restatements are the result of an internal review of the Company's service revenue activity

8  and forecasting process that was initiated by management in September 2007 and are not

9  attributable to any misconduct by Company employees."[1]

10         On December 14, 2007, the Company filed with the Securities and Exchange

11  Commission ("SEC") its Form 10-Q for the quarterly period ended September 30, 2007.  *Id.*

12  ¶ 61.  The Form 10-Q included the unaudited effects of the restated financial information for the

13  affected periods and explained the nature of the errors.  *Id.*

14         On December 26, 2007, the Company filed with the SEC an amended Form 10-K for the

15  fiscal year ended December 31, 2006, which incorporated the restated financial information.  *Id.*

16  ¶ 62.  The Form 10-K explained that the financial statements had been "restated to correct errors

17  relating to (i) the timing of recognition of certain service revenues prior to or subsequent to the

18  period in which they were earned, (ii) the recognition of service revenues for certain customers

19  that voluntarily disconnected service and (iii) the classification of certain components of service

20  revenues, equipment revenues and operating expenses."  *Id.*

21      **C.      Procedural History**

22         Between November 27, 2007 and January 23, 2008, four securities class action

23  complaints were filed against Leap and several of its current and former officers and directors.

24  Two of the class action complaints subsequently were voluntarily dismissed, and the remaining

25  two actions were consolidated on May 23, 2008.

26  _____

27      [1] . *See* Declaration of Diane M. Walters in Support of Individual Defendants' Motion to
    Dismiss ("Walters Decl."), Exhibit ("Ex.") A.

28

MEMO. OF POINTS AND AUTHORITIES IN
                    SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                    TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1    Plaintiff initially filed his derivative complaint in San Diego County Superior Court on

2  January 9, 2008.  *Graham v. Hutcheson, et al.*, Case No. 37-2008-00075341-CU-MC-CTL.[2]

3  Plaintiff voluntarily dismissed that action and re-filed in this Court on February 7, 2008.

4    **D.    Summary of Allegations**

5    The gravamen of plaintiff's Complaint is that nine current and former officers and

6  directors knowingly issued false financial statements over the course of nearly four years to

7  allow certain officers and/or directors to sell shares of Leap stock at artificially inflated prices.

8  Plaintiff asserts three claims under federal and state law:  (1) a claim for alleged violations of

9  Section 10(b)/Rule 10b-5 against all of the Individual Defendants; (2) a claim for breach of

10  fiduciary duty against all of the Individual Defendants; and (3) a claim for unjust enrichment

11  against defendants Hutcheson, Targoff, Dondero and Luvisa.

12    Plaintiff alleges that the Individual Defendants breached their fiduciary duties and

13  violated Section 10(b)/Rule 10b-5 by "knowingly making false and misleading statements" and

14  failing to disclose material information about Leap and its business.  Complaint ¶ 2.  In

15  particular, plaintiff alleges that the "Individual Defendants, especially the Audit Committee,

16  knew that they were not properly accounting for the Company's service revenues, equipment

17  revenues, and operating expenses under Generally Accepted Accounting Principles ('GAAP')."

18  *Id.*  Plaintiff further alleges that the Individual Defendants sold shares of Leap stock "[b]ased on

19  their knowledge of material non-public information regarding their misconduct."  *Id.* ¶ 4.

20                                  **ARGUMENT**

21  **I.    APPLICABLE LEGAL STANDARDS**

22    **A.    Section 10(b)/Rule 10b-5 Claim**

23    Section 10(b) of the Securities Exchange Act of 1934 prohibits "(1) the 'use or

24  employ[ment] ... of any ... deceptive device,' (2) 'in connection with the purchase or sale of any

25  security,' and (3) 'in contravention of' Securities and Exchange Commission 'rules and

26

27        [2] Another shareholder derivative complaint is pending in San Diego County Superior Court.
     *See McBride v. Hutcheson, et al.*, Case No. 37-2007-00081584-CU-MC-CTL.

28

MEMO. OF POINTS AND AUTHORITIES IN
                                      SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                                      TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1  regulations.'"  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citing 15 U.S.C.

2  § 78j(b)).  SEC Rule 10b-5 prohibits, among other things, "any device, scheme, or artifice to

3  defraud," material misrepresentations and omissions, or "any act, practice, or course of business

4  which operates . . . as a fraud or deceit upon any person."  17 C.F.R. § 240.10b-5.  Claims asserted

5  under Section 10(b)/Rule 10b-5 must satisfy both the rigorous pleading requirements of Federal

6  Rule of Civil Procedure 9(b) and the heightened pleading requirements of the Private Securities

7  Litigation Reform Act of 1995 (the "Reform Act").

8      To satisfy Rule 9(b), plaintiff must "specify such facts as the times, dates, places, benefits

9  received, and other details of the alleged fraudulent activity."  *Neubronner v. Milken*, 6 F.3d 666,

10  671-72 (9th Cir. 1993).  In addition to providing the particularity required by Rule 9(b), plaintiff

11  must also satisfy the heightened pleading requirements of the Reform Act.  Enacted by Congress

12  in 1995 as "a check against abusive litigation in private securities fraud actions," the Reform Act

13  imposes "exacting pleading requirements" and "requires plaintiffs to state with particularity both

14  the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's

15  intention 'to deceive, manipulate, or defraud.'"  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127

16  S. Ct. 2499, 2501 (2007) (citation omitted); *see also* 15 U.S.C. § 78u-4(b).  Complaints that do not

17  satisfy these requirements "shall" be dismissed.  15 U.S.C. § 78u-4(b)(3)(A).

18      With respect to scienter, the Reform Act requires plaintiff to "state with particularity facts

19  giving rise to a *strong inference* that the defendant acted with the required state of mind."  15

20  U.S.C. § 78u-4(b)(2) (emphasis added).  In the Ninth Circuit, the "required state of mind" involves

21  "deliberately reckless or conscious misconduct."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d

22  970, 974 (9th Cir. 1999).  Recklessness is sufficient "only . . . to the extent that it reflects some

23  degree of *intentional or conscious* misconduct."  *Id*. at 977 (emphasis added).

24      To "qualify" as a "strong inference" of scienter, the "inference of scienter must be more

25  than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light

26  of other explanations."  *Tellabs*, 127 S. Ct. at 2510.  In applying this standard, the court must

27  consider "plausible nonculpable explanations for the defendant's conduct, as well as inferences

28  favoring the plaintiff."  *Id.*

MEMO. OF POINTS AND AUTHORITIES IN
                                   SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                                   TO DISMISS, CASE NO. 08-CV-0246-L-NLS

### B.    State Law Claims

Leap is incorporated in Delaware.  Complaint ¶ 8.  Because Leap is a Delaware corporation, plaintiff's breach of fiduciary duty and unjust enrichment claims are governed by Delaware law under the internal affairs doctrine.  *See In re Sagent Tech.*, *Inc.*, *Derivative Litig.*, 278 F. Supp. 2d 1079, 1086-87 (N.D. Cal. 2003) ("In general, courts in California follow this rule and apply the law of the state of incorporation in considering claims relating to internal corporate affairs.").

Where, as here, plaintiff's state law claims sound in fraud,[3] they must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

## II.    PLAINTIFF FAILS TO ALLEGE SUFFICIENTLY THAT HE HAS STANDING

Under both Federal Rule of Civil Procedure 23.1 and Delaware law, a shareholder plaintiff has standing to assert derivative claims only if the plaintiff was a shareholder at the time of the challenged conduct.  Fed. R. Civ. P. 23.1; Del. Code Ann. tit. 8, § 327.  In addition, a shareholder seeking to assert derivative claims must also demonstrate that the shareholder has continuously held shares in the Company since the time the suit was filed.  *See Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir. 1983).

In the Complaint, plaintiff challenges conduct between August 2004 and November 2007.  *See, e.g.*, Complaint ¶ 34.  Yet, nowhere does plaintiff allege that he has continuously held Leap stock since August 2004.  Instead, plaintiff conclusorily alleges only that he "was at all relevant times, a shareholder of nominal defendant LEAP."  *Id.* ¶ 7.  Such vague allegations are insufficient to allege contemporaneous ownership.  *See In re Computer Scis. Corp. Derivative Litig.*, No. CV 06-05288, 2007 WL 1321715, at *15 (C.D. Cal. Mar. 26, 2007) (dismissing complaint under Rule 23.1 for lack of standing because, among other deficiencies, "the Complaint only generally allege[d] that each Plaintiff 'is, and was during the relevant period,' or 'is, and was at all times

---

[3] *See, e.g.*, Complaint ¶ 2 (alleging that the Individual Defendants "knowingly" made false statements); *id.* ¶¶ 37, 80 (same); *id.* ¶ 42 (alleging that the Individual Defendants sold shares of Leap stock "[w]ith knowledge of their improper accounting practices and its effect").

relevant to,' a shareholder"); *In re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1202

(N.D. Cal. 2007) (plaintiff must "unambiguously indicate . . . the dates they purchased [the

company's] stock, and whether they have continuously owned [the] stock from the time of

purchase up to the present"); *Scimeca v. Kim*, No. CV 06-0562-PHX, slip op. at 18 (D. Ariz. Aug.

28, 2007) ("[T]he Complaint must indicate when plaintiffs bought stock in [the company], and

must state that they have owned stock continuously since the date of the filing of the lawsuit."),

Walters Decl., Ex. D.

Because plaintiff fails to allege the dates on which he purchased Leap stock, plaintiff's

Complaint should be dismissed for failure to adequately allege standing.

## III.    PLAINTIFF'S SECTION 10(b) CLAIM SHOULD BE DISMISSED

### A.    Plaintiff's Complaint Fails to Plead Particularized Facts Giving Rise to a Strong Inference of Scienter as to Any Defendant

To state a claim under Section 10(b)/Rule 10b-5, plaintiff must plead facts giving rise to a

strong inference of scienter.[4]  Pursuant to the stringent pleading requirements of the Reform Act,

plaintiff must "with respect to each act or omission . . . state with particularity facts giving rise to

a strong inference that *the defendant* acted with the required state of mind."  15 U.S.C. § 78u-

4(b)(2) (emphasis added).  Thus, plaintiff must plead with particularity facts giving rise to a

strong inference of scienter as to *each* defendant.  *Id.*; *see also Verisign*, 531 F. Supp. 2d at 1207

("It is not sufficient under the PSLRA to allege scienter against defendants as a group.").

Plaintiff's barebones allegations in the Complaint fall far short of this exacting standard.

---

[4] The gravamen of plaintiff's Complaint is that the Individual Defendants knowingly made misrepresentations and omissions in their public statements – that is, a Rule 10b-5(b) claim.  *See, e.g.*, Complaint ¶ 2.  Nevertheless, in the Section 10(b)/Rule 10b-5 cause of action (Complaint ¶ 86), plaintiff inconsistently (and in generic fashion) refers to "devices, schemes and artifices to defraud" (*i.e.*, language from Rule 10b-5(a)) and "acts, practices and a course of business which operated as a fraud and deceit" upon the Company (*i.e.*, language from Rule 10b-5(c)).  In any event, it does not change the relevant analysis because scienter is an essential element of any Section 10(b)/Rule 10b-5 claim.

1         **1.**      **The Mere Fact that a Financial Restatement Occurred Does Not Give Rise to a Strong Inference of Scienter.**

2

3       Ignoring the stringent pleading requirements of the Reform Act, plaintiff attempts to

4 simply equate the announced financial restatement with securities fraud. Indeed, the pleaded

5 "facts" regarding the alleged financial fraud consist of little more than long block quotes from the

6 Company's own public disclosures regarding the details of the restatement. *See, e.g.*, Complaint

7 ¶¶ 56-62. It is well-established, however, that the mere fact that a restatement occurred does not

8 give rise to a strong inference of scienter. *See DSAM Global Value Fund v. Altris Software, Inc.*,

9 288 F.3d 385, 390 (9th Cir. 2002) ("[T]he mere publication of inaccurate accounting figures, or a

10 failure to follow GAAP, without more, does not establish scienter."); *Verisign*, 531 F. Supp. 2d at

11 1207 ("[T]he mere fact that a corporation restates its financial statements does not give rise to a

12 strong inference that any individual defendant acted with intent to defraud . . .."). Nor does the

13 existence of weaknesses in internal controls, without more, give rise to a strong inference of

14 scienter. To the contrary, "[p]resumably every company that issues a financial restatement

15 because of GAAP errors will cite as the reason a lack of effective internal controls." *In re

16 Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX, 2006 WL 1836181, at *9 (D. Ariz. July 5,

17 2006) (dismissing complaint with prejudice for failure to allege scienter following disclosure of

18 internal control weaknesses leading to restatement).

19       Rather, to plead facts sufficient to give rise to a strong inference of scienter in connection

20 with the restatement, plaintiff must plead detailed facts showing that the Individual Defendants

21 intentionally disseminated false financial statements or were deliberately reckless in connection

22 with their dissemination. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1090-91 (9th Cir.

23 2002) (plaintiffs must "allege specific contemporaneous conditions known to the defendants that

24 would strongly suggest that the defendants understood" at the time the financials were issued that

25 the company's accounting was improper); *see also In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137,

26 150-52 (3d Cir. 2004). Plaintiff fails to plead any such facts.

27

28

MEMO. OF POINTS AND AUTHORITIES IN
SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1    **2.    The Complaint Fails to Plead Particularized Facts Demonstrating
Each Defendant's Awareness of Alleged Accounting Improprieties.**

2

3        Plaintiff's Complaint provides no facts identifying who was involved in the accounting

4    matters at issue or how those individuals allegedly knew that the accounting treatment was

5    incorrect.  Indeed, conspicuously absent in the Complaint are particularized facts demonstrating

6    that any of the Individual Defendants believed the challenged financial statements were false at the

7    time they were issued or that they sought to conceal accounting errors.  *See, e.g.*, *Alaska Elec.*

8    *Pension Fund v. Adecco, S.A.*, 434 F. Supp. 2d 815, 823 (S.D. Cal. 2006) ("Plaintiffs must allege

9    facts showing Defendants knew, when preparing the year-end financials, . . . that the receivables

10    should have been written off, but they fraudulently chose to delay the write-down."), *aff'd*, 256

11    Fed. Appx. 74 (9th Cir. 2007).

12        Notably, the Complaint does not contain a single fact regarding how, when or where

13    Messrs. Hutcheson, Khalifa, Burton, Luvisa, Targoff, Harkey, LaPenta, Rachesky or Dondero

14    became aware of alleged accounting improprieties.  *See Verisign*, 531 F. Supp. 2d at 1207

15    (rejecting conclusory assertions of scienter where the complaint "contain[ed] no specific

16    allegations of contemporaneous reports or data supporting the assertions of scienter – not a single

17    facts showing what each defendant knew, when he/she knew it, or how he/she acquired that

18    knowledge").  Instead, plaintiff relies upon conclusory allegations regarding the defendants'

19    "positions" at the Company and on the Board, receipt of unspecified "weekly, monthly, and

20    quarterly reports," and attendance at unspecified "Board and Audit Committee meetings" or

21    "management meetings."[5]  Plaintiff's boilerplate allegations fail to withstand the exacting pleading

22    requirements of the Reform Act.  *See Vantive*, 283 F.3d at 1087 (finding plaintiffs' "attempt to

23    establish such knowledge by adverting to the defendants' 'hands-on' management style, their

24    'interaction with other corporate officers and employees, their attendance at management and

25    _____

26        [5] *See* Complaint ¶ 35 ("Through their receipt of weekly, monthly, and quarterly reports,
attendance at Board and Audit Committee meetings, review of the Company's financial

27    statements, conversations with the Company's management, internal auditors, and external
auditors, the Individual Defendants knew that LEAP's accounting and financial reporting

28    practices were improper, and its internal controls were materially deficient.").

1    board meetings, and reports generated on a weekly and monthly basis in the Finance Department'"

2    to be insufficient to give rise to a strong inference of scienter).

3              a.    **Conclusory Allegations Regarding the Positions Held by the
                     Individual Defendants Are Insufficient to Give Rise to a Strong
4                    Inference of Scienter.**

5              Courts routinely have held that conclusory allegations regarding defendants' officer and/or

6    Board positions are insufficient to give rise to a strong inference of scienter.  *See In re Read-Rite*

7    *Corp. Sec. Litig.*, 335 F.3d 843, 848-49 (9th Cir. 2003); *see also In re Peerless Sys., Corp. Sec.*

8    *Litig.*, 182 F. Supp. 2d 982, 993 (S.D. Cal. 2002) ("Published decisions in the Ninth Circuit hold

9    that a complaint does not adequately plead scienter by claiming that key officers knew the true

10   facts by virtue of their 'hands-on' positions and involvement in the day-to-day management of the

11   company.").  Yet, conclusory allegations of knowledge based upon the Individual Defendants'

12   positions at Leap are exactly what plaintiff pleads in the Complaint.  *See, e.g.*, Complaint ¶ 87

13   ("Through their positions of control and authority as officers and/or directors of the Company, the

14   Individual Defendants were able to and did control the conduct complained of herein."); ¶ 27

15   ("Because of their advisory, executive, managerial, and directorial positions with LEAP, each of

16   the Individual Defendants had knowledge of material non-public information regarding the

17   Company.").  Plaintiff's conclusory "position" allegations fail to provide the requisite level of

18   specificity regarding *each* defendant's alleged participation in accounting decisions and/or the

19   preparation of the challenged financial statements.

20             Nor does mere membership on the Audit Committee give rise to a strong inference of

21   scienter.  Conclusory allegations regarding board membership or membership on board

22   committees – without particularized facts detailing each defendant's alleged misconduct – are

23   also patently inadequate under the Reform Act.  *See, e.g.*, *In re Hansen Natural Corp. Sec. Litig.*,

24   527 F. Supp. 2d 1142, 1159 (C.D. Cal. 2007) ("It also is insufficient to demonstrate a strong

25   inference of scienter for Plaintiff to allege that various of the Individual Defendants held

26   positions on various committees, such as the executive, audit, and compensation committees.").

27   Rather, plaintiff must plead particularized facts with respect to each Board or Committee

28   member – separate and apart from generalized allegations directed at the collective bodies – that

1  give rise to a strong inference of culpable conduct on the part of each defendant.  15 U.S.C. §

2  78u-4(b)(2); *see also Verisign*, 531 F. Supp. 2d at 1205 (holding that conclusory allegations

3  regarding committee memberships and knowledge of false financial statements failed to "satisfy

4  the pleading requirements of the PSLRA because plaintiffs neither specify the roles that [the

5  former CFO] and each of the director defendants played . . . in the alleged scheme to issue false

6  financial reports, nor allege facts giving rise to a strong inference of scienter as to *each*

7  defendant").  Because plaintiff fails to plead *any* facts as to what each Audit Committee member

8  allegedly knew regarding the accounting matters at issue, when he knew it or how he knew it,

9  plaintiff's conclusory allegations regarding membership on the Audit Committee are insufficient

10 to give rise to a strong inference of scienter.  *See Hansen*, 527 F. Supp. 2d at 1159 ("Plaintiff has

11 failed to allege any specifics with respect to the Individual Defendants' knowledge or an

12 adequate description of their activities on various committees.").

13                          **b.      Conclusory Allegations Regarding Receipt of Unidentified
                                    Reports and Attendance at Meetings Are Insufficient to Give
14                                  Rise to a Strong Inference of Scienter.**

15        Plaintiff's boilerplate allegations of knowledge based upon receipt of unidentified

16 internal reports and/or attendance at meetings are equally deficient.  *See* Complaint ¶ 35

17 (alleging receipt of unidentified "weekly, monthly, and quarterly reports"); *id.* ¶ 36 (referencing

18 attendance at unspecified Board and committee meetings, management meetings, and other

19 meetings").  Plaintiff "cannot base an inference of scienter on unspecified documents and

20 conversations."  *Hansen*, 527 F. Supp. 2d at 1159; *see also Vantive*, 283 F.3d at 1088 (finding

21 plaintiffs' allegations regarding receipt of reports and attendance at meetings to be deficient

22 where plaintiffs "failed to cite any specific report, to mention any dates or contents of reports, or

23 to allege their sources of information about any reports" or to provide similar detail "with respect

24 to the defendants' attendance at meetings and their 'hands-on' managerial style").

25        In order to rely on internal reports, plaintiff must "include adequate corroborating

26 details," including the "sources of her information with respect to the reports, how she learned of

27 the reports, who drafted them, . . . which officers received them," and an adequate description of

28 their contents."  *Silicon Graphics*, 183 F.3d at 985; *see also Alaska Elec. Pension Fund*, 434 F.

1    Supp.2d at 831 (finding allegations of receipt of weekly and monthly reports insufficient to

2    support a strong inference of scienter where plaintiff failed to plead "details as to the information

3    provided in those reports or more particularly, facts indicating the reserves were too low or

4    uncollectible receivables should have been written earlier").  Plaintiff's Complaint contains no

5    such details.  Nor does plaintiff provide any details regarding specific communications that took

6    place during the unidentified "management meetings" or board or committee meetings.  To

7    satisfy the Reform Act's pleading requirements, "plaintiff must allege 'the date on which any

8    such communication occurred, how [Plaintiff] learned of such a communication, the form in

9    which such contact or communication was had, or specifics concerning information provided or

10   received during such contact.'"  *Hansen*, 527 F. Supp. 2d at 1159 (alteration in original) (citation

11   omitted).  Plaintiff's conclusory allegations regarding unspecified "meetings" and receipt of

12   unidentified "reports" thus fail to provide the requisite level of specificity under the Reform Act.

13           **c.**    **Plaintiff's Allegations Regarding Signatures on SEC Filings Do Not Give Rise to a Strong Inference of Scienter.**

14

15         Plaintiff also attempts to create an inference of scienter based on the Individual

16   Defendants' signatures on SEC filings during the relevant period.  Specifically, plaintiff alleges

17   that the Company and the Individual Defendants knowingly disseminated false financial

18   statements in the 2004, 2005 and 2006 SEC Form 10-Ks and that each of the Individual

19   Defendants signed at least one of these documents.  Complaint ¶¶ 51-53.  Once again, however,

20   plaintiff fails to plead particularized facts demonstrating that *any* of the Individual Defendants was

21   aware of alleged accounting errors at the time the Forms 10-K were filed.  Moreover, plaintiff fails

22   to plead particularized facts regarding *each* defendant's alleged participation in the preparation,

23   drafting and/or dissemination of these documents.  Plaintiff's conclusory "signature" allegations

24   thus fail to give rise to a strong inference of scienter.  *See, e.g.*, *In re Affiliated Computer Servs.*

25   *Derivative Litig.*, 540 F. Supp. 2d 695, 702 (N.D. Tex. 2007) (noting that allegations regarding the

26   signatures of the individual defendants on SEC forms 10-K "are not sufficient, *by themselves*, to

27   establish scienter on behalf of those Defendants"); *Hansen*, 527 F. Supp. 2d at 1159 (rejecting

28

1  plaintiffs' contention that the Individual Defendants' signatures on various public filings gave rise

2  to a strong inference of scienter).

3        Nor does the "signing of quarterly certifications of financial statements mandated by the

4  Sarbanes-Oxley Act . . . without more, support an inference of scienter." *Rudolph v. UTStarcom*,

5  No. C 07-04578, 2008 WL 1734763, at *6 (N.D. Cal. Apr. 14, 2008).  Plaintiff alleges that

6  Messrs. Hutcheson, Luvisa and Khalifa signed Sarbanes-Oxley certifications attesting "to the

7  purported accuracy of the financial statements contained in the 2004-2006 annual reports, the

8  effectiveness of the internal controls, and compliance with Section 13(a) of the Exchange Act,

9  when they knew that these Certifications were false and misleading."  Complaint ¶ 54.  Merely

10  alleging, as plaintiff does here, that a defendant signed a Sarbanes-Oxley certification – without

11  alleging particularized facts demonstrating that the defendant was aware of accounting

12  irregularities at the time the certification was signed – is insufficient to give rise to a strong

13  inference of scienter.  *See, e.g.*, *Morgan v. AXT, Inc.*, No. C-04-4362, 2005 WL 2347125, at *15

14  (N.D. Cal. Sept. 23, 2005) ("Plaintiff has not alleged particularized facts to support his claim that

15  Defendant['s] averments that he had examined the Company's internal disclosure controls and

16  believed they were adequate, were false."); *Hypercom*, 2006 WL 1836181, at *11 ("[A]n

17  incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter.").[6]

18        Because plaintiff fails to plead particularized facts giving rise to a strong inference that

19  any of the Individual Defendants acted with scienter, plaintiff's Section 10(b) claim should be

20  dismissed.

21              **3.    Plaintiff's Stock Sale Allegations Fail to Provide the Missing Inference
                    of Scienter.**

22

23        Plaintiff relies upon allegations of insider selling in an attempt to supply the missing strong

24  inference of scienter.  *See, e.g.*, Complaint ¶ 42 ("With knowledge of their improper accounting

25

26        [6] *See also In re Cyberonics Sec. Litig.*, 523 F. Supp. 2d 547, 554 (S.D. Tex. 2007) ("As
plaintiffs again have failed to link these certifications to the alleged fraud with the particularity
27  required, the allegation that the certifications were false are merely conclusory.  It simply is not
enough to argue that defendants must have known of the fraud given their positions.").

28

1    practices and its effect on the Company's financial statements, the Individual Defendants sold

2    their personal shares of LEAP stock at artificially inflated prices.").  Mere allegations of stock

3    sales by an officer or director, however, without more, do not give rise to a strong inference of

4    scienter.  Rather, plaintiff has "'the burden at the pleading stage of explaining why the stock sales

5    were unusual or suspicious; " that is, plaintiff "must show the trading was in amounts

6    'dramatically out of line with prior trading practices, *at times calculated to maximize the personal*

7    *benefit from undisclosed inside information.*'"  *Alaska Elec. Pension Fund*, 434 F. Supp. 2d at 833

8    (citation omitted).  Plaintiff fails to satisfy this burden.

9         As an initial matter, plaintiff does not allege that Messrs. Khalifa, Burton, Harkey,

10    LaPenta, or Rachesky sold any stock during the relevant period.  The fact that many of the

11    Individual Defendants are not alleged to have sold *any stock* during the relevant period

12    undermines plaintiff's contention that nine officers and directors of Leap engaged in securities

13    fraud "in order to line their own pockets."  Complaint ¶ 44; *see Ronconi v. Larkin*, 253 F.3d 423,

14    436 (9th Cir. 2001) ("One insider's . . . sales do not support the 'strong inference' required by the

15    statute where the rest of the equally knowledgeable insiders act in a way inconsistent with the

16    inference that the favorable characterizations of the company's affairs were known to be false

17    when made.") (footnote omitted); *Alaska Elec. Pension Fund*, 434 F. Supp. 2d at 834-35 (same);

18    *see also Alpharma*, 372 F.3d at 152 (finding that plaintiffs failed to plead facts giving rise to a

19    strong inference of scienter where a key insider sold no shares during the class period and

20    plaintiffs failed to plead facts demonstrating that the sales of the remaining defendants were

21    unusual in scope or timing); *Acito v. IMCERA Group, Inc*., 47 F.3d 47, 54 (2d Cir. 1995) ("The

22    fact that the other defendants did not sell their shares during the relevant class period undermines

23    plaintiffs' claim.").

24         Moreover, with respect to the four individuals who did sell stock, plaintiff fails to allege

25    any facts, much less particularized facts, demonstrating that the sales were unusual or suspicious

26    or inconsistent with prior trading patterns.  Despite plaintiff's assertions to the contrary, the stock

27    sales did not all occur during the same time period.  *See* Complaint ¶ 46(a) ("All of these

28    defendants' stock sales occurred during the same time period.").  Rather, they occurred over the

1  course of many months.  For example, the only alleged stock sale by Mr. Luvisa occurred in

2  December 2006, while the only alleged stock sale by Mr. Targoff occurred *seven months later*.

3  Moreover, all of the alleged stock sales occurred long before the alleged "fraud" was revealed in

4  November 2007.  *See In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1183 (N.D. Cal.

5  2000) (stock sales "occurring many months prior to the announcement which triggered the stock

6  price correction upon which this action pivots, do not amount to a strong implication of the

7  requisite scienter"), *aff'd*, 335 F.3d 843 (9th Cir. 2003).

8         Nor does the fact that certain of the stock sales occurred soon after positive earnings

9  releases render them unusual.  *See* Complaint ¶ 46(b) ("All of these defendants' stock sales

10 occurred soon after the Company's positive earnings releases, which contained false and

11 misleading statements.").  To the contrary, it merely suggests that the stock sales occurred during

12 standard trading periods.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036-37 (9th Cir.

13 2002) (timing not suspicious where insider sold stock following positive announcement of year-

14 end results); *see also City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932,

15 951 (S.D. Ind. 2005) ("The fact that sales occurred after earnings announcements means nothing.

16 Corporate insiders typically are barred from trading for a period of time before such

17 announcements precisely to avoid charges of insider trading, so sales are often made after such

18 announcements.").

19        Because plaintiff fails to plead facts demonstrating that the Individual Defendants' stock

20 sales were unusual or suspicious or inconsistent with prior trading patterns, plaintiff's stock sale

21 allegations are insufficient to raise a strong inference of scienter.  *See Alaska Elec. Pension*

22 *Fund*, 434 F. Supp. 2d at 833 ("'Plaintiffs have the burden at the pleading stage of explaining

23 why the stock sales were unusual or suspicious.'") (citation omitted); *Peerless*, 182 F. Supp. 2d

24 at 995-96 (finding that plaintiff's allegations failed to give rise to a strong inference of scienter,

25 where plaintiff failed to allege any facts to suggest that the sales were unusual or "out of line

26 with the Defendants' prior trading practices").

27

28

MEMO. OF POINTS AND AUTHORITIES IN
                                       SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                                       TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1

4.    **The Defendants' Actions and Disclosures During the Relevant Period Negate an Inference of Scienter.**

2

3    Contrary to plaintiff's depiction of defendants as attempting to conceal the Company's

4    financial reporting errors, Leap proactively sought to identify the problems by conducting an

5    internal review, and the Company promptly disclosed the results of that review to investors.  As

6    explained in the November 9, 2007 press release, the "restatements [were] the result of an internal

7    review of the Company's service revenue activity and forecasting process that was initiated by

8    management in September 2007."  Walters Decl., Ex. A at Ex. 99.1.  Management's decision to

9    conduct an internal review contradicts any suggestion that the defendants sought to conceal the

10    financial statement errors.  *See, e.g.*, *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th

11    Cir. 2007) (noting that the Company's decision to conduct an investigation over the course of two

12    months "demonstrat[ed] a pursuit of truth rather than reckless indifference to the truth").

13    Moreover, as the Company further disclosed in the press release, the restatements were "not

14    attributable to any misconduct by Company employees."  Walters Decl., Ex. A at Ex. 99.1.

15    The Company's actions in the Fall of 2007 were consistent with the Company's past

16    practice of providing public disclosures regarding internal control deficiencies.  Indeed, the

17    Company's past warnings to investors regarding the internal control weaknesses that the

18    Company faced in the wake of the Company's emergence from bankruptcy also negate an

19    inference of scienter.  *See, e.g.*, Walters Decl., Ex. B at 21 ("We have identified material

20    weaknesses in our internal control over financial reporting, and our business and stock price may

21    be adversely affected if we do not remediate these material weaknesses, or if we have other

22    material weaknesses or significant deficiencies in our internal control over financial reporting.")

23    (emphasis omitted); *see, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 769 (E.D.

24    Va. 2007) (noting that "truthful disclosures of negative information 'militate[] against a finding

25    that [defendants] acted with a culpable state of mind'") (alterations in original) (citations

26    omitted).

27

28

MEMO. OF POINTS AND AUTHORITIES IN
SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1  **IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER DELAWARE LAW**

2

3         Delaware law affords directors and officers significant protections in carrying out the

4  duties and responsibilities associated with managing the business and affairs of the corporation.

5  Among these protections are both statutory limitations on liability and a rebuttable presumption

6  that their actions are made on an informed basis, in good faith and in the honest belief that the

7  actions are in the best interests of the Company.  *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d

8  345, 361 (Del. 1994), *modified in part on reargument*, 636 A.2d 956 (Del. 1994).  Among other

9  statutory protections, Delaware law permits corporations to adopt provisions that eliminate

10  claims against directors for monetary damages for non-intentional conduct that was in good faith

11  and not designed to derive an improper personal benefit.  Del. Code Ann. tit. 8, § 102(b)(7).

12  Leap's certificate of incorporation contains such a provision.[7]  Where, as here, companies have

13  adopted such a provision, claims against the directors for negligent breaches of the duty of care

14  are precluded.  *See, e.g.*, *Sagent*, 278 F. Supp. 2d at 1095 n.9.  Thus, to plead a breach of

15  fiduciary duty claim, plaintiff must allege facts demonstrating that the directors breached their

16  duty of loyalty, acted in bad faith or engaged in intentional misconduct.  Plaintiff pleads no such

17  facts.

18         Plaintiff alleges that the "Individual Defendants breached their fiduciary duties by:

19  (i) willfully ignoring the obvious and pervasive problems with LEAP's accounting and internal

20  control practices and procedures and failing to make a good faith effort to correct the problems

21  or prevent their recurrence; and (ii) knowingly disseminating to LEAP shareholders false

22  financial statements."  Complaint ¶ 80.  Because plaintiff purports to base his claim on

23  ────────────────

24         [7] *See* Walters Decl., Ex. C:

25         No director of this Corporation shall be personally liable to the Corporation or its
         stockholders for monetary damages for breach of fiduciary duty as a director, except for

26         liability (i) for any breach of the director's duty of loyalty to the Corporation or its
         stockholders, (ii) for acts or omissions not in good faith or which involve intentional

27         misconduct or a knowing violation of law, (iii) under Section 174 of the General
         Corporation Law of the State of Delaware, or (iv) for any transaction from which the

28         director derived an improper personal benefit.

1   "knowing[]" dissemination of "false financial statements," plaintiff's breach of fiduciary duty

2   claim sounds in fraud and must satisfy the heightened pleading requirements of Federal Rule of

3   Civil Procedure 9(b).  *See Vess*, 317 F.3d at 1103-04; *Sachs v. Sprague*, 401 F. Supp. 2d 159,

4   170 n. 15 (D. Mass. 2005) ("Plaintiffs' claims alleging intentional breaches of fiduciary duties

5   are subject to the heightened pleading requirements of Rule 9(b).").  Plaintiff's allegations fall

6   far short of satisfying Rule 9(b).

7          To the extent that plaintiff's breach of fiduciary duty claim is also based on an alleged

8   failure to exercise proper oversight,[8] plaintiff's Complaint once again falls short.  Such a claim –

9   commonly referred to as a *Caremark* claim – is one of the "most difficult" claims "upon which a

10  plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d

11  959, 967 (Del. Ch. 1996).  "[O]nly a sustained or systematic failure of the board to exercise

12  oversight . . . will establish the lack of good faith that is a necessary condition to liability."  *Id.* at

13  971.  Plaintiff's Complaint fails to plead any facts establishing a "sustained or systemic failure"

14  by the Individual Defendants to exercise oversight.

15         **A.    Plaintiff's Allegations Fail to Provide the Requisite Level of Particularity
                   under Federal Rule of Civil Procedure 9(b)**

16

17         Plaintiff alleges that the Individual Defendants breached their fiduciary duty of good faith

18  and loyalty by "knowingly" disseminating false financial statements and "willfully" failing to

19  correct internal control problems.  Complaint ¶¶ 36, 37, 80.  As explained *supra* at III.A,

20  however, plaintiff makes no attempt to plead particularized facts regarding each Individual

21  Defendant's alleged role in the accounting decisions or internal control matters at issue or in the

22  preparation of the challenged financial statements.  Instead, plaintiff simply clusters most of the

23  Individual Defendants into two groups, labeled the "Audit Committee Defendants" (Messrs.

24  Targoff, Harkey and LaPenta) and the "Officer Defendants" (Messrs. Hutcheson, Khalifa,

25  Burton and Luvisa), and alleges that they collectively breached their fiduciary duties.  *See*

26  _____

27     [8] *See, e.g.*, Complaint ¶ 34 ("The Individual Defendants' failure to ensure effective internal
    controls at LEAP resulted in the Company materially overstating its financial results by
28  improperly recognizing revenue.").

MEMO. OF POINTS AND AUTHORITIES IN
                                         SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                                         TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1   Complaint ¶ 33.

2          Plaintiff's conclusory allegations fail to provide the "'who, what, when, where, and

3   how'" required by Rule 9(b). *See Vess*, 317 F.3d at 1103-04 (citation omitted). Indeed,

4   plaintiff's failure to plead facts regarding each Individual Defendant's alleged misconduct is

5   insufficient to satisfy the requirements of Federal Rule of Civil Procedure 8, much less Rule

6   9(b). *See Sagent*, 278 F. Supp. 2d at 1094-95 ("[P]laintiffs do not indicate which individual

7   defendant or defendants were responsible for which alleged wrongful act.").[9] In sum, the same

8   lack of specificity that is fatal to plaintiff's Section 10(b) claim is also fatal to plaintiff's breach

9   of fiduciary duty claims.

10                    **1.      Plaintiff Fails to State a Claim Against Outside Director Defendants
                               Rachesky and Dondero.**

11

12         Plaintiff does not allege that outside director Mark Rachesky was an officer of the

13   Company or a member of the Audit Committee. Nor does plaintiff allege that Dr. Rachesky sold

14   any stock during the relevant period. Rather, the only allegation specifically relating to Dr.

15   Rachesky in the Complaint – other than his title of Chairman of the Board – is that, as a director

16   of the Company, Dr. Rachesky signed the Company's SEC Form 10-Ks. Merely alleging the

17   existence of Dr. Rachesky's signature on a Form 10-K, however, does not demonstrate that Dr.

18   Rachesky made false or misleading statements in breach of his fiduciary duties. *Cf. Seminaris v.*

19   *Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (rejecting contention that directors' signatures on

20   allegedly misleading Form 10-K demonstrated substantial likelihood of breach of fiduciary

21   duty); *see also supra* at III.A.2.c.

22         Similarly, the only allegations in the Complaint relating specifically to Mr. Dondero are

23   allegations that Mr. Dondero signed certain of the Company's Forms 10-K and sold Leap shares

24   during the relevant period. As noted above, Mr. Dondero's signature on the Forms 10-K does

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯

26         [9] *Cf. Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003) (in analyzing demand futility,
     noting that "[e]ntirely absent from the complaint are well-pled, particularized allegations of fact

27   detailing the precise roles that these directors played at the company, … the information that
     would have come to their attention in those roles, and any indication as to why they would have

28   perceived the accounting irregularities.").

                                    MEMO. OF POINTS AND AUTHORITIES IN
                                    SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                                    TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1    not provide a sufficient basis from which to infer knowledge of accounting errors.  As with Dr.

2    Rachesky, plaintiff fails to plead particularized facts indicating that Mr. Dondero was involved in

3    making any accounting decisions or in the preparation of the challenged financial statements.

4    Also absent are any particularized facts demonstrating that Mr. Dondero's stock sales were

5    unusual or suspicious, as explained *supra* at III.A.3.  *Cf. Guttman*, 823 A.2d at 504 ("In the

6    absence of any fact pleading that supports a rational inference that any of these directors had

7    some basis to believe that [the Company's] financial statements were materially misleading in a

8    manner that inflated the company's stock price, the mere fact that two of the directors sold large

9    portions of their stock does not . . . support the conclusion that those two directors face a real

10   threat of liability.").

11        Given the absence of any particularized allegations demonstrating misconduct, the breach

12   of fiduciary duty claims against these defendants should be dismissed.

13                    **2.        Plaintiff Fails to State a Claim Against the Audit Committee
                                Defendants.**

14

15        Plaintiff asserts in sweeping fashion that the "Individual Defendants, *particularly the*

16   *Audit Committee Defendants*, prepared and/or reviewed the 2004-2007 financial statements" and

17   "because of their knowledge and participation in the improper accounting practices, knew that

18   [sic] 2004-2007 financial statements were materially false and misleading."  Complaint ¶ 37

19   (emphasis added).  Notably absent in the Complaint, however, are *any* facts demonstrating that

20   any of the Audit Committee members purportedly had "knowledge" of "improper accounting

21   practices," much less any facts demonstrating any alleged "participation" in the alleged

22   "practices."  *Cf. In re MIPS Techs., Inc. Derivative Litig.*, 542 F. Supp. 2d 968, 978 (N.D. Cal.

23   2008) (conclusory allegations regarding membership on Audit Committee and approval of

24   allegedly false financial statements insufficient to disqualify director defendant from considering

25   demand where plaintiff failed to plead any facts demonstrating that the director "knew he was

26   certifying false financial statements while on the audit committee").  As explained *supra* at

27   II.A.2.a, plaintiff fails to plead *any* facts detailing what any individual Audit Committee member

28   knew about any of the accounting matters at issue or when he allegedly knew it.  Plaintiff's

1   conclusory allegations regarding mere membership on the Audit Committee are insufficient

2   under Rule 9(b).

3          **3.      Plaintiff Fails to State a Claim Against the Officer Defendants.**

4          Just as plaintiff's conclusory allegations regarding the Outside Director defendants and

5   the Audit Committee Defendants fail to state a breach of fiduciary duty claim, so too does the

6   Complaint fail to provide particularized allegations of misconduct with respect to each of the

7   Officer Defendants.  The only "facts" alleged regarding the Officer Defendants are their titles,

8   the presence of their signatures on certain of the SEC Forms 10-K, and stock sales by two of the

9   four Officer Defendants during the relevant period.  Plaintiff fails, however, to plead any facts

10  suggesting that any of the Officer Defendants was aware of alleged accounting errors either at

11  the time the financial statements were issued or at the time of the alleged stock sales.  *See*

12  *Guttman*, 823 A.2d at 503 ("[T]he complaint cannot be fairly said to contain particularized facts

13  providing an inference of insider trading.  For example, the timing of the defendants' trades is

14  quite disparate, having only the common pattern of coming after the filing of a certified financial

15  statement.").

16         In sum, plaintiff has failed to plead particularized facts under Rule 9(b) demonstrating

17  that any of the Individual Defendants acted in a manner that was disloyal, exhibited bad faith or

18  acted out of self-interest.

19         **B.      Plaintiff's Allegations Are Insufficient to State a *Caremark* Claim**

20         Just as plaintiff's factually unsupported allegations of "knowing" misconduct are

21  insufficient to state a claim, so too are plaintiff's allegations regarding the Individual

22  Defendants' alleged failure to exercise adequate oversight.  *See, e.g.*, Complaint ¶ 33 ("[T]he

23  Individual Defendants . . . failed to implement and maintain adequate internal control systems for

24  the Company"); *id.* ¶ 34 ("The Individual Defendants' failure to ensure effective internal controls

25  at LEAP resulted in the Company materially overstating its financial results by improperly

26  recognizing revenue.").  As noted *supra* at 19, this type of claim, which is based on an alleged

27  failure to exercise proper oversight, is one of the "most difficult" for plaintiff to attempt to assert,

28  as plaintiff must plead facts demonstrating "a sustained or systematic failure of the board to

1    exercise oversight." *Caremark*, 698 A.2d 971.  Plaintiff's Complaint is devoid of any facts

2    supporting a claim of a "sustained" or "systemic" failure by the Individual Defendants.

3         As explained by the Delaware Supreme Court in *Stone ex rel. AmSouth Bancorporation*

4    *v. Ritter*, 911 A.2d 362, 370 (Del. 2006), to establish a failure of oversight claim under

5    *Caremark*, plaintiff must plead facts that "articulate[] the necessary conditions predicate for

6    director oversight liability:  (a) the directors utterly failed to implement any reporting or

7    information system or controls; *or* (b) having implemented such a system or controls,

8    consciously failed to monitor or oversee its operations thus disabling themselves from being

9    informed of risks or problems requiring their attention."  The Delaware Supreme Court further

10   noted that under either standard, the "imposition of liability requires a showing that the directors

11   *knew* that they were not discharging their fiduciary obligations." *Id*. (emphasis added).  Plaintiff

12   makes no attempt to satisfy the *Caremark* standard.

13        Plaintiff does not identify any communications, documents or other facts suggesting a

14   conscious disregard or dereliction of duties or responsibilities on the part of any of the Individual

15   Defendants.  Nor does plaintiff identify a single "red flag" that was ignored or disregarded. *See*

16   *Stone*, 911 A.2d at 370 (affirming dismissal of complaint for failure to satisfy demand

17   requirements; the "Court of Chancery found that the plaintiffs did not plead the existence of 'red

18   flags' – 'facts showing that the board ever was aware that [the Company's] internal controls

19   were inadequate, . . . and that the board chose to do nothing about problems it allegedly knew

20   existed.'").  As noted *supra* at III.A, plaintiff offers little more than descriptions of the Individual

21   Defendants' positions with the Company and the fact that a restatement occurred.  Plaintiff's

22   allegations fall far short of satisfying the *Caremark* standard and are insufficient to support

23   plaintiff's breach of fiduciary duty claim. *See In re Coca-Cola Enters., Inc. Derivative Litig*.,

24   478 F. Supp. 2d 1369, 1378 (N.D. Ga. 2007) ("Just as in a general failure of oversight claim, the

25   Plaintiff must provide particularized allegations *showing the information that the Audit*

26   *Committee saw* and upon which it failed to act.") (emphasis added), *aff'd sub nom. Staehr v.*

27   *Alm*, No. 07-11653, 2008 WL 657865 (11th Cir. Mar. 13, 2008); *Rattner v. Bizos*, No. Civ.A.

28   19700, 2003 WL 22284323, at *13  (Del. Ch. Oct. 7, 2003) ("The only information one can

MEMO. OF POINTS AND AUTHORITIES IN
                SUPP. OF INDIVIDUAL DEFENDANTS' MOTION
                TO DISMISS, CASE NO. 08-CV-0246-L-NLS

1  snare from the Amended Complaint is that there exists a body of rules regarding the accuracy of

2  recording and reporting financial information which may have been violated.  Equally as

3  important, I am unable, from the face of the Amended Complaint, to determine what role, if any,

4  the Board or its members played in the internal processes of collecting and disseminating

5  financial information.").[10]

6  **V.      THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT**

7          Plaintiff separately asserts a claim for unjust enrichment against the individuals who are

8  alleged to have sold stock during the relevant period, Messrs. Hutcheson, Targoff, Dondero, and

9  Luvisa.  *See* Complaint ¶ 83 ("Defendants Hutcheson, Targoff, Dondero, and Luvisa were

10  unjustly enriched by their sales of their personally held and/or beneficially held shares of LEAP

11  common stock while in possession of material non-public information concerning the

12  Company's pervasive violations of GAAP and accounting improprieties.").  To state a claim for

13  unjust enrichment, plaintiff must allege facts demonstrating that (1) each Individual Defendant

14  was enriched, (2) the plaintiff was impoverished, (3) a relationship existed between the

15  enrichment and the loss, and (4) there was neither justification nor a remedy provided by law.

16  *Fitzgerald, L.P. v. Cantor*, No. C.A. 16297, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998).  In

17  short, plaintiff must allege specific facts demonstrating that these Defendants were unjustly

18  enriched at the expense of Leap.  *See Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060,

19  1062 (Del. 1988) (citation omitted) ("Unjust enrichment is defined as 'the unjust retention of a

20  benefit to the loss of another, or the retention of money or property of another against the

21  fundamental principles of justice or equity and good conscience.'") (citation omitted).  Plaintiff

22  here has pleaded no facts showing that Messrs. Hutcheson, Targoff, Dondero, and Luvisa were

23  unjustly enriched.

24

25      [10] *See Guttman*, 823 A.2d at 506-07 ("In this case, the plaintiffs have not come close to
    pleading a *Caremark* claim. Their conclusory complaint is empty of the kind of fact pleading that
26  is critical to a *Caremark* claim, such as contentions that the company lacked an audit committee,
    that the company had an audit committee that met only sporadically and devoted patently
27  inadequate time to its work, or that the audit committee had clear notice of serious accounting
    irregularities and simply chose to ignore them or, even worse, to encourage their continuation.")

28

1    As demonstrated *supra* at III.A.3, plaintiff has not alleged any facts demonstrating that

2  the stock sales were unusual or suspicious.  More importantly, plaintiff fails to plead facts

3  explaining how Messrs. Hutcheson, Targoff, Dondero, and Luvisa were unjustly enriched *at the*

4  *expense of Leap* as required by Delaware law.  *See Fleer*, 539 A.2d at 1062 ("Before the court

5  may properly order restitution, it must find that the defendant was unjustly enriched at the

6  expense of the plaintiff.") (footnote omitted).  The alleged stock sales involved open market

7  purchasers.  Leap was not a party to the challenged transactions and thus was not harmed by

8  these transactions.  Because plaintiff fails to identify the requisite enrichment and corresponding

9  impoverishment, plaintiff's claim for unjust enrichment against Messrs. Hutcheson, Targoff,

10  Dondero, and Luvisa also fails.

11                                          **CONCLUSION**

12    For the foregoing reasons, the Individual Defendants respectfully request that the Court

13  grant their motion and dismiss the Complaint.

14

15  Dated:  June 2, 2008                    Respectfully submitted,

16                                          WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
17                                          Keith E. Eggleton
                                            Diane M. Walters
18                                          L. David Nefouse

19
                                            By:      s/ Diane M. Walters
20                                                   Diane M. Walters
                                                     Email: dwalters@wsgr.com
21
                                            Attorneys for Defendants
22                                          S. Douglas Hutcheson, Amin Khalifa, Grant
                                            Burton, Dean M. Luvisa, Michael B. Targoff,
23                                          John D. Harkey, Jr., Robert V. Lapenta, Mark
                                            H. Rachesky, M.D., and James D. Dondero
24

25

26

27

28